UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MICHAEL DE MAY<br>124 Tano Road<br>Santa Fe, NM 87506<br><br>and<br><br>ANNE SCHRADER- DE MAY<br>124 Tano Road<br>Santa Fe, NM 87506<br><br>and<br><br>THE DE MAY FAMILY TRUST<br>c/o Counselor Trust Reg., Trustee<br>Zollstrasse 9, Postfach 1611<br>9490 Vaduz<br>Furstentum, Liechtenstein<br><br><br><br>Plaintiffs<br><br><br>v.<br><br>MOORE & BRUCE, LLP<br>A District of Columbia Limited Liability Partnership<br>1072 Thomas Jefferson Street, N.W.<br>Washington, D.C.  20007<br><br>and<br><br>CHARLES M. BRUCE<br>1072 Thomas Jefferson Street, N.W.<br>Washington, D.C.  20007<br><br>and<br><br>JONATHON R. MOORE<br>1072 Thomas Jefferson Street, N.W.<br>Washington, D.C.  20007<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**
**(Legal Malpractice; Breach of Fiduciary Duty; Constructive Fraud)**

Come now the Plaintiffs, James Michael De May (hereinafter "De May"), Anne

Schrader-De May ("Schrader-De May"), and the De May Family Trust (the "Family

Trust"), by their undersigned counsel, and for their Complaint against the Defendants,

Moore & Bruce, LLP ("Moore & Bruce"), Charles M. Bruce ("Bruce") and Jonathon R.

Moore ("Moore"), state as follows:


**INTRODUCTION**

This is a claim for legal malpractice and other tortious conduct brought by a

pioneer in cellular telephone software technology against lawyers whose seriously

flawed advice and self-serving behavior caused De May and his family to suffer the loss

of much of the fruit derived from many years of labor.   Rather than enjoy the benefits

of the sale of his company after years of development and struggle, i.e. more than

$20,000,000 paid for shares which he owned before he transferred them, upon the

Defendants' advice, to three foreign trusts, De May finds himself without access to

funds which should have been his to spend as he wishes, and owing a $6,000,000

judgment, plus substantial interest, to the Internal Revenue Service.

De May had established his company, Optimay, in Germany in the mid-1980's,

and through talent, personal sacrifice, dedication and hard work he built a start-up

operation into a thriving and uniquely successful enterprise in the booming cellular

telephone industry.  Then, relying entirely upon the advice of the defendants, and

particularly Defendant Bruce, De May distributed his hard-won wealth among foreign

trusts and a foreign foundation in order to lessen the tax impact, only to find himself

immersed in a quagmire of litigation with the IRS.   After spending many hundreds of

thousands of dollars, first on legal and trustees' fees incurred in establishing,

maintaining and repeatedly modifying the foreign trusts, and then on trying to defend

against the IRS , De May ultimately had no choice but to consent to a large judgment

against him, resulting directly from Defendants' negligence, and indeed recklessness,

in setting up and managing the Byzantine network of foreign entities.


## JURISDICTION

1.  Plaintiff De May is an adult resident of the State of New Mexico and is the

husband of Plaintiff Schrader - De May..

2.  Plaintiff Schrader - De May is an adult resident of the State of New Mexico

and is the wife of Plaintiff De May.

3.  Plaintiff  Family Trust is a trust originally organized under the laws of

Bermuda and currently operating under the laws of Liechtenstein.  Its current trustee is

Counselor Trust Reg., whose office is located at Zollstrasse 9, Postfach 1611, FL-9490

Vaduz, Furstentum Liechtenstein.

4.  Defendant Moore & Bruce is a limited liability partnership comprised of

attorneys, which upon information and belief is organized under the laws of the District

of Columbia.  It maintains offices at 1072 Thomas Jefferson Street, N.W., Washington,

D.C. 2007 and at 40 Park Street, London W1K2JG, England.

5.  Defendant Bruce is an attorney who, upon information and belief, is licensed

to practice law in the District of Columbia, who resides in the District of Columbia at 2426 Tracy Place, N.W., Washington, D.C. 20008, and who maintains offices located at 1072 Thomas Jefferson Street, N.W., Washington, D.C. 20007 and at 40 Park Street, London W1K2JG, England.

6.  Defendant Moore is an attorney who, upon information and belief, is licensed to practice law in the District of Columbia, who resides at 4111 Ingomar Street, N.W., Washington, D.C. 20015, and who maintains offices located at 1072 Thomas Jefferson Street, N.W., Washington, D.C. 2007.

7.  Jurisdiction of this Court is premised upon 28 U.S.C. Section 1332 (diversity of citizenship).

8.  The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00).

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### A.  Background of De May and The Optimay Corporation

9.  De May is a physicist and mathematician with extensive experience in computer and  telecommunications technology.  He is married to Schrader-De May, a native of Germany who is now a permanent resident of the United States.   The couple has four children, aged 10 to 19.

10.  In or about 1985 De May and Schrader- De May took up residence in Germany, and in or about 1986 De May established a business engaged in consulting in the area of CAD, communications and real time systems.  In such business, De May

4

catered to large corporate clients such as BMW, Schlumberger and Siemens and became very successful. Schrader-De May contributed substantially to the business during its early years, both in funding and in services as a bookkeeper.

11. De May is a pioneer in designing software for the Global System for Mobile Communications ("GSM"), which is the dominant wireless communications network system in the world. The vast majority of cellular telephones worldwide operate on the GSM system.

12. From the late1980's through the 1990's De May, through his German company, Optimay GmbH, sold his software to digital mobile telephone giants around the world, including such cellular industry companies as Ericsson and Siemens. Optimay developed the world-wide standard for operating software of GSM handsets.

13. In the mid-1990's, while still operating in Germany, De May and Optimay sought an infusion of capital for expanding the business. During this same period of time, De May and Optimay encountered certain financial problems related to research and development, as well as other problems with dissident employees. Those problems continued into 1994 and 1995, and in 1995 De May decided to seek out a possible purchaser or, failing that, a source of capital financing. After a brief effort to find a purchaser or investor in Germany, he turned his attention to the United States, where the capital market environment at the time was more liquid and less restrictive.

**B. <u>Introduction to Moore & Bruce</u>**

5

14.  In his efforts to find sources of capital or a purchaser for Optimay, in or about the summer of 1995 De May met a Washington, D.C. attorney, Defendant Bruce. Bruce introduced De May to his partner, Defendant Moore, and their law firm, Defendant Moore & Bruce.

15.  The initial reason for meeting with Bruce was to try to gain access to possible United States sources of capital for Optimay GmbH.  De May was advised that Bruce had contacts at financial institutions such as Price Waterhouse and Alex Brown & Co.  Bruce in fact arranged some introductions of De May to individuals at Price Waterhouse and Alex Brown.

16.  At all relevant times, Bruce held himself out as an expert in international taxation, estate planning and foreign trusts.  Among other publications, he lists as a credit on Moore & Bruce's current website a book called "United States Taxation of Foreign Trusts", published in 2000, and a six volume treatise called "U.S. IRS International Tax Compliance", published in 1992.   Among other positions, his website states that Bruce has been Chairman of the Annual Institute on Multinational Taxation, sponsored by Georgetown University Law Center and the United States Chamber of Commerce.  The website also states that Bruce served as Tax Counsel to the U.S. Senate Finance Committee in the late 1970's.

17.  On or about September 18, 1995, with Defendants' advice and assistance, De May formed a new Delaware corporation, named Optimay Corporation, to raise capital in the United States.  In 1996 and early 1997 outside investors purchased an aggregate of $3.3 million in Optimay Corporation 7 percent convertible subordinated

debentures.

18.  During 1996 and 1997, Bruce and Moore became more intimately involved in the operations of Optimay.  Bruce became a board member of Optimay Corporation and legal advisor to De May in his capacity as C.E.O., and Moore became Chief Counsel to Optimay GmbH.   Through this involvement, Bruce and Moore became well aware of the value of Optimay's business.

## C.  Formation of Four De May Trusts

19.  On or about February 8, 1996, acting upon the advice of and with the assistance of Defendants, De May purported to create a trust known as the Anne Schrader-De May Trust ("ASDM Trust #1") under the laws of Bermuda.   The Trust Agreement for the ASDM Trust #1 was actually executed by De May on August 19, 1996.  The named trustee was Grosvenor Trust Company Limited, a Bermuda company, and the named beneficiaries were Schrader-De May and the Optimay Foundation. Sometime subsequent to February 8, 1996, again on the advice of and with the assistance of Defendants, De May caused 200,000 shares of the Optimay Corporation to be transferred to the ASDM Trust #1.

20.  Initially the terms of the ASDM Trust Agreement caused the trust to be a grantor trust for U.S. federal income tax purposes.  Under applicable American tax law, and specifically Section 679 of the Internal Revenue Code of 1986, as amended (the "Code"), although the ASDM Trust #1 was formed to benefit Schrader-De May, the grantor (De May) is treated as if he still owned the property in the trust for purposes of

paying taxes on income earned by the trust.

21.  On or about February 8, 1996, again upon the advice of and with the assistance of Defendants, De May purported to create a trust known as the De May Family Trust under Bermuda law.  The Trust Agreement for the Family Trust was actually executed by De May on August 19, 1996.  The named trustee was Grosvenor Trust Company Limited, a Bermuda company.  Defendant Bruce was appointed vice-chairman and successor chairman of the Committee of Trust Advisors which was established under the Declaration of Trust.  Sometime subsequent to February 8, 1996, again on the advice of and with the assistance of Defendants, De May caused 717,231 shares of the Optimay Corporation to be transferred to the Family Trust.

22.  As with the ASDM Trust #1, the Family Trust Agreement caused the trust to be a grantor trust for U.S. federal income tax purposes.  The named beneficiaries of the Family Trust were De May, Schrader-De May, their three children then living, three residents of Germany, three U.S. residents, and the Optimay Foundation.

23.  On or about February 8, 1996, again upon the advice of and with the assistance of Defendants, De May purportedly entered into a Trust Agreement creating the Optimay Foundation under Barbados law.  The named trustees were Dr. Trevor A. Carmichael, a Barbados resident, and Defendant Bruce.  Sometime subsequent to February 8, 1996, again on the advice of and with the assistance of Defendants, De May caused 150,000 shares of the Optimay Corporation to be transferred to the Optimay Foundation.  The Optimay Foundation Trust Agreement did not name any specific beneficiaries and did not prohibit distributions to United States charities.

24. Defendants did not at the time advise De May that United States tax law required the filing of an IRS Form 1023 (application for tax exempt status) in order to qualify the Foundation for tax exemption of income. Defendants first filed a Form 1023 on behalf of the Foundation on or about December 22, 1999. As a result, substantial capital gains and income realized by the Foundation in 1998 were not tax exempt and ultimately were chargeable to De May individually for income tax purposes.

25. On or about July 10, 1996, again upon the advice of and with the assistance of Defendants, De May purportedly entered into a Trust Agreement creating the De May - Optimay Comp Trust (the "DM-OC Trust") under Bermuda law. The named trustee was Grosvenor Trust Company Limited, a Bermuda company. Sometime subsequent to July 10, 1996, again on the advice of and with the assistance of Defendants, De May caused 607,231 shares of the Optimay Corporation to be transferred to the DM-OC Trust. The DM-OC Trust was intended to benefit the Optimay employee compensation plan, which was expected to take the form of a foreign trust, and the Trust Agreement specified that no U.S. persons could be beneficiaries.

26. On or about April 26, 1997, again upon the advice of and with the assistance of Defendants, and contrary to the terms of the DM-OC Trust Agreement, the employee compensation plan was adopted in the form of a stock option plan through Optimay Corporation, a U.S. corporation, rather than as a foreign trust.

27. Upon the advice of Defendants, De May did not file a Gift Tax Return, Form 709, with the Internal Revenue Service ("IRS") for the year 1996. Defendants'

advice that no Form 709 need be filed was based on their contention that the Optimay

stock which was conveyed to the ASDM Trust #1, the Family Trust, the Optimay

Foundation and the DM-OC Trust during that year had no value.

28.  However, also upon the advice of and with the assistance of Defendants, in

or about November, 1996, De May signed and filed two IRS Form 3520's regarding the

Optimay stock transfers to the ASDM Trust #1 and the Family Trust, indicating a value

as of the date of transfer of $6.66 per share.  The Forms 3520 also listed dates for the

transfers of the stock to the trusts which were inconsistent with the dates shown on the

trust agreements for the ASDM Trust #1 and the Family Trust.


### D.  Formation of Risk Capital Bermuda Fund, L.P.

29.  On or about December 12, 1997,  again upon the advice of and with the

assistance of Defendants, the Trustee for the De May Family Trust entered into a

limited partnership agreement under the laws of Bermuda which created the Risk

Capital Bermuda Fund, L.P. (the "Partnership").  The Partnership was formed to

address issues that had arisen in the operation and management of Optimay.

30.  On or about December 12, 1997, pursuant to the limited partnership

agreement, 627,231 shares of Optimay stock were transferred by the Family Trust to the

Partnership.

31.  Two of the partners of the Partnership were the Family Trust and Valmet

Isle of Man, Ltd. ("Valmet"), an entity formed under the laws of the Isle of Man.  The

main principal of Valmet was Peter Bond, a business associate of Defendant Bruce.

Bruce introduced Bond to De May.

32.  As a result of forming the Partnership and transferring Optimay Corporation stock to it, a "major disposition" occurred within the meaning of Optimay's subscription agreements with its first round investors.  This "major disposition" allowed De May to take certain actions with regard to Optimay which he otherwise could not have taken, including *inter alia* removing representatives of the first round investors from Optimay's Board of Directors.  Defendants did not explain to De May the United States tax implications of forming the Partnership and transferring the Optimay stock to it.

33.  In response to a subsequent inquiry by the IRS regarding the formation of the Partnership and the transfer of Optimay stock to it, Defendant Bruce stated that a reason for the formation of the Partnership was "diversification of assets".  Generally the transfer of property to a partnership is not a taxable event.  However, Bruce's specification of "diversification of assets" as a reason for creating the Partnership triggered an allegation by the IRS that the transfer of Optimay stock to it in 1997 was a taxable event.

### E.  Purported April 9, 1998 Amendments of the De May Trusts

34.  On or about April 9, 1998, Defendants purported to amend the ASDM Trust #1 such that it became a non-grantor trust.  The purported amendment also changed the trustee from Grosvenor Trust Company, Ltd. to Valmet, and caused the trust to migrate from Bermuda to the Isle of Man.  The named beneficiaries of the ASDM Trust #1

11

continued to be Schrader-De May, who was at the time a nonresident alien of the United States for U.S. federal income tax purposes, and the Optimay Foundation. The trust agreement for the Optimay Foundation was not, however, amended to prohibit distributions to United States charities.

35.   On or about April 9, 1998, Defendants purported to amend the Family Trust such that it became a non-grantor trust. The purported amendment also changed the trustee from Grosvenor Trust Company, Ltd. to Valmet, and caused the trust to migrate from Bermuda to the Isle of Man.   Defendant Bruce was appointed vice-chairman and successor chairman of the Committee of Trust Advisors which was established under the Amended Declaration of Trust. The named beneficiaries of the Family Trust, as amended, were De May, Schrader-De May, their four children, three residents of Germany, three residents of the United States, and the Optimay Foundation.

36.   On or about April 9, 1998, upon the advice of and with the assistance of Defendants,  the DM-OC Trust transferred 224,731 of its Optimay shares to the Optimay Foundation. It also transferred the remaining 382,500 shares of its Optimay stock to fund the stock option plan of Optimay Corporation.   Upon information and belief, the DM-OC Trust was thereupon terminated.

37.  No copies of the executed versions of the amended and restated trusts were made or maintained by Defendants. The originals have not been found.

**F.  Sale of Optimay Corporation to Lucent Technologies**

38.  On or about December 10, 1997, with the assistance of Defendants, De May began negotiating to sell Optimay  Corporation to a subsidiary of Lucent Technologies ("Lucent").

39.  On or about December 22, 1997, Defendants entered into a separate retainer agreement with De May with regard to the anticipated sale or disposition of his and his family's Optimay stock.  In addition to the hourly fees specified in the retainer agreement, Defendants had an "expectation of 60,000 shares" of Optimay which they expressed in a memorandum to De May.   These 60,000 shares were expected to come from De May's stock in Optimay.

40.  On or about April 16, 1998, just one week after the purported trust amendments, Optimay Corporation was sold to the Lucent subsidiary for a price of $16.53 per share.  The terms of the sale called for payment of $14.50 per share at time of settlement and the remaining $2.03 per share within 18 months of the purchase.

41.  The total price paid by Lucent for all the outstanding shares of Optimay at $16.53 per share came to at least $65 million.  The total amount received by De May, the Family Trust, the ASDM Trust #1, and the Foundation came to at least $20,000,000.

42.  Upon the advice of Defendants, De May did not report the capital gains from the sale of the Optimay Corporation stock held by the three trusts on his 1998 or 1999 U.S. income tax returns.  Defendants advised De May that, because the shares were owned by the trusts, he was not personally responsible for any income tax on the capital gains related to such shares.

### G. Further Amendments of Trusts, Changes in Trustees,
### Creation of Coyote Trails, Inc. and Ensuing Problems

43. Subsequent to the sale to Lucent, the two remaining trusts and the Foundation were further amended by Defendants on a number of occasions, and the trustees and some of the locations of the trusts were also changed, often without the knowledge of De May or Schrader-De May.

44. The ASDM Trust #1 was liquidated at some time between August and December of 1998 and all assets contained therein were purportedly distributed by Bruce to Schrader-De May, although without her or De May's knowledge. Then, on or about December 31, 1998, Bruce established the Anne Schrader-De May Revocable U.S. Trust ("ASDM Trust #2), with Defendant Bruce as trustee. The ASDM Trust #2 thereupon received assets previously owned by the ASDM Trust #1. Schrader-De May did not sign the document purporting to create the ASDM Trust #2, and Bruce did not inform De May or Schrader-De May of any of the activities referred to in this paragraph until substantially after the fact.

45. Subsequently, on or about January 31, 2000 the ASDM Trust #2 was amended and restated to add Bank of America, NA as co-trustee, along with Defendant Bruce. The Amended and Restated Revocable Trust Declaration stated, *inter alia*, that the ASDM Trust #2 would be governed by District of Columbia law, and gave District of Columbia addresses for both co-trustees. Again, Schrader-De May did not sign the document purporting to amend the ASDM Trust #2, and neither De May nor Schrader-De May was advised of this amendment until substantially after the fact.

46. In or about August of 1998, Bruce caused the Family Trust to distribute all

14

of its assets to an account allegedly for the benefit of Schrader-De May.  On or about

August 6, 1998, a check in the amount of $9,288,000.00 was written by Bruce on the

Family Trust account and deposited in the Moore & Bruce Trust Account, to be held on

behalf of Schrader-De May, thereby placing the trust assets under Defendants'

exclusive control without adequate protection or any restrictions or obligations imposed

by any existing trust agreement.   Once again, neither De May nor Schrader-De May

was advised of these activities until substantially after the fact.

47.  On or about August 8, 1998,  Bruce created a new De May Family Trust

(the "August 8 Family Trust"), naming Valmet, with an address of 4 Finch Road,

Douglas, Isle of Man, as trustee.   In or about August, 1998, the Family Trust assets

held in the Moore & Bruce Trust account were transmitted to Rahn & Bodmer

Banquiers in Zurich, Switzerland, and deposited into a new account opened and owned

by Bruce on behalf of the Family Trust.  This move placed the Family Trust assets

within the total control of Defendant Bruce and further restricted Plaintiffs' access to

the trust funds.  Again, neither De May nor Schrader-De May was advised of these

activities until substantially after the fact.

48.  Subsequent to the creation of the August 8 Family Trust, no fewer than

three changes in trustee were effected by Defendants.  The trustees who were appointed

subsequent to Valmet included an entity known as MTM, an entity known as IFG and

an entity known as CGI Corporate Services ("CGI"), all based in the Isle of Man.  Upon

information and belief, Defendant Bruce assumed the role of Chairman of the

Committee of Trust Advisors of the August 8 Family Trust at or about the time it was

15

created, a role he continued to play until at least March 16, 2006.

49. Subsequent to the creation of the August 8 Family Trust, Defendants caused the trust to form a United States corporation, known as Coyote Trails, Inc. ("Coyote Trails"). Coyote Trails then purchased a parcel of real property in the State of New Mexico, and funded the building of a home there for the benefit of De May, Schrader-De May and their family. Coyote Trails continues to be the owner of the New Mexico property, known as 124 Tano Road, Santa Fe, New Mexico. The August 8 Family Trust owns all of the stock of Coyote Trails. Upon information and belief, Defendant Moore was the first president of Coyote Trails.

50. In or about 2006 or 2007, CGI filed suit in the Isle of Man against the Family Trust, De May and members of his family, and Defendant Bruce, alleging various improprieties in the administration of the Family Trust by Defendant Bruce and by CGI's predecessor trustees, all of whom had been personally selected by Defendant Bruce.

51. On June 15, 2007 the High Court of Justice of the Isle of Man, Chancery Division, issued a Judgment which, *inter alia*, ordered the Family Trust, as well as Defendant Bruce personally, to pay sums of money to CGI as partial reimbursement of its legal fees.

52. On or about August 5, 1998, Defendant Bruce caused the Family Trust, the ASDM Trust #1, the Foundation and De May to purportedly create yet another new trust called the August 5, 1998 Trust (the "August 5 Trust") under the laws of the Isle of Man. The trustees of the August 5 Trust were Valmet Trust Company, Ltd., an Isle of

Man corporation, and Defendant Bruce.  Upon information and belief, funds were subsequently transferred to the August 5 Trust by the Family Trust, the ASDM Trust #1, the Foundation and De May.   Once again, neither De May nor Schrader-De May was advised of these activities until substantially after the fact.

## H.  IRS Audit and Prosecution

53.  In or about June of 1999, the IRS notified De May that it had opened an examination of his 1993 through 1998 taxable years.  There was a significant delay by the IRS before it started to actively work on the case.

54.  In or about June of 2001, Moore & Bruce responded to a number of Information Document Requests ("IDR's") issued by the IRS.  The response included a narrative chronology prepared by Moore & Bruce.

55.  In or about June of 2002 the IRS sent to De May an Explanation of Items (also known as "discussion reports") in which it explained its contentions regarding De May's tax liability for 1997 and 1998.

56.  In or about July of 2002, De May retained the law firm of McGuireWoods, LLP to assist in the defense of claims being made by the IRS.  The lead McGuireWoods attorney who represented De May was Douglas W. Charnas.

57.  Defendants continued to actively participate and assist in such defense until at least November 1, 2005.

58.  On or about July 23, 2004 the IRS sent an official deficiency notice to De May for the tax years ending December 31, 1996; December 31, 1997; and December

17

31, 1998.  The deficiencies assessed for 1996 included $12,377 in increased income tax and $5,260 in penalties.  The deficiencies assessed for 1997 included $2,569,899 in increased income tax and $861,267 in penalties.  The deficiencies assessed for 1998 included $7,490,711 in increased income tax and $1,499,351 in penalties.  The total amount claimed by the IRS for unpaid income taxes and penalties for 1996 - 1998 came to $12,438,365.

59.  Through McGuireWoods, and with the active assistance of Defendants, De May challenged the income tax deficiencies assessed by the IRS in its July 23, 2004 notice, and a contested matter was instituted in the United States Tax Court, *In re James M. De May*, Docket # 17512-04 (the "De May Income Tax Prosecution").

60.  On or about August 31, 2005, the IRS sent another deficiency notice to De May with regard to his gift tax liability for calendar periods December 31, 1996 and December 31, 1999.  The deficiency assessed for 1996 was $2,752,817, based upon alleged taxable gifts for that year totaling $6,008,758.  The deficiency assessed for 1999 was $47,500, based upon alleged taxable gifts for that year totaling $120,000.   In addition penalties totaling $11,875 were assessed.

61.  De May filed a petition challenging the gift tax deficiencies assessed by the IRS in its August 31, 2005 notice, and a second contested  matter was instituted in the United States Tax Court, *In re James M. De May*, Docket #22158-05 (the "De May Gift Tax Prosecution").

62.  As a result of the complexity of the trusts set up and repeatedly amended by Defendants, and of the tax issues raised by the nature of those trusts, the De May

Income Tax matter was referred to the IRS Office of Chief Counsel, which in or about 2004 issued a 32-page Chief Counsel Advice ("CCA") analyzing the legal issues raised in the prosecution.  Among other things, the CCA concluded that:

a.  Income realized on the sale of Optimay Corporation stock by the ASDM Trust #1 in April of 1998 was includible in the gross income of De May.

b.  Income realized on the sale of Optimay Corporation stock by the Family Trust in April of 1998 was includible in the gross income of De May.

c.  De May should be treated as the owner of the Optimay Foundation and income realized on the sale of Optimay Corporation stock by the Optimay Foundation in April of 1998 was includible in the gross income of De May.

d.  De May should be treated as the owner of the DM-OC Trust and income realized on the sale of Optimay Corporation stock by the DM-OC Trust in April of 1998 was includible in the gross income of De May.

e.  De May did not satisfy all of his information reporting requirements under I.R.C. Section 6048, or alternatively under Section 1492, and appropriate penalties under I.R.C. Section 6677 may be asserted.

The tenor of the CCA as a whole made it clear that the Office of Chief Counsel took a very dim view of the mechanisms recommended and created by Defendants.

### I.  Problems in Defense of IRS Prosecutions
### and Decision to Enter into Consent Judgment

63.  From 2002 through at least October of 2005, Defendants worked with De May and Douglas Charnas of McGuire Woods ("Charnas") in defending the De May Income Tax Prosecution.

64.  Prior to De May's retention of McGuire Woods, Defendants had responded to a number of Information Document Requests ("IDR's") issued by the IRS.  The responses included narrative chronologies prepared by Moore & Bruce, at least one of which was cited by the IRS in support of a position adverse to that of De May.

65.  After McGuire Woods got involved in 2002, Charnas assumed the lead in the IRS defense, with back-up assistance from the Defendants.

66.  In connection with their dealings with the IRS, Charnas and De May on more than one occasion requested Defendants to provide copies of critical trust documents, such as the purported April 9, 1998 and August 5 and 8, 1998 amendments. No originals or executed copies of the amendments have ever been produced.  This caused a substantial disadvantage in Charnas' efforts to defend the De May Income Tax Prosecution.

67.  The complex legal issues surrounding the creation, amendment and administration of the various trusts and the Foundation resulted in the issuance of a 32 page Chief Counsel Advice ("CCA") with a detailed analysis and critique of the legal positions which had been asserted by Defendants on behalf of Plaintiffs.

68.  Based upon Charnas' analysis of the respective legal positions taken by the IRS and the Defendants, and faced with ever-increasing legal expenses in defending

against the IRS in complex tax litigation, in or about November, 2005, De May concluded that he was best-advised to enter into a Consent Judgment with the IRS in the De May Income Tax Prosecution. Accordingly, in or about November of 2005, after full and thorough discussion with Charnas, De May entered into a Consent Judgment in the amount of $6,000,000.00 in satisfaction of his income tax deficiencies. With interest, the current balance due under the Consent Judgment is approximately $7,500,000.00.

69. On or about July 18, 2006, after a further full and thorough discussion with Charnas, De May settled the De May Gift Tax Prosecution by agreeing with the IRS that the stock conveyed by De May in 1996 and 1999 had a value greater than zero but less than the lifetime exclusion for gift taxes, such that no gift tax was due. Thus, the harms suffered by De May as a result of Defendants' erroneous advice regarding the need to file a gift tax return included the substantial legal fee paid to Charnas and McGuire Woods in defense of the De May Gift Tax Prosecution and a substantial diminution of De May's lifetime exemption for estate and gift taxes.

### J. **Aftermath**

70. Since entering into the $6,000,000 Consent Judgment with the IRS, De May's life has been a nightmare of defending against IRS collection efforts and enduring no direct access to the dwindling funds in the Family Trust.

71. De May's only source of income at present is a $75,000 salary he is paid as president of the Vaterstetten Foundation (successor to the Optimay Foundation).

72.  Because of the massive legal and trustees' fees incurred to establish the Family Trust, amend it numerous times, move its location several times, defend it against the IRS gift tax claim and defend it against the legal claim by CGI, its cash assets have been substantially and unnecessarily diminished.

73.  Moreover, because of the convoluted structure of ownership of the family home in Santa Fe, with a foreign trust owning a domestic corporation (Coyote Trails) which holds title to the property, the De May family faces substantial obstacles and tax consequences in selling or refinancing the property.

74.  In short, a payday for De May of over $20,000,000 has, over the past ten years, been transformed, as a result of Defendants' negligence and greed, into a $7,500,000 debt to the IRS, less than $1,000,000 in hard-to-access funds held by a foreign trust, and a tied up piece of real estate in New Mexico.

75.  Schrader-De May continues to have access to funds in the ASDM Trust #2, but she, along with her husband and children, has suffered diminishment of the Family Trust which was created by Defendants as the chief vehicle for their support. Furthermore, she has been individually damaged by the expenses incurred to create and repeatedly amend the ASDM trusts, which were not beneficial to her.

## CAUSES OF ACTION

### COUNT ONE
**(Legal Malpractice - All Defendants)**

76.  Plaintiffs incorporate by reference the allegations set forth in paragraphs one through seventy-five of the foregoing Complaint into this, the first count thereof.

77.  Defendants, having agreed to be retained as their attorneys by Plaintiffs, had a duty to use that degree of care reasonably expected of other legal professionals with similar skills acting under the same or similar circumstances.

78.  Defendants breached their said duty of care by:

a.  Advising Plaintiff De May to create foreign trusts and a foreign foundation in order to avoid paying income tax, where Defendants knew, or in the exercise of due care should have known, that the trusts and the foundation, as designed and implemented by Defendants, would not accomplish the purpose of avoiding income tax;

b.  Negligently attempting, one week before the sale of Optimay to Lucent, to convert the ASDM Trust #1 and the Family Trust from grantor trusts, within the meaning of Section 679 of the Internal Revenue Code, to non-grantor trusts, thereby raising serious questions by the IRS;

c.  Negligently advising Plaintiffs that the attempted conversion to non-grantor trusts would protect De May from the requirement that he include the capital gains income from the sale of Optimay to a subsidiary of Lucent in his gross income for tax purposes;

d.  Failing to preserve critical documents, such as originals or executed

23

copies of the purported amendments to the trusts and the foundation, for use in defense of the IRS claims;

        e.  Failing to file an IRS Form 1023 in time for De May to be entitled to claim that the capital gains realized in 1998 and 1999 on the Optimay stock sold by the Foundation were tax exempt;

        f.  Failing to advise De May that he should file a Gift Tax Return with the IRS for the year 1996;

        g.  Advising and assisting De May with regard to two IRS Form 3520's, shortly after the time of De May's contribution of Optimay stock to the three trusts and the foundation in 1996, indicating a value of $6.66 per share, and later taking the position with the IRS that no gift tax was due because, at the time of the gifts, the stock had no value;

        h.  Failing to advise Plaintiffs that the transfer of Optimay stock from the Family Trust to Risk Capital Bermuda Fund, L.P. in December of 1997, constituted a taxable event, necessitating the filing of a Gift Tax Return for 1997.

        i.  Negligently claiming, in a response to an Information Document Request ("IDR") from the IRS, that a reason for the creation of the Risk Capital Bermuda Fund, L.P. was diversification of assets, thereby allowing the IRS to credibly contend that the transfer of Optimay stock to Risk Capital in 1997 was a taxable event;

        j.  Back-dating critical trust documents, and failing to ensure that the effective dates of such documents did not conflict with the signature dates of the parties to the trust agreements;

k.  Repeatedly amending the trusts and the foundation documents to change the nature and location of the trusts and the identity of the trustees, without informing Plaintiffs De May or Schrader-De May until substantially after the fact.

l.  Causing the ASDM Trust # 1 and the Family Trust, between August and December of 1998, to distribute all of their assets to Schrader-De May, in violation of provisions in the trust documents and without the knowledge of De May or Schrader-De May, thereby exposing those assets to substantial risk and allowing the IRS and others to later argue that these were improper distributions for non-grantor trusts.

m.  Advising and assisting Plaintiffs to create a domestic corporation, Coyote Trails, Inc., owned by a foreign trust (the August 8 Trust), to own the Plaintiffs' home in Santa Fe, New Mexico;

n.  Minimizing the seriousness of the IRS claims and encouraging Plaintiffs to aggressively defend against them when they knew, or in the exercise of due care should have known, that the IRS was likely to prevail in most of its claims due to the problems caused by Defendants; and

o.  Advising and assisting Plaintiffs regarding the selection of trustees, and actually choosing most of the trustees, including but not limited to Defendant Bruce and Valmet, who failed to act in the best interests of the trusts or the trust beneficiaries.

p.  Failing to advise Plaintiffs that Defendants had a conflict of interest, in violation of Rules 1.7(b)(4) and 1.8(a) of the District of Columbia Rules of Professional Conduct, and acting in such a manner as to benefit themselves at the expense of the Plaintiffs.

25

79.    As a direct and proximate result of Defendants' breaches of their duty of care, as aforesaid, Plaintiffs have suffered substantial and permanent damages, including but not limited to:

a.  A Consent Judgment by the IRS against De May in the amount of $6,000,000, plus interest from November 2005, with a current amount due of approximately $7,500,000.00;

b.  De May's loss of a tax exemption worth more than $1,000,000 related to the sale of Optimay stock by the Optimay Foundation in 1998;

c.  Diminution of De May's lifetime exemption for estate and gift taxes;

d.  Very substantial and unnecessary legal and trustees' fees incurred to establish the trusts and the foundation, to amend them numerous times, to move their location several times, to defend De May against the IRS Income Tax Prosecution; to defend De May and the Foundation against the IRS Gift Tax Prosecution; and to defend the Family Trust against the legal claim by CGI in the Isle of Man;

e.  Diminishment of the value of the Family Trust resulting from expenditures which were not subject to De May's control, and the substantial and unnecessary legal and trustees' fee referred to in the preceding sub-paragraph;

f.  Loss of access by De May to the proceeds of the sale of Optimay;

g.  Loss of the ability to sell or refinance the De May family home without overcoming large obstacles and paying substantial taxes;

h.  Loss of opportunity to invest the funds that De May should have realized from the sale of Optimay to Lucent and to use those funds to generate income

26

and/or capital gains; and

     i. Severe psychological and emotional distress.

     WHEREFORE, Plaintiffs respectfully demand judgment against Defendants, jointly and severally, for legal malpractice in the amount of Ten Million Dollars ($10,000,000), plus their costs and reasonable attorneys' fees, and such other and further relief as the Court may find justified under the circumstances.

### COUNT TWO
**(Breach of Fiduciary Duty - Defendant Bruce)**

80. Plaintiffs incorporate by reference the allegations set forth in paragraphs one through seventy-nine of the foregoing Complaint into this, the second count thereof.

81. In his capacity as vice-chairman and then chairman of the Committee of Trust Advisors for the Family Trust since its inception and through its various reformulations, and as co-trustee of the Optimay Foundation since its inception, Defendant Bruce had a fiduciary duty to De May as the settlor, and to Schrader -De May and the other beneficiaries of the Family Trust, to act in good faith and not to engage in self-dealing, constructive fraud, or any other arrangement whereby he personally profited from transactions involving the Family Trust.

82. During his tenure as vice-chairman and then chairman of the Committee of Trust Advisors for the Family Trust and as co-trustee of the Optimay Foundation, Defendant Bruce regularly made decisions which benefited himself, his law firm and his business colleagues, and harmed the beneficiaries. He approved payments of

27

substantial legal fees to his law firm, Defendant Moore & Bruce, for services which were below the standard of care and/or unnecessary.  He authorized the payment of substantial trustee fees to himself and his business colleagues, including but not limited to Valmet, which were unnecessary and, upon information and belief, excessive.   He amended the Family Trust and the Foundation and moved their locations on multiple occasions without Plaintiffs' knowledge or consent, all of which benefited Defendant Bruce, his law firm and his colleagues, but harmed Plaintiffs.

83.  As a direct and proximate result of these breaches of fiduciary duty, Plaintiffs incurred damages as set forth in paragraph 79, *supra*.

84.  In breaching his fiduciary duty as aforesaid, Defendant Bruce acted in willful disregard for the rights of Plaintiffs, and his conduct was outrageous and reckless toward the safety of the Plaintiffs and their property.  Accordingly, Plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant Charles M. Bruce for breach of fiduciary duty in the amount of Ten Million Dollars ($10,000,000), plus punitive damages in an amount to be determined by the Court, plus their costs and reasonable attorneys' fees, and such other and further relief as the Court may find justified under the circumstances.

## COUNT THREE
### (Constructive Fraud - All Defendants)

85.  Plaintiffs incorporate by reference the allegations set forth in paragraphs one through eighty-four of the foregoing Complaint into this, the third count thereof.

86.  Defendants, in their capacity as attorneys handling the complex transactions described *supra*, including but not limited to the formation of foreign trusts and the distribution of De May's assets thereto, assumed with De May a position of trust and confidence which gave rise to a fiduciary duty owed by Defendants to De May.

87.  De May justifiably relied on Defendants to properly effectuate the financial plan they formulated for him in a way that would not expose De May to unnecessary tax liabilities.  Specifically, De May justifiably relied on Defendants' representations to him that:

a.  The sale of Optimay stock by the four original trusts created by Defendants would not result in the realization of capital gains by De May for income tax purposes.

b.  The transfer of assets from the Family Trust to the Partnership would not be a taxable event or require the filing of a Gift Tax Return.

88.  Defendants made each of the foregoing representations recklessly, in that they knew, or in the exercise of due care should have known, that they were untrue.

89.  Defendants continued to make the aforementioned representations after the IRS had issued documents demonstrating that they were false.

90.  In making the aforementioned representations, Defendants sought to benefit themselves by, *inter alia*, collecting unnecessary and excessive attorneys' fees and, in

29

the case of Defendant Bruce, unnecessary and excessive trustees' fees

91.  As a direct and proximate result of De May's justifiable reliance on Defendants' misrepresentations, he and the other Plaintiffs hereto have been damaged as set forth in paragraph 79, *supra*.

92.  In making the misrepresentations as aforesaid, Defendants acted in willful disregard for the rights of Plaintiffs, and their conduct was outrageous and reckless toward the safety of the Plaintiffs and their property.  Accordingly, Plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants, jointly and severally, for constructive fraud in the amount of Ten Million Dollars ($10,000,000), plus punitive damages in an amount to be determined by the Court, plus their costs and reasonable attorneys' fees, and such other and further relief as the Court may find justified under the circumstances.

<div style="margin-left: 40%;">

Respectfully submitted,

JAMES MICHAEL DE MAY
ANNE SCHRADER-DE MAY
THE DE MAY FAMILY TRUST
Plaintiffs
By Counsel

</div>

CROWLEY, HOGE & FEIN, P.C.

By: _____

<div style="text-align: center;">30</div>

Christopher G. Hoge #203257

Attorneys for Plaintiffs
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C.  20036
(202) 483-2900

## JURY DEMAND

Plaintiffs hereby demand trial by jury as to all issues of fact raised herein.

_____
Christopher G. Hoge

cgh/z/wpdirs/civ
demaycpl2.wpd

31

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| James Michael De May<br>Anne Schrader-De May<br>The De May Family Trust | Moore & Bruce, LLP<br>Charles M. Bruce<br>Jonathon R. Moore |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT      11001<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Christopher G. Hoge<br>Crowley, Hoge & Fein, P.C.<br>1710 Rhode Island Ave., NW, #700<br>Washington, DC 20036<br>(202) 483-2900 | Unknown |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)      OR      ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC Sec. 1332 - Claim for Legal Malpractice, Breach of Fiduciary Duty & Constructive Fraud

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ 10,000,000.00    Check YES only if demanded in complaint

JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE    5-15-08    SIGNATURE OF ATTORNEY OF RECORD    *[signature] Stephen G. ____*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.