UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES MICHAEL DE MAY, *et al.*,       )
                                       )
                 Plaintiffs            )
                                       )
        v.                             )      Case No. 1:08-cv-00845
                                       )      Judge Huvelle
MOORE & BRUCE, LLP, *et al.*,          )
                                       )
                 Defendants            )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Come now the Plaintiffs, James Michael De May, Anne Schrader De May, and The De May Family Trust, by their undersigned counsel, and respectfully submit to the Court this Memorandum in opposition to Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

## I.  <u>INTRODUCTION</u>

If ever a case fit squarely within the so-called "continuous representation rule", it is this one.  The facts, as set forth in the accompanying affidavits and supporting documentation from Plaintiffs James Michael De May ("De May") and Anne Schrader-De May ("Schrader-De May"), and Attorney Douglas W. Charnas ("Charnas"), clearly demonstrate that Defendants, Jonathon Moore ("Moore"), Charles Bruce ("Bruce") and their law firm of Moore & Bruce, LLP, actively represented the Plaintiffs with regard to all matters discussed in the Complaint until at least May of 2006.  The Complaint herein was filed in May of 2008, well within the statutory time period.

Defendants' desperate effort to carve out some kind of novel exception to the continuous representation rule for attorneys who work in an allegedly secondary or back-up role is totally unsupported either by the facts of this case or by any case law whatsoever.  As will be clearly demonstrated, the motion to dismiss or for summary judgment is frivolous and should be denied.

## II.  COUNTER-STATEMENT OF FACTS

Plaintiffs incorporate by reference all of the facts set forth in the Complaint, which, of course, must be viewed, for purposes of the instant motion, in the light most favorable to Plaintiffs.  *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994).   In addition, Plaintiffs submit herewith three affidavits with supporting documentation which establish the following relevant facts:

While De May originally retained Moore & Bruce in 1995 to assist him in finding sources of capital for his company, known as Optimay[1], by the following year the scope of representation clearly extended into the areas of international trusts and taxation.  Complaint, par. 19 - 37.  During De May's early discussions with Bruce, Bruce advised De May that he specialized in the areas of international taxation, estate planning and foreign trusts.  *See,* Affidavit of James Michael De May, attached hereto as Ex. 1, at par. 4.  In 1996, Moore & Bruce advised De May to create four trusts, to be located outside the United States, to receive De May's shares of Optimay stock.  The primary purpose of the trusts, according to Moore & Bruce,

---

[1]Optimay started life as a German company known as Optimay GmbH.  Complaint, par. 10-12.  In September of 1995, Defendants helped De May form a new Delaware corporation, named Optimay Corp., to raise capital.  *Id.*, par. 17.  In this Memorandum, the business will be referred to simply as "Optimay".

was to save United States taxes in the event of a sale of Optimay, which was contemplated as a very likely prospect at the time. *Id.*, par. 6.

When De May accepted their advice to set up these trusts, Moore & Bruce devised a maze-like off-shore structure with multiple locations spanning two continents, and did all the paperwork and legal work in connection therewith. De May and Schrader-De May had no prior experience with, or knowledge of, these kinds of trusts. *Id.*

In their accompanying affidavits, De May and Schrader-De May both attest that Moore and Bruce continued to serve as their counsel with regard to the trusts, and with regard to dealing with the Internal Revenue Service concerning tax issues relating to the trusts, until at least May of 2006. Ex. 1, par. 7; Ex. 2 (Affidavit of Anne Schrader-De May), par. 3. Attached to Ex. 1 is an e-mail with an attached letter from Bruce, dated May 14, 2006, which was sent to John Wright, an attorney in the Isle of Man. In the letter, Bruce writes as follows:

> My name is Charles Bruce. I am a partner in the Washington, DC law firm of Moore & Bruce, LLP. Moore & Bruce has represented the De May family for over ten years. We have represented the De May Family Trust and predecessor trusts since their inception. Our representation of the De May Family Trust was *recently confirmed* in a retainer letter signed by CGI [one of the corporate trustees of the Family Trust, which sued the trust in the Isle of Man]. I *am* the Chairman of the Committee of Trust Advisors of that trust. I am trustee of the Trust dated 5 August 1998, which in turn benefits the De May Family Trust; ... I am also a co-trustee, together with the Bank of America, N.A., of the Anne Schrader De May Trust, a US trust benefiting (sic) Anne Schrader De May. Additionally I am a co-trustee of the Vaterstetten Foundation (Barbados), formerly called the Optimay Foundation.

A copy of this letter was sent to De May. Ex. 1 (A)(emphasis supplied).[2]

Moore & Bruce also advised De May and Schrader-De May to form a corporation,

---

[2]The affidavits supporting this motion are referred to numerically (Ex. 1, 2, 3 ...). Documents referenced in the affidavits are referred to by letter (e.g. Ex. 1(A)).

Coyote Trails, Inc., to own their home in Santa Fe, New Mexico.  Moore & Bruce incorporated

Coyote Trails, which was wholly owned by the De May Family Trust.  Jonathon Moore served

as first president and sole director of Coyote Trails until at least May, 2006.  Ex. 1, par. 9; Ex.

1(B).

Charles Bruce served as a trustee of the Anne Schrader-De May Trust until April 3, 2007,

when Schrader-De May wrote a letter asking him to resign.  Ex. 2, par. 4; Ex. 2(A).  Moore &

Bruce billed Schrader-De May for work related to her trust through February 13, 2007.

According to those bills, Charles Bruce did work related to the trust through November 17, 2006.

Ex. 2, par. 5; Ex. 2(B) and ( C).

In July of 2002, De May retained the law firm of McGuire Woods, and specifically

Attorney Charnas, to deal with the IRS audit which had been going on since 1999.  Complaint,

par. 53-56; Ex. 1, par. 10; Ex. 3 (Affidavit of Douglas W. Charnas), par. 3.  While Charnas and

McGuire Woods did assume a leading role in dealing with the IRS audit and prosecution, which

centered around the creation and attempted amendment of the trusts by Moore & Bruce, both

Bruce and Moore stayed very much involved as co-counsel until at least December of 2005.  Ex.

1, par. 10; Ex. 3, par. 4-8.  De May advised Charnas that the four off-shore trusts had been

recommended and created by Moore & Bruce, and De May requested that Charnas meet with

Messrs. Bruce and Moore so that they could explain the transactions leading up to the tax audit.

During the Summer and Fall of 2002, Charnas had several telephone conversations with Bruce,

asking for documentation pertaining to the trusts and the audit.  In December, 2002, Charnas

attended meetings with De May, Moore and Bruce in the Moore & Bruce offices in Washington,

D.C., during which Bruce explained the history of the formation of the four off-shore trusts and

why, in his view, De May should not be personally liable for the capital gains from sale of the Optimay stock owned by the trusts.   The three lawyers also discussed approaches for handling the IRS audit and any potential litigation with the IRS.  *Id.*, par. 4-5.

It was always Charnas' understanding that until at least May of 2006, Moore and Bruce continued in their capacities as attorneys for De May and his family in connection with management of the De May Family Trust and the Anne Schrader-De May Trust; and with management of Coyote Trails, Inc., a corporation created by Moore & Bruce and wholly owned by the De May Family Trust; and with regard to the IRS audit.  Charnas considered Moore & Bruce to be part of a team of attorneys representing De May in his tax matters, and he frequently consulted with them, both orally and in writing, to ascertain facts about the creation, amendment, migration and termination of the trusts and the sale of the Optimay stock, as well as to understand the legal analysis that had led Moore & Bruce to advise De May that he should have no personal tax liability as a result of the stock sale.  Ex. 3, par. 7.

Charnas was unaware of any change in the attorney-client relationship between Moore & Bruce and De May until at least May, 2006.  Despite the expense of having McGuire Woods and Moore & Bruce both representing him, Charnas and De May decided to keep Moore & Bruce involved because they had knowledge of the relevant facts and, supposedly, possession of the critical documents.  Charnas also felt that it would be prudent to have them available for strategy conferences concerning the IRS and trust matters, and between 2002 and November of 2005 he discussed legal and factual issues with Moore & Bruce regarding De May's tax issues.  Ex. 3, par. 8.

As examples of Moore & Bruce's involvement in the tax issue *after* May 15, 2005[3], on or about August 24, 2005, Charnas received an e-mail from Bruce concerning Bruce's suggested responses to interrogatories which had been received from the IRS. Ex. 3(A). On or about August 25, 2005, Charnas received an e-mail from Bruce concerning Bruce's efforts to locate certain documents concerning the migration of the De May Family Trust and the Anne Schrader-De May Trust. Ex. 3(B). On or about August 26, 2005, Charnas received an e-mail from Moore containing his and Bruce's comments about proposed responses to interrogatories from the IRS. Ex. 3 ( C). On or about September 2, 2005, Charnas received a Memorandum from Bruce concerning proposed responses to IRS inquiries in connection with the De May tax audit. The Memorandum includes, on page 4, a discussion of how certain actions regarding the trusts "avoided triggering taxable income" for De May. Ex. 3(D).

On or about September 5, 2005, Charnas received a Memorandum from Bruce concerning the tax audit. Included in the Memorandum, among other things, is a detailed discussion of the roles being played by McGuire Woods and Moore & Bruce. It states that "Moore & Bruce, LLP represents the De May family as to tax and related matters and the De May Family Trust, which benefits the family". Ex. 3(E).

Through e-mails and other communications, Charnas was also aware of Moore & Bruce's involvement, well after May 15, 2005, with the De May Family Trust, the Anne Schrader-De May Trust and the Foundation. As examples, on or about September 26, 2005 and October 3, 2005, Charnas received copies of e-mails sent by Bruce to Jane Simmons of Grosvenor Trust

_____

[3]The Complaint was filed on May 15, 2008. Accordingly, this memorandum focuses on continuing representation after May 15, 2005.

Company, Limited concerning the need to obtain trust documents for the Anne Schrader-De May Trust, the De May Family Trust and the De May-Optimay Comp Trust. in connection with litigation involving the trusts which was then pending in the Isle of Man. Ex. 3(F).

On or about May 14, 2006, Charnas received copies of an e-mail and a FAXed letter from Bruce to John Wright, an attorney representing CGI Corporate Services, Ltd. in the Isle of Man litigation. CGI was a company retained by Bruce to serve as successor trustee of the De May Family Trust; it was one in a series of successors, all hand-picked by Bruce, to succeed the original Isle of Man trustee, a company called Valmet. CGI had filed a petition in the Isle of Man court challenging certain actions which had been taken by the previous trustees and by Bruce. In his letter to Mr. Wright, Bruce states that "Moore & Bruce has represented the De May family for over ten years". Ex. 3(G). On or about May 18, 2006, Charnas received two e-mails from Bruce regarding the petition filed by CGI in the Isle of Man. In one of the e-mails, Bruce suggested that "CGI, the settlors and the beneficiaries agree to an amended and restated version of the De May Family Trust (the De May Family Trust Dated 8[th] August 1998) to clean up whatever concerns CGI thinks there are". Ex. 3(I). On or about May 25, 2006, Charnas received an e-mail from Bruce with an attached draft letter that Bruce suggested Charnas send to John Wright, addressing CGI's concerns about the De May Family Trust. Ex. 3(J).

Charnas was also aware that Jonathon Moore remained involved with Coyote Trails until at least May 15, 2006. Ex. 3, par. 16; Ex. 3(H).

Schrader-De May had continuing relations with Moore & Bruce concerning both her own trust and the Family Trust until at least April of 2007. Ex. 2. For example, on July 21, 2006 she made extensive notes of a lengthy telephone discussion with Bruce and De May about the Isle of

Man litigation and other issues concerning the Family Trust.  Ex. 2(D).  Bruce remained as co-trustee of the Anne Schrader-De May Trust until April 3, 2007, when she wrote a letter asking him to resign.  Ex. 2(A).

Perhaps the most telling evidence of Defendants' continuous representation of Plaintiffs until at least the end of 2006 consists of their own invoices, attached to the affidavits of De May and Schrader-De May.   Ex. 1(F) consists of bills De May received from Moore & Bruce LLP between December 27, 2005 and May 11, 2006.  These bills specified separate amounts due for "Coyote Trails, Inc.", for the "De May Family Trust", and for the "Tax Audit".  The January 25, 2006 bill shows a charge by Moore on December 27, 2005 for a "telephone conference with Mr. Charnas regarding IRS settlement and opinion of New Mexico counsel".  Moore and Charnas were seeking the opinion of New Mexico counsel as to whether the De May family's Santa Fe home was vulnerable to attachment in satisfaction of the IRS' judgment against De May.

In sum, the evidence of Moore & Bruce's continuing representation of De May, Schrader-De May and the Family Trust on matters involving the trusts, the IRS audit and Coyote Trails through 2005 and well into 2006 is overwhelming.  Moreover, Bruce's roles as co-trustee of the Anne Schrader-De May Trust and Chairman of the Committee of Trust Advisors of the Family Trust, and the fiduciary duties owed in connection with those roles, did not terminate until after May of 2006.

### III.  ARGUMENT

#### A.  The Standard for Summary Judgment.

As Defendants note at page 12 of their Memorandum, under Fed. R. Civ. P. 12(d), "[I]f,

on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56".  In the instant case both sides are relying upon affidavits and other materials attached to their motion papers, and determination of the motion will be dependent upon the Court's analysis of the affidavits and attached materials.  Thus, Defendants' motion must be treated as one for summary judgment.  *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Knight v. Furlow*, 553 A.2d 1232 (D.C. 1989).

   The general standard governing the grant or denial of a motion for summary judgment is well-established.  Summary judgment is an extreme remedy and appropriate only when there are no material facts in issue and it is clear that the moving party is entitled to judgment as a matter of law.  *Maddox v. Bano*, 422 A.2d 763, 764 (D.C. 1980); *Willis v. Cheek*, 387 A.2d 716 (D.C. 1978).  The moving party has the burden of establishing that there is no issue of material fact, and the record is viewed in the light most favorable to the party opposing the motion.  *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994).  Any doubt as to the existence of a factual dispute must be resolved against the movant.  *Swann v. Waldman*, 465 A.2d 844 (D.C. 1983).

   Plaintiffs agree that District of Columbia law applies to this case.


## B.  <u>The Continuous Representation Rule</u>

   For some reason, Defendants spend four pages of their Memorandum discussing the discovery rule and its application to the statute of limitations issue in this litigation.  Plaintiffs do not rely on the discovery rule, but rather on the continuous representation rule.  Indeed, the

District of Columbia Court of Appeals has made it clear that "the continuous representation rule ... is an exception to the discovery rule thereby extending the time period of filing suit so as to allow the attorney the opportunity to correct or mitigate the error and thus perhaps negate the need for the suit". *R.D.H. Communications v. Winston*, 700 A.2d 766, 770 (D.C. 1997) (citing to Mallen & Smith, <u>Legal Malpractice</u>, Section 21.12, at 18 (4th ed. 1996).[4]

Even if the discovery rule were found to be applicable to this case, "[s]ummary judgment is not appropriate in a case applying the discovery rule if there is a genuine issue of material fact as to when, through the exercise of due diligence, the plaintiff knew or should have known of her injury". *Byers v. Burleson*, 713 F.2d 856 (D.C. Cir. 1983). *See also, Goldman v. Bequai*, 19 F.3d 666 (D.C. Cir. 1994); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1484 (D.C. Cir. 1989).

However, in this case Plaintiffs rely not upon the discovery rule, but rather on the exception to that rule, known as "continuous representation".   Under the doctrine of continuous representation, "a cause of action [for legal malpractice] does not accrue until the attorney's representation concerning the particular matter in issue is terminated." *R.D.H. Communications*, 700 A.2d at 768.  In order for this doctrine to apply, the defendant attorney must continue to represent the client "in the subject matter in which the error has occurred."  Mallen & Smith, Section 23.13 at 419.  Ongoing "general representation" will not toll the statute of limitations. *Shipman v. Kruck*, 593 S.E.2d 319, 324 (Va. 2004).

In order to satisfy the "continuous" requirement, there must be "clear indicia of an

---

[4]In the current 2008 edition of Mallen & Smith, the section containing this discussion is Section 23:13, at 420.

ongoing, continuous, developing and dependent relationship between the client and attorney . . .

." *Smith v. Stacey*, 482 S.E.2d 115, 121 (W. Va. 1996) (citing *Muller v. Sturman*, 79 A.D.2d 482

(N.Y. App. Div. 1981). A court should consider the "objectives of the prior retention and

whether the present activities fall within those objectives." Mallen & Smith, Section 23.13 at

447. Here, Defendants were retained to oversee the overall management of the De May assets

acquired through the sale of Optimay, and their actions through at least May 2006 were in

furtherance of this objective.

Determining when an attorney's representation terminated for purposes of the statute of

limitations "is a question of fact," and thus should not be resolved summarily. *R.D.H.*

*Communications* 700 A.2d at 768. *See also, F.D.I.C. v. Alexander,* 78 F.3d 1103 (6th Cir. 1996)

("[T]he question of when an attorney-client relationship for a particular undertaking or

transaction has terminated is necessarily one of fact.") (citing *Omni-Food & Fashion*, 528

N.E.2d 941, 944 (Ohio 1988)); *Thayer v. Fuller*, 503 F. Supp. 2d 887, 891 (N.D. Ohio 2007)

("[T]he date of termination of the attorney-client relationship is a question of fact and is to be

determined by considering the actions of the parties.").

District of Columbia courts have recognized that continued administration of a trust

constitutes continued representation for purposes of tolling the statue of limitations in legal

malpractice actions. *Greene v. Greene*, 56 N.Y.2d 86, 436 N.E.2d 496, 451 N.Y.S.2d 46 (N.Y.

1982), a case cited by the District of Columbia Court of Appeals in *R.D.H. Communications*, is

analogous to the instant case. In *Greene,* the plaintiff sued her attorneys for rescission of a trust

agreement they had created to manage her inheritance, claiming that the defendants had

improperly induced her to sign the agreement, which she did not understand. The plaintiff also

11

alleged mismanagement of funds, accusing the defendants of "self-dealing" by inducing her to invest in companies in which they had a stake.  The defendants countered that the suit was barred by the applicable statute of limitations and that the "continuous representation" exception did not apply because the "creation of the trust and its management are discrete acts."  56 N.Y.2d at 95.  The *Greene* court disagreed, holding that "the defendants performed legal services on the plaintiff's behalf by creating the trust and continued to act as her attorney in all legal matters relating to its administration. . . . [T]he plaintiff alleges that this was an integrated plan proposed by the defendants as a solution to her concern over the proper investment of her funds.  If these allegations are credited, the defendants' various activities on plaintiff's behalf can be seen as part of a course of continuous representation concerning the same or a related problem."  *Id.*   The court further stated that "[a] client who entrusts his assets to an attorney for professional assistance often faces the same dilemma as the client who entrusts his case to an attorney for possible litigation.  In neither instance can the client be expected, in the normal course, to oversee or supervise the attorney's handling of the matter, and thus in neither case is it realistic to say that the client's right of action accrued before he terminated the relationship with the attorney."  *Id.* at 94-95.

The *Greene* case was cited by the District of Columbia Court of Appeals in *R.D.H. Communications* as support for the proposition that the attorney-client relationship is one of trust, and a client should not be expected to question his attorney's expertise while the professional service is in progress, particularly where the attorney expresses confidence the error can be remedied.  *R.D.H. Communications* 700 A.2d at 769.  Mallen & Smith cite *Greene* as supporting the proposition that continuous representation can include "collateral matters after

termination of the main representation.", as long as "the activities ... relate to the main task or particular undertaking in which the error occurred".    Mallen & Smith, Section 23.13  at  at 445.

Contrary to their assertions, and as can be clearly seen from the attachments to this Memorandum, Defendants' representation as to the "particular matter in issue" was not terminated until at least May of 2006.  As with the defendant attorneys in *Greene*, Moore & Bruce acted as the De Mays' primary attorneys in all legal matters relating to the administration of the various trusts, and actively assisted in defending against the deficiency notices issued by the IRS and the litigation instituted against the De May Family Trust in the Isle of Man, through at least December of 2005.  This representation was directly related to the defendants' negligence in creating and amending the various De May trusts, and did not involve separate, "discrete matters" as defendants allege.

Without citing any authority whatsoever, Defendants urge upon this Court a novel and unprecedented exception to the continuous representation rule, which would distinguish between lawyers who continue to represent plaintiffs in related matters as lead counsel, and those who do so in a secondary or subsidiary role.  Defendants claim that such an exception is warranted by the public policy reasons behind the continuous representation rule, namely, "to permit attorneys who have allegedly acted negligently an opportunity to correct and/or mitigate their mistakes".  Defendants' Memorandum, at 23 (citations omitted).

Counsel for Plaintiffs has combed through virtually every continuous representation case decided in this country, as well as the Mallen & Smith treatise, in an unsuccessful effort to find one court which has made such a distinction.  Of course, if such a case exists, Defendants would certainly have referred to it in their massive motion.  There is no such case.

The assertion that the policy rationale underlying the continuous representation rule is inapplicable to lawyers acting in a secondary or subsidiary role is equally unavailing. The purpose underlying the rule is "preserve the attorney-client relationship and enable the attorney to correct, avoid or mitigate the consequences of an apparent error." Mallen & Smith, Section 23:13, at 420. Here, Plaintiffs trusted the Defendants, who held themselves out as experts in international taxation, estate planning and foreign trusts, to manage their assets, and Plaintiffs and Defendants were both motivated to have Defendants "correct, avoid or mitigate the consequences" Defendants' errors. That motivation did not change as a result of Charnas and McGuire Woods being brought in for assistance. Defendants' claim that they were "denied the opportunity to correct and/or mitigate any of their alleged mistakes", Defendants' Memorandum, at 23, is misrepresentative of the facts, because it is clear that they remained actively involved, well into 2006, in attempting to resolve issues relating to the trusts with both the IRS and the Isle of Man courts. Ex. 1, 2 and 3.

The cases cited by Defendants in support of the proposition that "continued general representation does not toll the statute of limitations when the continued representation is separate from the alleged negligent representation", Defendants' Memorandum, at 21-22, are factually inapposite. One of those cases, *Shipman v. Kruck*, 267 Va. 495, 593 S.E.2d 319 (2004), in fact supports application of the continuous representation rule even where substitute counsel is brought in. *Shipman* involved a claim of negligence in filing a bankruptcy petition. The defendant attorney withdrew as the plaintiffs' counsel and "advised them that he would be more valuable as a witness in the bankruptcy proceedings ...". Accordingly, he argued that the limitations period started running as of the date he withdrew. However, the Supreme Court of

Virginia disagreed:

> The proper inquiry is not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the particular undertaking at issue has ceased....
>
> For purposes of the continuous representation rule, it is irrelevant whether substitute counsel is acquired or when that occurs. The date the alleged negligent attorney's representation of the client terminates is the relevant date which commences the running of the statute of limitations.

267 Va. 505-6.

Defendants argue that the continuous representation rule does not apply to De May's problems with regard to gift tax liability. Defendants' Memorandum, at 24-25. According to the Complaint, on August 31, 2005, the IRS sent De May a deficiency notice assessing $2,752,817 for gifts made in 1996 totaling $6,008,758. Complaint, par. 60. Defendants' Ex. 17, a letter dated April 19, 2004 from Charnas to Benita M. Alexandre, Esq., of the IRS, makes it clear that this gift tax assessment related to "Mr. De May's transfer of stock to the Anne Schrader De May Trust and the De May Family Trust ... in 1996". This was the scheme devised by Moore & Bruce, as discussed at par. 19 - 22 of the Complaint. Defendants' continued involvement with those trusts has already been established. Their continuing involvement with the gift tax assessment is evidenced by an e-mail, dated October 7, 2005, in which De May asks Bruce to assist with preparation of affidavits in connection with the gift tax issue. Ex. 4. At the very least, the question of when Moore & Bruce's representation of Plaintiffs with regard to the gift tax issue terminated for purposes of the statute of limitations is a question of fact, and thus should not be resolved summarily. *R.D.H. Communications*, 700 A.2d at 768.[5]

---

[5]Defendants also argue, with regard to both the gift tax issue and Schrader-De May's claims, that Moore and Bruce's "continuous representation" is not specifically alleged in the Complaint. Plaintiffs are unaware of any case or rule which would require such an allegation in

Defendants also argue that the continuous representation rule does not apply to appeals, citing *Bradley v. NASD Dispute Resolution, Inc.*, 433 F.2d 846, 851 (D.C.Cir. 2005); *Knight v. Furlow*, 553 A.2d 1232, 1235; and *R.D.H. Communications*, 700 A.2d at 770-71.   However, in the instant case there was never any appeal.  In November of 2005, when De May agreed to enter into a Consent Judgment with the IRS, the status of his case was that a Petition challenging a deficiency notice had been filed in the United States Tax Court pursuant to 26 U.S.C. Sec. 6213. Ex. 3, par.  6.  That Petition was still pending in the Tax Court at the time of the decision to settle; there had not been any resolution at the trial level, much less an appeal.  Thus, Defendants' argument is inapposite to the case at hand.

In sum, Defendants do not have a good faith basis to argue that their proposed exception to the continuous representation rule is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

## C.  Remaining Arguments

1.  Real Party in Interest.  Defendants challenge the ability of the De May Family Trust to pursue this claim, contending that it is the trustee, rather than the trust itself, which is the real party in interest under Fed. R. Civ. P. 17(1)(E).   Plaintiffs concede this point, but ask for leave to amend their Complaint to make Counselor Trust Reg., the trustee of the De May Family Trust,

---

the initial pleading, although they note that they did allege in paragraph 57 of the Complaint that "Defendants continued to actively participate and assist in ... defense [of the IRS claims] until at least November 1, 2005".  When the issue is raised by the defense, affidavits and other evidence establishing the continuous representation must be presented by Plaintiffs.

the named plaintiff.  Such leave should be freely granted in this situation.  *Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11, 20 (2nd Cir. 1997).


    2.  <u>Breach of Fiduciary Duty - Statute of Limitations.</u>  Plaintiffs have clearly established, through Bruce's own words and other evidence, that he remained as co-trustee of the Anne Schrader-De May Trust until April of 2007, and as Chairman of the Committee of Trust Advisors of the De May Family Trust until at least May of 2006.  Ex. 1(A) and 2(A).  In par. 82 of the Complaint, Plaintiffs allege that:

> During his tenure as vice-chairman and then chairman of the Committee of Trust Advisors for the Family Trust and as co-trustee of the Optimay Foundation, Defendant Bruce regularly made decisions which benefited himself, his law firm and his business colleagues, and harmed the beneficiaries.

Even if that were not sufficient to allege tortious behavior subsequent to May 15, 2005, the case of *Bradley v. NASD Dispute Resolution, Inc.*, *supra*, establishes that the continuous representation rule can apply to situations that are not strictly within the attorney-client relationship, such as an "arbitral malpractice claim".  433 F.3d at 850.  The same rationale that militates against interrupting an attorney-client or claimant-arbitrator relationship while problems are attempted to be resolved militates against penalizing Plaintiffs, as beneficiaries, for choosing to continue working with their fiduciary, Charles Bruce.


    3.  <u>Constructive Fraud.</u>  In their Motion, Defendants specify the elements of <u>fraud</u>, citing *3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d. 1 (D.D.C. 2008), and argue that the "Plaintiffs have not pled and cannot establish any of the above-referenced elements." Defendants' Memorandum at 30.

However, the elements that must be asserted to properly bring forth a claim of constructive fraud are distinguishable from those necessary to allege fraud. While Defendants argue that there is no allegation that they "acted with intent to deceive Mr. De May" (Defendants' Memorandum at 31), constructive fraud, unlike actual fraud, does not require a showing of intent to deceive. *See Rick v. United States*, 161 F.2d 897, 899 (D.C. 1947) ("There is sometimes said to be a 'constructive' fraud in respect to which courts have said that neither actual dishonesty nor intent to deceive is the essential element; and negligence so gross as to deceive might be such fraud."); *see also Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 582 (Va. 2003), *approved of in Nguyen v. Voorthuis Opticians*, 478 F. Supp. 2d 56, 64 (D.D.C. 2007) ("[In cases involving constructive fraud],the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it.").

Under District of Columbia law, in order to prove constructive fraud, a plaintiff must prove that he or she had a 'confidential relationship' with the defendant." *3D Global Solutions, Inc.,* 552 F. Supp. 2d. at 15. A confidential relationship is one "in which one party has gained the trust and confidence of the other, enabling the first party to exercise extraordinary influence over the other." *Id.* In the instant case, the Plaintiffs' relationship with the Defendants, who acted as their attorneys in all matters relating to the creation and administration of the trusts, was characterized by trust and confidence. Moreover, the nature of the Plaintiffs' relationship with the Defendants is an issue of material fact and thus should not be resolved summarily. *See Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) ("Because the existence of a 'fiduciary relationship is a fact-intensive question, involving a searching inquiry into the nature

18

of the relationship, the promises made, the type of services or advice given and the legitimate

expectations of the parties . . . it may not be appropriate to resolve [the] issue on a motion for

summary judgment.") (quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018,

1028 (D.D.C. 1994)).

       This case is distinguishable from that of *3D Global Communications*, where the

constructive fraud claim was dismissed due to the plaintiff's failure to "specify the time, place,

or content of the alleged misrepresentations, [and] the facts allegedly misrepresented." *3D*

*Global Solutions, Inc.* 552 F. Supp. 2d. at 15.  In contrast, the content of the Defendants'

misrepresentations are alleged in detail in the Complaint at par. 87: "(a) The sale of Optimay

stock by the four original trusts created by Defendants would not result in the realization of

capital gains by De May for income tax purposes",  and (b) "[t]he transfer of assets from the

Family Trust to the Partnership [Risk Capital Bermuda Fund, L.P.] would not be a taxable event

or require the filing of a Gift Tax Return."  The dates and circumstances of these

misrepresentations are set forth in par. 19 - 28 of the Complaint.

       Finally, constructive fraud is not characterized by fraud's stringent pleading

requirements.  *See Alberts v. Tuft*, 333 B.R. 506, 532 n.33 (Bankr. D.D.C. 2005) (noting that,

whereas Rule 9(b) imposes specificity requirements on fraud claims, "'the pleading of

constructive fraud, as opposed to actual fraud, must only comply with Rule 8(a) because scienter

is not an element'") (citations omitted).  This is because constructive fraud is often more akin to

a breach of fiduciary duty than to fraud, and "does not necessarily involved the type of dishonest

or immoral conduct that is required to support an award of punitive damages." *Ellerin v. Fairfax*

*Savings*, 652 A.2d, 1117, 1126 (Md. 1995).

Regarding the statute of limitations defense to the constructive fraud allegations,
Plaintiffs again rely upon the continuous representation rule.


### III.  STATEMENT OF MATERIAL FACTS
### AS TO WHICH THERE IS A GENUINE ISSUE

1.  Whether Defendants continued to represent Plaintiff James Michael De May with
regard to the allegations set forth in the Complaint subsequent to May 15, 2005.

2.  Whether Defendants continued to represent Plaintiff Anne Schrader-De May with
regard to the allegations set forth in the Complaint subsequent to May 15, 2005.

3.  Whether Defendants continued to represent Plaintiff, The De May Family Trust (to be
substituted by Counselor Trust Reg., Trustee) with regard to the allegations set forth in the
Complaint subsequent to May 15, 2005.

4.  Whether Defendant Bruce continued to owe Plaintiff James Michael De May a
fiduciary duty with regard to the allegations set forth in the Complaint subsequent to May 15,
2005.

5.  Whether Defendant Bruce continued to owe Plaintiff Anne Schrader-De May a
fiduciary duty with regard to the allegations set forth in the Complaint subsequent to May 15,
2005.

6.  Whether Defendants represented to Plaintiff James Michael De May that the sale of
Optimay stock by the four original trusts created by Defendants would not result in the
realization of capital gains by De May for income tax purposes.

7.  Whether Defendants represented to Plaintiff James Michael De May that the transfer

of assets from the Family Trust to the Risk Capital Bermuda Fund, L.P. would not be a taxable event or require the filing of a Gift Tax Return.

      7.  Whether De May justifiably relied upon such representations.

      8.  Whether Defendants made either of such misrepresentations recklessly, in that they knew, or in the exercise of due care should have known, that they were untrue.

      9.  Whether Plaintiffs suffered damages as a result of their justifiable reliance on Defendants' misrepresentations.

### III.  CONCLUSION

      For the foregoing reasons, Plaintiffs respectfully request that the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, be denied, and that Plaintiffs be awarded their reasonable attorney's fees and costs in defending against this frivolous motion.

                              Respectfully submitted,

                              JAMES MICHAEL DE MAY
                              ANNE SCHRADER-DE MAY
                              THE DE MAY FAMILY TRUST
                              Plaintiffs
                              By Counsel

CROWLEY, HOGE & FEIN, P.C.

By: /s/ Christopher G. Hoge         
        Christopher G. Hoge #203257

Attorneys for Plaintiffs
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C.  20036
(202) 483-2900

**<ins>CERTIFICATE OF SERVICE</ins>**

I HEREBY CERTIFY that a true copy of the foregoing Memorandum was served by

Case

File Express upon Paul J. Maloney, Esq. and Nat P. Calamis, Esq., counsel for Defendants, Carr

Maloney P.C., 1615 L Street, N.W., Suite 500, Washington, D.C. 20036 this 25th day of

August, 2008.


<u>/s/ Christopher G. Hoge</u>
Christopher G. Hoge


cgh/z/wpdirs/civ
demayoppmsj.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES MICHAEL DE MAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00845 |
| | ) | Judge Huvelle |
| MOORE & BRUCE, LLP, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

## **ORDER**

UPON CONSIDERATION of the Defendants' Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment, and of Plaintiffs' Memorandum in opposition thereto, and for

good cause shown, it is this _____ day of _____, 2008, hereby

ORDERED, that the Motion be, and it is hereby, DENIED; and it is further

ORDERED, that Plaintiffs be, and they are hereby, awarded $ _____

in legal fees and costs for defending against the Motion, which this Court finds to be frivolous.

_____
ELLEN SEGAL HUVELLE
United States District Judge

Copies:

Christopher G. Hoge, Esq.
Crowley, Hoge & Fein, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C.  20036
chfcgh@aol.com

Paul J. Maloney, Esq.
Nat P. Calamis, Esq.
Carr Maloney P.C.
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
pjm@carrmaloney.com
nog@carrmaloney.com

## AFFIDAVIT OF ANNE SCHRADER-DE MAY

Comes now your Affiant, Anne Schrader-De May, having been first duly sworn, on oath, and hereby states as follows:

1. I am over the age of 18-years-old and competent to testify to the matters stated herein. I make this affidavit based on personal knowledge.

2. I am the wife of James Michael De May and a Plaintiff in the case of *De May, et al. v. Moore & Bruce, et al.*, currently pending in the United States District Court for the District of Columbia.

3. Charles Bruce and Jonathan Moore represented me and my family from approximately 1995 through at least April of 2007. They represented us, and me personally, with regard to the formation and amendment of various trusts, including the De May Family Trust, of which I am a beneficiary, and the Anne Schrader-De May Trust, originally created in or about February of 1996. They also rendered tax advice to me and my family, and assisted us with litigation involving the Family Trust in the Isle of Man. I am aware that Messrs. Moore and Bruce also assisted my husband regarding litigation with the Internal Revenue Service.

4. Charles Bruce served as Trustee of the Anne Schrader-De May Trust until April 3, 2007, when I wrote a letter asking him to resign. See Ex. "A", attached.

5. In January, 2006 and February, 2007 I received invoices for work that Mr. Bruce did for the Anne Schrader-De May Trust. Ex. "B" and "C".

6. In 2006 I was involved in discussions and e-mail exchanges with Charles Bruce and Jonathan Moore concerning the Isle of Man litigation. On July 21, 2006 I was involved in a lengthy telephone discussion with Charles Bruce and my husband about the litigation and about

**EXHIBIT**

**2**

other issues concerning the Family Trust. I have six pages of notes in my handwriting concerning that conversation. Ex. "D".

7. In October of 2006, I received an e-mail from Charles Bruce requesting that my husband and I sign affidavits to be used in the Isle of Man litigation. Ex. "E". A copy of that e-mail was sent to Douglas Charnas, of the law firm McGuire Woods, who was working, along with Moore & Bruce, on the problems with the Internal Revenue Service.

8. In November of 2006, I received a copy of an e-mail from Charles Bruce to Chrissy Moffatt and Jenny Holt concerning the Isle of Man matter. Ex. "F". The e-mail had to do with "'cleaning up' or 'rectifying' the trust documentation to correct problems raised by CGI and Wright". CGI was a prior trustee of the De May Family Trust which had filed suit against the trust in the Isle of Man.

9. In December of 2006, I received a copy of an e-mail from Charles Bruce to Chrissy Moffatt and Jenny Holt in which he states, among other things, that he had "resigned as Trustee of the Trust dated 5 August 1998, which is the trust that holds the account at Rahn & Bodmer". Ex. "G".

10. Up until at least April of 2007, there was no change in my or my family's relations with Charles Bruce and Jonathan Moore. They were the attorneys who created the trusts which were supposed to provide support to my husband, myself and my family, and they helped defend the legality and propriety of the trusts before the Internal Revenue Service and the Isle of Man Court. Charles Bruce served as trustee of my personal trust and as chairman of the committee of trust advisors for the Family Trust. Jonathan Moore served as president of Coyote Trails, Inc., a corporation owned by the Family Trust which, in turn, owns our family residence in Santa Fe, New Mexico.

FURTHER AFFIANT SAYETH NAUGHT.

_Anne Schrader DeMay_

ANNE SCHRADER-DE MAY

STATE OF NEW MEXICO          )
                             ) ss:
COUNTY OF                    )

Subscribed and sworn to before me, a Notary Public in and for the State and County

aforesaid, this _____18th_____ day of August, 2008.

Notary Public    _Mary K. Johnson_

OFFICIAL SEAL
MARY K. JOHNSON
Notary Public
State of New Mexico
My Commission Expires 6/05/11

*copy*

ANNE SCHRADER-DE MAY

124 TANO ROAD
SANTA FE, NEW MEXICO 87506
PHONE (505) 992-8213 FAX (505) 992-8449

Moore & Bruce, LLP
-Charles Bruce-
1072 Thomas Jefferson Street, NW
Washington , D.C. 2007-3835

April 3rd, 2007

Dear Charles,

As of our conversation on January 23rd, 2007 this letter is to confirm that it is my wish that you resign as trustee of the Anne Schrader-De May Revocable U.S.Trust, amended January 1st 2000.

I thank you for your services over the past years.

Sincerely,

Anne Schrader-De May

**EXHIBIT**

**2(A)**

**MOORE & BRUCE, LLP**
ATTORNEYS AT LAW
1072 THOMAS JEFFERSON STREET, N.W.
WASHINGTON, D.C. 20007-3835

—

CHARLES M. BRUCE
FACSIMILE (202) 965-7745

(202) 965-5300
www.mooreandbruce.com

EMAIL:
cbruce@mooreandbruce.com

February 13, 2007

*Via E-mail and Post*

Anne Schrader De May
124 Tano Road
Santa Fe, NM 87501

Dear Mrs. De May:

Enclosed please find our statement for services rendered and disbursements incurred from 1 November 2006 through 31 January 2007. All but $100 of this is for Bob Wade's work.

You can pay by check or wire transfer. Checks should be made payable to "Moore & Bruce, LLP" and should note the File No. 00862-002. Checks should be mailed to the Washington, DC office at the address shown above. Wire transfer instructions are attached. Wire transfers should include a "REF" line with the File No.

Please feel free to call me or our Administrator, Jennifer Brown, if you have any questions. Our Administrator's telephone number is 1 202 965 7741.

Yours sincerely,

*Cm Bruce*

Charles M. Bruce

CMB\jb
Enclosure

Bills\2006\De May\00862 Cover_Anne 070213

**EXHIBIT**

**2(B)**

### WIRE TRANSFER INSTRUCTIONS—MOORE & BRUCE, LLP

**UNLESS OTHERWISE AGREED, PLEASE WIRE US DOLLARS TO OUR US ACCOUNT**

**If wiring funds to Moore & Bruce, LLP's US account:**

Bank of America, N.A.
730 15th Street, NW., 7th Floor
Washington, DC 20005
ABA/IBAN Routing No. 026009593
SWIFT Code: BOFAUS3N
Credit Moore & Bruce, LLP
Account No. 001933043764
REF: 00862-002

**If wiring funds to Moore & Bruce, LLP's London account:**

If wiring GBPs from the UK:
Duncan Lawrie Limited
1 Hobart Place
London SW1W 0HU
Swift Code:  DULAGB2L
Sort Code:  23-26-64
For the account of Moore & Bruce, LLP
Account No. 9487330
REF: 00862-002

If wiring GBPs from outside the UK:
Barclays Bank plc
54 Lombard Street
London EC3V 9EX
Sort Code:  20-00-00
Account No:  80109479
Swift Code:  BARC GB 22
Reference:  Moore & Bruce LLP-Account 9487330
REF: 00862-002

If wiring US Dollars:
The Northern Trust International Banking Corporation (TNTIBC)
40 Broad Street
10th Floor
New York, NY 10004-2315
USA ,
ABA Routing No:  026001122
Swift No:  CNORUS 33
Account No:  10157620230
Reference:  Moore & Bruce, LLP
Duncan Lawrie Account No. 09487330
REF: 00862-002

# MOORE & BRUCE, LLP

### ATTORNEYS AT LAW

1072 THOMAS JEFFERSON STREET, N.W.

WASHINGTON, D.C. 20007-3835

JONATHON R. MOORE
(202) 965-7747

(202) 965-5300

www.mooreandbruce.com

jmoore@mooreandbruce.com
FACSIMILE (202) 965-7745

January 11, 2006

Anne Schrader De May
124 Tano Road
Santa Fe, NM 87501

Dear Anne:

Please find enclosed our statement for legal services rendered for the period of September 1, 2005 through December 31, 2005.

Please call me if you have any questions.

Best regards.

Very truly yours,

Jonathon R. Moore

JRM/jb
Enclosures
00862 cover 060110

**EXHIBIT**

**2(C)**

MOORE & BRUCE, LLP

January 11, 2006

Anne Schrader De May
124 Tano Road
Santa Fe NM 87501

Re: The Anne Schrader DeMay Trust

FOR LEGAL SERVICES RENDERED

| | | | Hours | Amount |
|---|---|---|---|---|
| 9/15/2005 | CMB | Telephone conference with Bob Wade regarding preparation of tax return and accounts for Anne's trust. Email to Anne requesting permission to pay Mr Wade's invoice for 2003 work. | 0.50 | |
| 9/29/2005 | CMB | Review 2004 trust tax return; Telephone conference with Bob Wade. Sign and distribute copies. Draft and send cover letter to Anne Schrader De May concerning certain tax information. | 1.50 | |
| 9/30/2005 | CMB | Finalize and send tax return and cover letter ot client. | 0.33 | NO CHARGE |
| 10/6/2005 | CMB | Attention to payment of invoice for Jester & Reed's 2003 tax preparation work. Memo to file re how to handle this in the future. | 0.50 | NO CHARGE |
| 10/12/2005 | CMB | Attention to distribtution of US$50,000 to Anne Schrader De May. | 0.50 | NO CHARGE |
| | For legal services rendered | | 3.33 | $800.00 |

Disbursements

| | Amount |
|---|---|
| Jester & Reed Statement for preparation of Trust return form 1041 for 2004. | 4,360.00 |
| Total Disbursements | $4,360.00 |

MOORE & BRUCE, LLP

Re: The Anne Schrader DeMay Trust

|  | Amount |
|---|---|
| Total amount of this bill | $5,160.00 |
| Previous balance | $3,583.33 |
| Payment - Thank You. Check No. 1060 | ($3,583.33) |
| Balance due | $5,160.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-002

**MOORE & BRUCE, LLP**
ATTORNEYS AT LAW
40 PARK STREET
LONDON W1K 2JG

CHARLES M. BRUCE
FACSIMILE +44 (0)20 7629 1242

+44 (0)20 7495 3842
www.mooreandbruce.com

EMAIL:
cbruce@mooreandbruce.com

January 23, 2007

<u>VIA FACSIMILE</u>

John Stroud
The Private Bank at Bank of America
5550 Friendship Blvd. Ste 360
Chevy Chase, MD 20815

Dear John,

**Re:     Anne Schrader De May Trust**

Please transfer the sum of $20,000.00 from the Anne Schrader De May Trust Account, No. 45130130247700, to Anne Schrader De May's personal account, No. 001913079389.

Sincerely yours,

Charles M. Bruce
Co-Trustee

CMB/jb
CC;     Anne Schrader-De May (mail)
        Bob Wade (mail)

00862\Anne Schrader De May Trust\BoA-Anne De May 070123

February 13, 2007

Anne Schrader De May
124 Tano Road
Santa Fe NM 87501

Re:  The Anne Schrader DeMay Trust

FOR LEGAL SERVICES RENDERED

| | | | Hours | Amount |
|---|---|---|---|---|
| 11/17/2006 CMB | Attention to Anne's Trust's tax returns; Telephone conference with Bob Wade; e-mail to Charles Nelson. | | 0.25 | |
| | For legal services rendered | | 0.25 | $100.00 |

Disbursements

| | Amount |
|---|---|
| Invoice from Jester & Reed dated 12/13/06 | 4,260.00 |
| Total Disbursements | $4,260.00 |
| Total amount of this bill | $4,360.00 |
| Previous balance | $133.33 |
| Payment - Thank You. Check No. 1188 | ($133.33) |
| Balance due | $4,360.00 |

Re: The Anne Schrader DeMay Trust

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-002

Charles Bruce  recommend's not to ~~trust~~ trust CGI very much

asked to come to a resolution
with Vatersletten, Jim, Anne + Kids
and CGI


- hand off of trusteeship MTM→ING→CGI
- disin biz + recontribution of Jelaey Family Trust 5th/8th
- breach of trust?? in eyes of CGI
- relationship between 5th/8th/family trust


Convenience and speed as main subjects
no question about ownership
no question as to whether anything has
(money)
gone away

recommends to look for new trustees
talk to Martin Dunki and other trustees

EXHIBIT 2(D)

Jonathan asked not to participate

- handoffs handled by Jonathan
- sits in Washington with files
- Jonathan wrote supplement Charles

legal work not done as trustee by Charles
but as legal aid

Jonathan in charge of archive

all Jonathan is going to do is
pull faxes write drafts with
documents attached

Samaty   representing the trustees
which is CGI

C. Bruce representing Anne Jim + kids?

CGI = Trustee     files for 8th, 5th trust

Charles mgt

5th trust
don't think
they have
to deal with it

Charles res
ponsible of
5th trust

CGI not
named trustee
of 5th trust
Natesteller +
Jim DeLery
Hettler for that
trust

Charles sees 8th is "subordinate"
to 5th.  8th has authority
to revoke

where does Jonathan fit in
can he be eliminated??
says that he has no knowledge of
trust rights

president of Coyote Trails ''.

-> tell Jonathan that he is
out of the discussion

Transfer of of funds to the ? therins
permissibale ??                    CGI has

no distribution of funds to Anne Jim + Kids
allowed but happened

→ "amindment done is error" should be
outcome of solution

CGI needs to be comfortable with this
agreement (Doug)

② Issues between 5th and 8th

→ we can appoint our own representative

e-mail to Kevin + Ian + CGI to express
our concern about the use of our funds

revokable trust is not a bad idea
in contrast to keeping the trust and
finding a new trustee

trust to come back to trust

Anne's Trust

CGI does not have a license to do trust or corporate work

did not have a license at any time

previous trust company ~~renewed~~ renewed Papers
and thought they had all licenses

_____

negotiating payment with CGI

phonecall to Charles Bruce   7/31/06

## Law Clerk

| | |
|---|---|
| **From:** | Charles Bruce [cbruce@mooreandbruce.com] |
| **Sent:** | Thursday, October 12, 2006 12:47 PM |
| **To:** | gila@yellowmesa.com; asd@yellowmesa.com; mail@walchschurti.net |
| **Cc:** | 'Charnas, Douglas W.'; 'Chrissy Moffatt'; 'Jonathon Moore' |
| **Subject:** | De May Family Trust/Affidavits [00862] |
| **Attachments:** | De May Affidavit BL 061011 FINAL.doc; Affidavits of Bruce and Walch CMB BL 061011.doc |

Dear Jim, Anne and Dr. Walch

**De May Family Trust/Affidavits [00862]**

The Trust's attorney in Isle of Man, Mark Moroney, would like to file three affidavits in support of our side of the case. He needs to do so by close of business tomorrow.

He sent me draft affidavits and I have worked with him to finalize them. All three are attached. I left them in Word format in order that last minute changes can be made if necessary.

Jim and Anne are requested to sign, in front of a notary, their affidavit.

Dr Walch is requested to sign the affidavit which essentially is on behalf of the new trustee.

I would sign an affidavit as well. I will have mine notarized at the American Embassy here.

All three are attached.

You should feel free to contact Mr Moroney directly. He was in London this morning and stopped by my office to review these.

You can sign in front of a notary and then fax the signed document to him. Then courier the original to him. He will file the faxed versions.

His contact details again are:

Mark Moroney, Esquire
1 Mount Pleasant
Douglas
Isle of Man IM1 2PU
Tel: +44(01624) 624964
Fax: +44(01624) 620124
Email: Chrissy Moffatt [Chrissy@markmoroney.com]

Notes of my meeting with Mr Moroney today show:

The schedule with the Court is Noticed Parties (De Mays, Vaterstetten, Bruce, new Trustee) file Answer and Affidavits Friday, 6th October. Moroney is finalizing the Answer. I have given him my comments.
A hearing on the Petition will be set sometime after 1st December.
Moroney will seek to have the Petition dismissed and costs assessed against the Petitioner. These costs will be his costs and may include other costs such as Moore & Bruce's and McGuireWoods' costs.
He will try to introduce the idea that CGI should disgorge fees already paid to it.
He will ask that all Trust files by sent to the new Trustee but will not make a big effort on this point as most things that CGI has we sent them.

I am sorry for the rush on this.

**EXHIBIT**

**2(E)**

Regards.

Charles
10/12/2006 5:39 PM
London

Charles M Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | Tel: 020 7495 3842 | Fax: 020 7629 1242
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745
Email:  cbruce@mooreandbruce.com

This communication has not been written as a formal opinion of counsel.  Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed.  It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law.  If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited.  If you have received this communication in error, please notify us immediately by return email.  Thank you.

## Law Clerk

| | |
|---|---|
| **From:** | Charles Bruce [cbruce@mooreandbruce.com] |
| **Sent:** | Wednesday, November 22, 2006 12:36 PM |
| **To:** | 'Chrissy Moffatt'; 'Jenny Holt' |
| **Cc:** | mail@walchschurti.net; gila@yellowmesa.com; asd@yellowmesa.com; 'Jonathon Moore' |
| **Subject:** | De May Family Trust [00862] |

Dear Mark

Thank you for speaking with me a little while ago.  I am sorry to have caught you at the end of your day.

I understand that you and your colleague, Ms Holt, met with Mr Wright this morning, and you will send me notes of the meeting.

I gather that there is no further action before the court until the third week in January.  Please confirm to me the exact date so I can put it on my calendar and tell others.

Also please confirm that you do not need anything further from Counselor Trust or me at this time.

The matter with CGI, I understand from what you said, has two parts.  One is "cleaning up" or "rectifying" the trust documentation to correct problems raised by CGI and Wright.  The other is fees—how much CGI is asking and how much the trust will pay.  There is also the question whether the trust should pay anything more than it has already paid.  Indeed, as you and I have discussed before, should the trust seek a disgorgement by CGI of fees previously paid?

As soon as I get your note, I will pass it along to Walch and Horne at Counselor Trust and to Mr and Mrs De May, to get their thoughts.

But as I said to your earlier today, it may well be that the trust does not want to expend any time, effort or money "rectifying" the documentation.  Counselor Trust no doubt will need to recast the documentation to fit Liechtenstein requirements.  Doug Charnas, the De May family's advisor with respect the Jim De May's IRS issues, may have thoughts as to how the recast trust should be drafted.  I may be asked to contribute some thoughts as well.  I think that everyone is satisfied that the shares of the New Mexico corporation, which owns the house, are properly in the hands of the new trustee—Counselor Trust.

Let me have your notes.  I'll pass them along right away.  Then I or perhaps Walch or Horne will get back to you.

I am traveling next week—arriving back in London on Friday, 1st Dec.

Regards,

Charles

Charles M Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | Tel: 020 7495 3842 | Fax: 020 7629 1242
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745
Email: cbruce@mooreandbruce.com

This communication has not been written as a formal opinion of counsel.  Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed.  It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law.  If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited.  If you have received this communication in error, please notify us immediately by return email.  Thank you.

**EXHIBIT**

**2(F)**

## Law Clerk

**From:** Charles Bruce [cbruce@mooreandbruce.com]
**Sent:** Sunday, December 10, 2006 5:31 PM
**To:** 'Jenny Holt'; 'Chrissy Moffatt'
**Cc:** gila@yellowmesa.com; asd@yellowmesa.com; 'Walch & Schurti'; 'Charnas, Douglas W.'; 'Jonathon Moore'; Trevor Carmichael
**Subject:** FW: De May

Dear Mark

I have now spoken with Jim De May and will talk with the representatives of Counselor Trust first thing tomorrow—Monday.

There was a misunderstanding as to the situation with respect to the Isle of Man lawsuit.

The Trust will reverse its action and reinstate you as it attorney. You should proceed as previously intended—to defeat the Petition and separate out the matter of costs.

The De Mays, Vaterstetten Foundation and I all similarly reverse any action terminating you.

I suggest you simply tell the Court and the opposing side that there was a misunderstanding, for which the Trust apologizes.

I will call you early tomorrow, after speaking with Dr Walch/Mr Horne.

I can represent to you that I speak for Mr and Mrs De May and their children, as well as Vaterstetten Foundation. Counselor Trust, I am confident, will be communicating with you to confirm what is said herein.

When we talk tomorrow, I would like to understand better what you are owed and the timing of the substantive hearing on this petition. We should also discuss how this matter might be settled to everyone's satisfaction.

Regards.

Charles Bruce
12/10/2006 10:26 PM GMT
London

[I can always be reached on my mobile at 07899925251.]

**EXHIBIT**

**2(G)**

---

**From:** Charles Bruce [mailto:cbruce@mooreandbruce.com]
**Sent:** Friday, December 08, 2006 11:06 AM
**To:** 'Jenny Holt'; 'Chrissy Moffatt'
**Cc:** 'gila@yellowmesa.com'; 'asd@yellowmesa.com'; Trevor Carmichael (chancery@caribsurf.com); 'Walch & Schurti'; 'Jonathon Moore'
**Subject:** RE: De May

Dear Ms Holt

Thank you for this message.

I was copied early yesterday evening on Counselor Trust's fax to Mr Moroney dated yesterday terminating Mr Moroney's representation of the Trust.

I recently informed you of the fact that I have resigned as Trustee of the Trust dated 5 August 1998, which is the

trust that holds the account at Rahn & Bodmer. (Of course, I am not a Trustee of the De May Family Trust. The only trustee is Counselor Trust.)

I have called Counselor Trust (Dr Walch and Mr Horne) this morning to discuss this development but their office is closed for a holiday.

In light of the above, let me confirm that your firm no longer represents me and is no longer retained by me. This fact should be conveyed to the Court as soon as appropriate.

As for Vaterstetten Foundation, with respect to which I am a co-trustee, I also wish to confirm that Mark Moroney Advocates no longer represents it and its retainer is terminated. This fact should be conveyed to the Court as well.

As for Mr and Mrs De May and the De May children, I have not been able yet to communicate with the De Mays because of the difference in time zones but by copy of this email I am asking that they communicate with you and me on this subject. It is not clear to me whether Dr Walch has put in motion any action by the De Mays with respect to their termination of your firm. He does say, however, in a cover note to me that "we anticipate that Mr. and Mrs. De May will be writing to Mark Moroney confirming that his firm is no longer instructed by them." This being the case, let me confirm, as their attorney, that your firm no longer represents them and its retainer is terminated. This fact can be conveyed to the Court. If they have not communicated with you already, Mr and Mrs De May should immediately confirm this message to you on their behalf.

Please call me if you have any questions or concerns.

Regards.

Charles Bruce
12/8/2006 10:58 AM
London

---

**From:** Jenny Holt [mailto:Jenny@markmoroney.com]
**Sent:** Friday, December 08, 2006 10:07 AM
**To:** Charles Bruce
**Cc:** Chrissy Moffatt
**Subject:** De May

Dear Charles,

As you may be aware, we have been formally dis-instructed by Counsellor Trust in the above matter. We also understand that you have resigned as a trustee.
Can you please confirm by return whether or not we are still retained to act for you in your personal capacity in relation to the matter? We are before the Deemster on Monday to formally request that we be allowed to come off record and would appreciate a response in time for this.

Yours sincerely,

**Jenny D. Holt**
**Associate Advocate**
jenny@markmoroney.com

**Mark Moroney Advocates**
**1 Mount Pleasant**
**Douglas**
**Isle of Man**
**IM1 2PU**
**Tel :    (01624) 624964**
**Fax :    (01624) 620124**

8/25/2008

**THIS E-MAIL AND ANY ATTACHMENTS ARE CONFIDENTIAL AND MAY BE PRIVILEGED**

If you have received this e-mail in error please notify the sender immediately and delete this e-mail.

If you are not the addressee, any disclosure, reproduction, copying, distribution or other dissemination or use of this communication is strictly prohibited.

E-mail transmissions cannot be guaranteed to be secure or error free as information could be intercepted, corrupted, lost, destroyed or contain viruses.  Mark Moroney Advocates do not accept liability for any errors or omissions in the contents of this message which may arise as a result of an e-mail transmission nor for any viruses in this e-mail message and attachment(s)

## AFFIDAVIT OF DOUGLAS W. CHARNAS

Comes now your Affiant, Douglas W. Charnas, having been first duly sworn, on oath, and hereby states as follows:

1. I am over the age of 18-years-old and competent to testify to the matters stated herein. I make this affidavit based on personal knowledge.

2. I am an attorney and a partner in the law firm of McGuireWoods LLP, with offices located at 1050 Connecticut Avenue, N.W., Washington, D.C. I am admitted to practice in the District of Columbia and Ohio, and I focus my practice on corporate and partnership matters, including business formations, operations, acquisitions, reorganizations, and taxes, and controversies with the Internal Revenue Service ("IRS"), where I served as a senior attorney and special assistant to the Chief Counsel, and the Department of Justice.

3. On July 19, 2002, I met James M. De May to discuss with him the possibility of representing him in connection with an IRS audit. Shortly thereafter, Mr. De May retained me and McGuireWoods to represent him in connection with the IRS audit. The audit involved whether capital gains realized from the sale of stock of the Optimay Corporation to a subsidiary of Lucent Technologies in April of 1998 were taxable to Mr. De May personally or certain off-shore trusts. In 1996, Mr. De May transferred or caused to be transferred stock of Optimay Corporation to these four off-shore trusts. The plan for the creation of these off-shore trusts was developed by the law firm of Moore & Bruce, which also drafted the trust documents to implement the plan. Mr. De May was the settlor of these trusts, and the beneficiaries included, among others, Mr. De May's family. The IRS contended that the capital gains from the sale were taxable to Mr. De May personally. It was Mr. De May's belief that the capital gains from sale of the stock were not taxable to him personally.

EXHIBIT

3

4. Mr. De May advised me that the four off-shore trusts had been recommended and created by the law firm of Moore & Bruce, and he requested that I meet with Jonathon Moore and Charles Bruce (collectively hereafter "Moore & Bruce") so that they could explain the transactions leading up to the tax audit.

5. During the Summer and Fall of 2002, I had several telephone conversations with Mr. Bruce, and reviewed the trust documents, documents relating to the formation of the trusts, information document requests (IDRs) from the IRS, and responses to the IDRs provided by Moore & Bruce. Most of this information was provided to me by Moore & Bruce. On December 3 and 4, 2002, I attended meetings with James De May and Moore & Bruce in the offices of Moore & Bruce in Washington, D.C. At that time, Mr. Bruce explained the history of the formation of the four off-shore trusts and why, in his view, James De May should not be personally liable for the capital gains from sale of the Optimay stock owned by the trusts. We also discussed approaches for handling the IRS audit and any potential litigation with the IRS.

6. Moore & Bruce provided me with a binder that contained copies of trust documents they had created for Mr. De May. Some of the trust documents appeared to be signed copies of the originals and others were unsigned. I made several requests for signed copies of all the documents during the IRS audit, but Moore & Bruce did not produce signed copies of each document. We did not reach a satisfactory result with the IRS during the audit process, and filed a petition in the United States Tax Court pursuant to 26 USC § 6213. After the petition was filed, the IRS attorneys requested many documents, including signed originals of the trust documents. I informed Moore & Bruce of the IRS request. They produced a chart that listed each trust document and noted whether Moore & Bruce possessed the signed original, a signed

2

copy, or an unsigned copy. Before the case went to trial and while it was within the sole

jurisdiction of the United States Tax Court (*i.e.*, the case was not within the jurisdiction of any

other court or administrative agency), Mr. De May entered into a Consent Judgment with the IRS

for approximately $6,000,000 in satisfaction of his income tax deficiencies. Between 2002 and

the time of the Consent Judgment, Moore & Bruce were never able to produce signed originals

or signed copies of certain critical trust documents.

7. It was always my understanding that, between 2002 and at least May of 2006, Moore

& Bruce continued in their capacities as attorneys for Mr. De May and his family in connection

with management of the De May Family Trust and the Anne Schrader-De May Trust and with

management of Coyote Trails, Inc., a corporation created by Moore & Bruce and wholly owned

by the De May Family Trust. It was also my understanding that as late as November of 2005, if

not later, Moore & Bruce continued in their capacity as attorneys for Mr. De May with regard to

the IRS audit. I considered Moore & Bruce to be part of a team of attorneys representing Mr. De

May in his tax matters, and I frequently consulted with them, both orally and in writing, to

ascertain facts about the development of the trust plan for the off-shore trusts, the drafting of the

trust documents, the amendment and migration of certain trusts, the sale of the Optimay stock,

and the termination of certain trusts, as well as to understand the legal analysis that had led

Moore & Bruce to advise Mr. De May that he should have no personal tax liability as a result of

the stock sale.

8. As far as I know, the attorney-client relationship between Moore & Bruce and Mr. De

May never changed from 2002 until at least May, 2006. On a few occasions, Mr. De May and I

discussed the expense of having McGuireWoods and Moore & Bruce both representing him, but

3

concluded that it was important to keep Moore & Bruce involved because, as the developers of

the off-shore trust plan and drafters of the trust documents to implement the plan, they had

knowledge of the relevant facts and, supposedly, possession of the critical documents. I also felt

that it would be prudent to have them available for strategy conferences concerning the IRS and

trust matters, and between 2002 and November of 2005, if not later, I discussed legal and factual

issues with Moore & Bruce regarding Mr. De May's tax issues.

9. On or about August 24, 2005, I received an e-mail from Charles Bruce concerning his

suggested responses to interrogatories that we had received from the IRS. A true copy of that e-

mail is attached hereto as Ex. A.

10. On or about August 25, 2005, I received an e-mail from Mr. Bruce concerning his

efforts to locate certain documents concerning the migration of the De May Family Trust and the

Anne Schrader-De May Trust.  A true copy of that e-mail is attached hereto as Ex. B.

11. On or about August 26, 2005, I received an e-mail from Jonathon Moore containing

his and Charles Bruce's comments about proposed responses to interrogatories we had received

from the IRS.  A true copy of that e-mail is attached hereto as Ex. C.

12. On or about September 2, 2005, I received a Memorandum from Charles Bruce

concerning proposed responses to IRS inquiries in connection with the De May tax audit.  The

Memorandum includes, on page 4, a discussion of how certain actions in August of 1998

regarding the trusts "avoided triggering taxable income" for James De May.  A true copy of that

Memorandum is attached hereto as Ex. D.

13. On or about September 5, 2005, I received a Memorandum from Charles Bruce

concerning the tax audit.  Included in the Memorandum, among other things, is a detailed

4

discussion of the roles being played by McGuireWoods and Moore & Bruce. It states that "Moore & Bruce, LLP represents the De May family as to tax and related matters and the De May Family Trust, which benefits the family". A true copy of that Memorandum is attached hereto as Ex. E.

14. On or about September 26, 2005, and October 3, 2005, I received copies of e-mails sent by Charles Bruce to Jane Simmons of Grosvenor Trust Company, Limited concerning the Anne Schrader-De May Trust, the De May Family Trust and the De May-Optimay Comp Trust. The e-mails concerned the need to obtain trust documents in connection with litigation involving the trusts, which was then pending in the Isle of Man. True copies of these e-mails are attached hereto as Ex. F.

15. On or about May 14, 2006, I received copies of an e-mail and a FAXed letter from Charles Bruce to John Wright, an attorney representing CGI Corporate Services, Ltd. in Isle of Man litigation involving the De May Family Trust. As Chair of the Committee of Trust Advisors, Charles Bruce recommended and caused CGI to replace another company as successor trustee of the De May Family Trust. CGI filed a petition in the Isle of Man court challenging certain actions which had been taken by the previous trustees and by Mr. Bruce. In his letter to Mr. Wright, Mr. Bruce states that "Moore & Bruce has represented the De May family for over ten years". True copies of the May 14, 2006, e-mail and FAXed letter to Mr. Wright are attached hereto as Ex. G.

16. On or about May 15, 2006, I received a copy of an e-mail from Jonathon Moore to James De May regarding Coyote Trails, Inc. and "possible sale or mortgage of the Santa Fe property". A true copy of that e-mail is attached hereto as Ex. H.

17. On or about May 18, 2006, I received two e-mails from Charles Bruce regarding the petition filed by CGI in the Isle of Man. In one of the e-mails, Mr. Bruce suggested that "CGI, the settlors and the beneficiaries agree to an amended and restated version of the De May Family Trust (the De May Family Trust Dated 8th August 1998) to clean up whatever concerns CGI thinks there are". True copies of these e-mails are attached hereto as Ex. I.

18. On or about May 25, 2006, I received an e-mail from Charles Bruce with an attached draft letter that he proposed I send to John Wright, addressing CGI's concerns about the De May Family Trust. A true copy of that e-mail is attached hereto as Ex. J.

FURTHER AFFIANT SAYETH NAUGHT.

DOUGLAS W. CHARNAS

DISTRICT OF COLUMBIA, ss:

Subscribed and sworn to before me, a Notary Public in and for the District aforesaid, this 25th day of August, 2008.

Notary Public

Charlotte Snyder
Notary Public, District of Columbia
My Commission Expires 7-14-2010

6

| | |
|---|---|
| **From:** | "C M Bruce" <cbruce@mooreandbruce.com> |
| **To:** | <'Charnas'>; <Douglas W.'> |
| **Cc:** | <James De May>; <jmoore@mooreandbruce.com> |
| **Sent:** | Wednesday, August 24, 2005 9:51 PM |
| **Subject:** | RE: Question from IRS Lawyer |

Dear Doug,

I learned of the need to help with responses to this inquiry and 10 interrogatories late this afternoon, in a call from Jim. I received your email this evening when I came into the office after dinner.

I note that the responses, apparently, are due this Friday. Somewhere in the items sent me it says Friday, Aug. 25th, but of course Friday is the 26th of August.

I gather that you need this right away—if not two weeks ago! Also, I am traveling on a day flight on Friday; I go back to the London office for a month.

This being said, I will try to respond as best I can, given the shortness of time and other circumstances. These responses will have to be somewhat abbreviated, and will have to be based on my memory. I will try to work them so as to avoid saying anything patently wrong. They may in spots be short of detail.

The details, in most instances, will reside in the files—either a file with the trustees or in our files.

My responses/comments on the one point contained in this email appear below. Responses/comments on the 10 interrogatories appear separately, interlineated into the memo sent by you to Jim.

I am copying Jonathon and asking that he correct any errors and add comments as he sees fit.

This writing was prepared under extreme time pressures. Before using any of this language, you must check back with me and with Jonathon Moore. You should give yourself at least a couple of weeks to finalize this and the other responses.

Best.

Charles

==================

Charles M. Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | United Kingdom
Tele. +44 (0)20 7495 3842 | Fax +44 (0)20 7629 1242 | Mobile +44 7899925251
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | U.S.A.
Tele. +1 202 965 5300 | Fax +1 202 965 7745
cbruce@mooreandbruce.com | http://www.mooreandbruce.com

This communication has not been written as a formal opinion of counsel. Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This message, together with any attachments, is intended only for the use of the person to which it is addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the sender immediately at +44 (0)20 7495 3842 or by return e-mail and delete this message, along with any attachments, from your computer. We apologize for any inconvenience. Thank you.

**EXHIBIT**

**3(A)**

===================

-----Original Message-----
From: Charnas, Douglas W. [mailto:dcharnas@mcguirewoods.com]
Sent: Wednesday, August 24, 2005 5:00 PM
To: gila@yellowmesa.com
Cc: cbruce@mooreandbruce.com; jmoore@mooreandbruce.com
Subject: Question from IRS Lawyer
Importance: High

Dear Jim,

   Mary Ann Waters, the IRS lawyer for your case, has asked some questions about the replacement of Grosvenor Trust Company Limited with Valmet Isle of Man Limited.  Her initial question, my response, and her responses to my response follow:

* * * * *

[Message from Mary Ann Waters]

I am working on the Second Stipulation of Facts, trying to draft language to deal with the Amended Trusts.  I need some information.  It appears at some point the trustee changed for these trusts, but we have no documents reflecting this change.. How did the trustee change...who changed it...and where are the documents?  This will be a big help in the drafting of the stipulation.  Please let me know when you have a chance.  Thanks.

[Message from Douglas Charnas]

Dear Mary Ann,

   I will respond to you more formally, but I wanted to get some information I have to you.

   The Anne Schrader De May Trust and the De May Family Trust were migrated from Bermuda to Isle of Man, at which time they were amended and restated.  The original trustee for these two trusts was Grosvenor Trust Company Limited of Hamilton, Bermuda.  The original trustee was replaced by Valmet Isle of Man Limited of Douglas, Isle of Man.

   As I understand the process, but I will confirm this, the original trustee was replaced by naming a new trustee in the amended and restated trust document.  The amended and restated trust document is the document that replaces the original trustee with the new trustee.  I am reasonably certain the original trustee would have been aware that the trust was being migrated, but I do not know if there are any documents evincing the original trustees knowledge of the migration.

   We are working on answering the interrogatories and responding to the request for documents.  Because of the passage of time and the fact that all the Optimay Corporation documents were taken by Lucent when it acquired Optimay, we may not be able to produce a number of documents you have requested.  I know we will not have everything to you by Friday, but we are working toward responding as quickly as possible.

   Regards, Douglas

[Message from Mary Ann Waters]

Here is the problem....the old trustee has signed nothing nor has the petitioner reflecting the change to the new trustee..
The discovery requests are due in our office tomorrow, the 25th.  July has 31 days.

[Message from Mary Ann Waters]

Did the trustee replace itself or did petitioner replace the trustee...who made this decision and what documents did they sign that evidences the change.
I do not have any documents signed by the original trustee or the petitioner making this change.  Who directed

who to make this change--and where is the paperwork.

\* \* \* \* \*

Jim, I do not have anything to give Mary Ann other then copies of the amended and restated trusts, which she already has. If you, Charles, or Jonathon have any documents or suggests on how I should respond to Mary Ann, I would appreciate it. I fully expect she is going to go to the Tax Court for a motion to compel us to respond. We should continue to work on our responses as quickly as we can so we can respond before the Court orders us to do so.

   Regards, Douglas
**[C. M. Bruce]**
**As to both trusts mentioned above, the Chairman of the Committee of Trust Advisors communicated his or her wish that the trustee be replaced and the trust "migrated". I believe that Jim, as to the family trust, communicated this to Grosvenor, either directly or via Moore & Bruce. As to the migration of Anne's trust, she signed the communication to Grosvenor; I recall this because it was always a point showing that she was fully aware of what was transpiring.**

**It is not the case that the settlor or anyone of the beneficiaries, as settlor or beneficiary, instructed the changes. The Chairman of the Committee is able to advise the Trustee, and the Trustee can follow this advice or not. The Chairman also has the ability to "hire and fire"; this was not, I believe, a case of "firing".**

**The trusts' records should contain information about this subject. Trustees are generally careful about their "retirement", so as to limit lingering liability, and about their taking on a trust.**

**Note that these trusts, as I recall, went from Grosvenor Trust Company Limited (recently acquired by Bank of Butterfield), to Valmet (which became, by acquisition, MTM or Mutual Trust), to IFG (which in a sense took over the files from MTM) to, recently, CGI. All but Grosvenor are based in the Isle of Man. Having just obtained the files from IFG, I suspect that CGI will have some difficulty laying hands on items, during a transition period.**

**Charles**

The following statement is provided pursuant to U.S. Treasury Department Regulations: This communication is not intended or written to be used, and can not be used, by a taxpayer for the purpose of avoiding penalties that the Internal Revenue Service may impose on the taxpayer.

Douglas W. Charnas, Esq.
McGuireWoods LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC 20036-5317
202.857.1757 (Direct Line)
202.828.2980 (Direct Fax)
dcharnas@mcguirewoods.com
www.mcguirewoods.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

| From: | "C M Bruce" <cbruce@mooreandbruce.com> |
|---|---|
| To: | <dcharnas@mcguirewoods.com>; <James De May> |
| Cc: | <jmoore@mooreandbruce.com> |
| Sent: | Thursday, August 25, 2005 4:17 PM |
| Subject: | Two Documents |

I said to both you, Doug, and you, Jim, that the documents whereby Anne, as Chairman of the Committee of Trust Advisors of her trust, and Jim, as Chairman of the Committee of Trust Advisors of the family trust, "triggered" the migration, are in the Bible of Documents. I have looked, and I am wrong. But they are elsewhere in our files, and we will look for them.

I apologize for my faulty memory.

Charles


====================

Charles M. Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | United Kingdom
Tele. +44 (0)20 7495 3842 | Fax +44 (0)20 7629 1242 | Mobile +44 7899925251
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | U.S.A.
Tele. +1 202 965 5300 | Fax +1 202 965 7745
cbruce@mooreandbruce.com | http://www.mooreandbruce.com

This communication has not been written as a formal opinion of counsel. Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This message, together with any attachments, is intended only for the use of the person to which it is addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the sender immediately at +44 (0)20 7495 3842 or by return e-mail and delete this message, along with any attachments, from your computer. We apologize for any inconvenience. Thank you.


====================

EXHIBIT

3(B)

| | |
|---|---|
| **From:** | "Jonathon R. Moore" <jmoore@mooreandbruce.com> |
| **To:** | <Douglas Charnas Esq.> |
| **Cc:** | <James M. De May>; <Charles M. Bruce>; <Esq. (Charles M. Bruce, Esq.)> |
| **Sent:** | Friday, August 26, 2005 2:07 PM |
| **Attach:** | JMD_Interrogatory_Answers_JRM_RL_Comments_050825.DOC |
| **Subject:** | Interrogatory Answers |

Doug—

Attached are my comments on the document Charles sent you late Wednesday evening/early Thursday morning. His comments are in orange; mine are in red. In some cases I have deleted his comments; you will be able to see what I did, as I utilized the red line format in Word.

My comments make reference to a number of documents which I am dispatching to you immediately by messenger. These include:

- Letters sent by the Trustee to various trust beneficiaries in August, 1996;
- Schedule of options to be exercised in connection with the merger;
- Listing of merger consideration received by the Optimay stockholders and employees whose options had vested;
- Optimay stock transfer ledger; and
- Due diligence indices.

Please call me if you need anything else, or if you or your colleagues need further explanations.

REGARDS!!!!!!!!!!!!

<<...>>

Jonathon R. Moore

Moore & Bruce, LLP

1072 Thomas Jefferson Street, N.W.

Washington, D.C. 20007

Tel: 202-965-7747

Fax: 202-965-7745

Email: jmoore@mooreandbruce.com <mailto:jmoore@mooreandbruce.com>

*******************************************************************************

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by collect telephone at (202) 965-5300 or electronic mail (jbrown@mooreandbruce.com <mailto:jbrown@mooreandbruce.com>). Thank you.

For more information about Moore & Bruce, LLP, please visit our website at <http://www.mooreandbruce.com/>.

*******************************************************************************

**EXHIBIT**

**3(C)**

8/12/2008

PRIVILEGED AND CONFIDENTIAL
ATTORNEY CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

# McGuireWoods

MEMORANDUM

TO:        James M. De May

FROM:      Douglas W. Charnas

CC:        Brian C. Bernhardt

DATE:      August 23, 2005

RE:        Response to Interrogatories

In preparation for your trial in the United States Tax Court, we need to respond to the interrogatories from the IRS. I am able to draft a response to a number of these based on the information I have, but there are a number of interrogatories that require your input, which I have addressed below.

**GENERAL COMMENTS: I AM NOT PAUSING TO RESEARCH THESE ANSWERS OR TO CONFIRM POINTS BY REVIEWING DOCUMENTS IN THE FILE.**

**I AM VERY CONCERNED THAT SLOPPY ANSWERS TO THESE INTERROGATORIES WILL VERY MUCH WORK TO JIM AND ANNE'S DISADVANTAGE AT TRIAL, UPON EXAMINATION. AS YOU WELL KNOW DOUG, THESE SORT OF RESPONSES ARE THE FOUNDATION FOR IMPEACHMENT OF SUBSEQUENT TESTIMONY. I WOULD THINK THAT JIM AND ANNE CANNOT REASONABLY BE EXPECTED TO RECALL THE DETAILS, ESPECIALLY THE LEGAL DETAILS. THEY RELIED UPON THEIR ATTORNEYS AND THE TRUST COMPANY PROFESSIONALS. SOMEWHERE THIS POINT SHOULD BE MADE.**

**THIS WRITING WAS PREPARED UNDER EXTREME TIME PRESSURES. BEFORE USING ANY OF THIS LANGUAGE, YOU MUST CHECK BACK WITH ME AND WITH JONATHON MOORE. YOU SHOULD GIVE YOURSELF AT LEAST A COUPLE OF WEEKS TO FINALIZE THIS AND THE OTHER RESPONSES.**

**I HOPE THAT THIS IS HELPFUL.**

**Interrogatory No. 7**

For purposes of the interrogatories, the IRS uses the term "identified trusts" in referring to the Anne Schrader De May Trust, the De May Family Trust, the De May – Optimay Comp Trust, and the Optimay Foundation Trust (re-named the Vaterstetten Foundation Trust). In interrogatory no. 5, the IRS asks us to "identify the person(s) responsible for drafting, creating, modifying, amending, and/or authoring the identified trusts." We will answer this interrogatory by identifying Charles M. Bruce and Jonathon

McGuireWoods LLP

**August 23, 2005**
**Page 2**

R. Moore, with input from Grosvenor Trust Company Limited, as to those trusts as to which it was to serve as trustee, and Dr. Trevor Carmichael, an attorney in Bridgetown, Barbados, as to the Optimay Foundation Trust .[the reference to Jonathon Moore should, I believe, be dropped.  Although I may have had some tangential input into the initial drafting of these trusts in 1996, it would have been primarily editorial in nature, and non-substantive.  As to the significant revisions to the trusts which occurred in 1998, I had no input whatsoever, as there was a "Chinese Wall" in place whereby Charles was representing Jim and I was representing Optimay Corporation as its General Counsel.  One other nuance which should be noted in accurately responding: I do not know which trusts are referred to as the "identified trusts."  As you are aware, it is inaccurate to simply refer to the De May Family Trust, as this Trust, for example, went through various iterations.] Interrogatory no. 6 asks, "Did anyone assist the person or persons described in response to the preceding interrogatory in the creation, formation, establishment, modification or amendment of the identified trusts?"  We will answer this interrogatory by saying that to the best of your knowledge and belief no one assisted Charles M. Bruce.  See above.  Edward Luria, I believe, assisted with respect to the De May – Optimay Comp Trust, and indeed, he may have been one of the original trustees.

Interrogatory no. 7 asks, "Was legal or other professional advice secured in connection with the formation, establishment or amendment of the identified trusts?"  With the exception of the De May – Optimay Comp Trust, we will state that no such legal or other professional advice was secured to the best of your knowledge and belief. [as stated above, Charles M. Bruce provided legal advice, with input ("other profession advice") from the trustees.]Because the De May – Optimay Comp Trust involved Optimay Corporation, you need to check your files to see if you have anything indicating that Charles M. Bruce secured the advice of Jonathon R. Moore, Edward M. Luria (a lawyer and trustee of the trust), James Hickey of PriceWaterhouse, Bill Donnelly, or anyone else.  My response would be yes, legal advice was obtained from Moore & Bruce, LLP (Charles Bruce and Jonathon Moore).  As to De May – Optimay Comp Trust—Edward Luria.  As to Optimay Foundation Trust, Dr. Trevor Carmichael.[I confirm that this is correct.]

> Formatted: Font color: Red

## Interrogatory No. 11

Interrogatory no. 11 reads as follows:

For the period from the inception of the identified trusts through December 31, 1998, list and identify each trust officer, trustee, trust protector, investment manager and other person who had any directory or management responsibility of any kind for each of the trusts.  For each person identified, answer the following:

> Formatted: Underline
> Formatted: Underline
> Formatted: Underline

    a.    List and identify the beginning and end of each such person's tenure, along with the name of the specific trust.
    b.    Describe the nature of each such person's directory or management responsibility.

August 23, 2005
Page 3

c.   Provide the title of each such person's directory or
     management position, and their current address including
     phone number.
d.   What compensation, if any was paid to the trustee(s)?
e.   Who selected or appointed the trustee(s)"
f.   List and describe all documents that support or substantiate
     your answer.

I understand that this may be a difficult question for you to answer as all your
communications with respect to the trusts were with Charles M. Bruce.  I know who
each trustee was for the identified trusts.  With respect to Grosvenor Trust Company
Limited and Valmet (Isle of Man) Limited, I have no information regarding the individual
trust officers.  I have a copy of a memorandum from Charles M. Bruce to Gordon
Howard of Grosvenor Trust Company Limited dated March 20, 1998, regarding the
transfer by the De May – Optimay Comp Trust of Optimay stock to Optimay
Corporation, which suggests that Mr. Howard may have been an individual trust officer
at Grosvenor, but this is all I have.

     The interrogatory asks us to identify each investment manager.  I know that trust
funds were held in accounts at Charles Schwab and Rahn & Bodmer.  We need to
decide, based on the activities of the individuals at these institutions who were
responsible for the trust's accounts through 1998, whether any such individual should
be characterized as an "investment manager."  This would suggest that the person
takes an active role in managing the trust's money.  I believe the IRS will assume that
someone must be responsible for managing the trust's money.  If we do not identify
someone as an investment manager, then there seem to be two logical explanations.
Either the money is not managed; that is, a decision was made at the outset to place
the money a specific type of account and leave it there.  Or you are managing the
money.  If the IRS concludes that you are actively managing the money, it will view this
as an indicia of control over the trust.  This is not fatal, but not a good fact.

In general, Grosvenor Trust Company Limited served as trustee during its tenure, as to
the De May Family Trust, the Anne Schrader De May Trust, the De May – Optimay
Comp Trust.  A company controlled by Dr. Carmichael's firm and Charles Bruce acted
as trustee for the Optimay Foundation Trust, and they still serve in this capacity.  I could
not identify separate "trust officers" connected with these trusts.  Gordon Howard, I
believe, was not a "trust officer" but was instead a director of Grosvenor Trust Company
Limited. [Gordon Howard was the individual primarily involved with trust administration,
and Charles is correct, he is a director. He was also an officer of Grosvenor, and signed
correspondence involving the trust, see below, as Executive Vice President.]

> Formatted: Font color: Red

There was never a trust protector with respect to any of these trusts.

There was never an investment advisor (or manager) until Rahn & Bodmer became
investment advisor of the Trust dated 5 August 1998—which is not listed above.  Recall
that the Trust dated 5 August 1998 was a single grantor trust created by (settled by)

**August 23, 2005**
**Page 4**

Jim, De May Family Trust, the Anne Schrader De May Trust, and Optimay Foundation Trust: I think I am recalling all the parties. Schwab accounts were set up for the various parties receiving funds in the Optimay-Lucent transaction, but it was never appointed investment adviser. These accounts either were not invested or they were invested in money market funds at the behest of the owner of the account. The owner, in the case of the De May Family Trust, the Anne Schrader De May Trust and Optimay Foundation Trust, was, of course, the trustee. The De May – Optimay Comp Trust was, I recall, dissolved in connection with the Lucent transaction. Note also that prior to the closing of the transaction with Lucent, the only assets which any of these trusts held were shares of Optimay Corporation stock, a closely held corporation for which there was no public market for its shares. Accordingly, prior to April 16, 1998, no one would have performed any "investment advisory" functions.

**Interrogatory No. 13**

This interrogatory asks about the activities of the trusts. The relevant time period is through December 31, 1998. I understand that the only two financial institutions that have held the trusts assets are Charles Schwab and Rahn & Bodmer. Note, however, that all of the assets of the De May Family Trust at Rahn & Bodmer were held in the name of the Trust dated 5 August 1998, of which the De May Family Trust was a settlor. If this is correct, we need to provide information regarding the accounts at these institutions, including the individuals at these institutions responsible for the accounts (his or her name and title)[at Rahn & Bodmer: Martin Dunki; at Schwab: Sara Laber], the account number[at Rahn & Bodmer: 1250028-701; at Schwab 2792-2272];, the address of the institution[Rahn & Bodmer, Talstrasse15, Postfach, CH-8022 Zürich, Switzerland; Charles Schwab & Sons, 1701 Pennsylvania Avenue,NW, Washington, DC, 20036];, the name on the account[at Rahn & Bodmer: Trust dated 5 August 1998; at Schwab: De May Family Trust], who established the account[the Trustees], who has signatory authority for the account[the Trustees], where the account statements are sent[to the Trustees], and who makes the daily decisions as to the account [the Trustees]. I need you to provide this information.

This information cannot be regurgitated by memory. The creation of the accounts, the transfer of funds into the accounts, the transfer of the funds from Schwab to Rahn & Bodmer was all accounted for and documents exist showing all this. On top of this, Bill Donnelly of McGuire Woods carefully "audited" the process to make sure that nothing inadvertently fell off the table. His file, which is at McGuire Woods, will contain, I suspect, an excellent recitation of all the facts.

**Interrogatory No. 14**

Interrogatory no. 14 asks about minutes for trust meetings and activities. It states:

**August 23, 2005**
**Page 5**

For each of the identified trusts, were minutes prepared for trust meetings and activities? If so, identify what minutes were prepared, who kept them, and who currently has possession of the minutes to include a current address and phone number.

You may need to coordinate with Charles M. Bruce to answer this question. I have no recollection of seeing minutes to trust meetings.

I believe that different trust companies perform trusteeship duties differently, for local legal reasons and for "internal" reasons. The beneficiaries are not copied on "trust minutes", nor, certainly, is the settlor. I believe that the trust document and, in particular, the provisions relating to the Committee of Trust ~~Protectors~~Advisors, contains some provisions on point or nearly on point. But Trust Minutes, i.e., any notes of decisions taken at a meeting held by the trustees, are held by the trustee. Recall that for most of these trusts that only trustee was a single person—that is, the Grosvenor Trust Company Limited or one of the above-listed successor trust companies.

If you do speak with Charles, you may want to ask him about the chairman of the trust committee[the proper term is Chairman of Committee of Trust Advisors, and when capitalized in the Trust Indentures, the term Chairman refers to the Chairman of the Committee of Trust Advisors. Sometimes this is confusing in the trust instruments themselves, as the trust instruments contemplate multiple trustees, and in such circumstances, for example during meetings, a chairman of the meeting would be selected.] for each trust. The trusts make reference to trust committees and chairman, but I do not have documents that identify who are the chairmen. I do have a copy of a memorandum to the file from Charles that states that Anne was the chairman of the trust committee for the Anne Schrader De May Trust, but I have nothing other than this reference.

Each trust—at least all with the possible exception of the Optimay Foundation ~~Trust~~, had a Committee of Trust Advisors. The Chairman was named at the outset or at the time of migration. I believe Jim was Chairman of all of them except, I believe, the Anne Schrader De May Trust; or it may be that Jim was Chairman of this Committee at the outset and this changed when the Anne Schrader De May Trust ceased being a foreign trust and became a US trust. Without looking at the file, I cannot recall these details.[I believe Charles is correct. We do not appear to have in our files, however, copies of the initial appointments of the various Chairmen of the various Committees of Trust Advisors for each of the Trusts]

Have you not looked at the memorandum that I did showing each step in the "life" of these trusts? I am attaching a copy. I would have to go back to this to recall the details. Also, note that there is not just one De May Family Trust and Anne Schrader De May Trust; again, you need to refer to the memorandum and also the details in the files. (For example, looking at this memorandum, I note that it says, as to Anne De May's instructing the migration: "Request to migrate trust, signed by Anne Schrader De May as Chairperson of Committee of Trust Advisors.")

> Formatted: Font: 12 pt

McGuireWoods LLP

August 23, 2005
Page 6

**Interrogatory No. 22**

Interrogatory no. 22 asks us to identify and describe all written correspondence or other written communications between James De May (or his wife) and (i) trustees of the trusts, (ii) beneficiaries of the trusts, and (iii) any other individuals or entities concerning any matter related to the identified trusts. In notes prepared by Charles M. Bruce, Charles says that there were a series of letters to the beneficiaries around August 19, 1996, stating that they are beneficiaries as to a given number of shares of Optimay stock. These beneficiaries included the parents and sister of James De May, who were U.S. citizens. Do you recall these letters, and do you have copies of them? You may want to ask Charles if he has copies of such letters. It is likely that these letters came from Charles and not you, but you may want to give this some thought.

There were letters sent to some of the beneficiaries. I recall one's sent to Anne De May's mother as well as others. I believe that these were sent by me, on behalf of Jim. These were sent by the Trustee, Grosvenor Trust Company, to certain beneficiaries in August, 1996. He wanted to let them know that he had settled trusts that gave them interests that might be valuable someday. These letters will be in the files. I will provide copies of these letters to you. We have copies of most of these letters; I note that the one addressed to Jim's sister, as Janet Blum, had to be corrected, and we do not appear to have a final version of the letter to her in our files. These letters are included in the packet of documents we are sending along to Doug Charnas.

**Interrogatory No. 23**

Interrogatory 23 asks for the details of any oral conversations James De May or his wife had with any trustee, investment manager, or beneficiary regarding the identified trusts. Obviously, you are not going to remember each conversation. If there are any specific conversations you recall, you should recount the conversations. As we have discussed, I doubt you had any direct conversations with the trustees of any trusts, other than Charles M. Bruce, who is a trustee of the Vaterstetten Foundation Trust. If there are any specific conversations you recall having with Charles involving the Foundation for taxable years through December 31, 1998, you should recount those conversations.

As to this, I think Jim had discussions with Gordon Howard in the way of due diligence before settling the trusts with Grosvenor Trust Company as Trustee. Probably the same can be said with respect to people at Valmet/MTM. (In the same way that he recently met with two individuals with CGI—recalling that this meeting occurred just a few months ago.) A settlor will always want to "interview" his/her prospective trustee. Also, I think that Jim had conversations and maybe exchanged correspondence with the management of Valmet/MTM.

For purposes of responding to this interrogatory, I would treat Charles Schwab and Rahn & Bodmer as investment managers. It is likely that your conversations with

McGuireWoods LLP

**August 23, 2005**
**Page 7**

Charles Schwab were limited through 1998. [I don't think Jim ever spoke with anyone at Schwab. Recall that Schwab was only the brokerage firm for the "receiving accounts" on the proceeds of the Lucent transaction, and it did not render any investment advice as such.] You may have had more conversations with your contacts at Rahn & Bodmer, although remember that we are only talking about the period through December 31, 1998. If you do not recall any specific conversations, then describe in general terms the nature of the conversations you had with individuals at these companies. [Jim has had, I believe, a large number of conversations with individuals at Rahn & Bodmer. Recall that some of the funds with Rahn & Bodmer belong to Jim. Also, as Chairman of the Committee of Trust Advisors for some of the tTrust's, he is interested in staying abreast of investment policy.]

**Interrogatory No. 26**

This interrogatory asks whether financial statements were ever prepared for the trusts. As we discussed, there were no financial statements prepared for the trusts, or, at least, you never saw any. You may want to confirm this with Charles M. Bruce. It is highly likely, however, that both Charles Schwab and Rahn & Bodmer provided the trustees (and possibly you and Charles) with statements for the trust accounts. We need copies of those statements to respond to this interrogatory and others.

Accountings for the assets in the Trusts have always been prepared. These were prepared by the accountants/return preparers, Jester & Reed, CPAs (Bob Wade). And of course there were always statements and confirmations of trades for the accounts. Since Bob Wade was responsible for the accounting work, his files and workpapers will have all this information. Copies will be available from the institutions and the trust companies, as well. Bob Wade, however, I suspect, it the best source. Our files do not appear to be complete; Bob Wade, as the return preparer, should have a complete set of all of these financial records.

**Interrogatory No. 34**

This interrogatory addresses the anticipatory assignment of income doctrine. This doctrine operates to tax a person if the person, in anticipation of receiving income, transfers to another person the right to receive the income. Case law has described the anticipatory assignment of income doctrine as follows:

Under the anticipatory assignment of income doctrine, once a right to receive income has "ripened" for tax purposes, the taxpayer who earned or otherwise created the right, will be taxed on any gain realized from it, notwithstanding the fact that the taxpayer has transferred the right before actually receiving the income.

The IRS is arguing that you knew the Optimay stock was going to be sold, so you amended the Anne Schrader De May Trust and the De May Family Trust to avoid being taxed on the income. You anticipated the income and assigned it to the trusts by

August 23, 2005
Page 8

amending them. The amendments to which the IRS is referring are the April 1998 amendments that were designed to correct the Section 679 problem. Before the amendments, the two trusts had U.S. beneficiaries. As a result, the trusts were grantor trusts, which means you would be taxed on the gain from the sale of the Optimay stock. By amending the trusts so that they were no longer grantor trusts, thereby no longer making you taxable on the gain, you transferred the tax on the gain to beneficiaries.

A key to the successful application of the anticipatory assignment of income doctrine is the knowledge that the taxable event was going to occur (*i.e.*, the sale of the Optimay stock) at the time the right to receive the income as assigned. The mere possibility that a taxable event might occur should not be sufficient to cause the application of the doctrine. Thus, the issue becomes how certain was it that the sale would occur when the amendments were made. If discussions were on-going with multiple parties and multiple potential outcomes, then it was not clear a sale to anyone was going to occur. For example, if the discussions were for one or more parties to acquire stock from Optimay Corporation (*i.e.*, as new investors), there would have been no sale of the stock by the shareholders, and, therefore, no anticipated income to assign.

The response to this interrogatory is fact driven, and I simply do not have the factual background to respond. As you, Jonathon R. Moore, and Charles M. Bruce lived through this period, you have the background to respond.

I would have to review the timeline of events to comment intelligently on this. Jonathon, in fact, was probably closer to the events than me. There was, as I recall, always the thought that the company should not be sold but should continue to build and then "go public". In fact, this was the preferred approach—if only the parties, and in particular a core group of employees, could only stop fighting. Another thing that Jim looked at, I believe, was having a buyer "take out" either his family or the employee group. But Jonathon may be able to comment more knowledgeably.

It was never contemplated that Optimay would be sold. Indeed, from the very beginning the business plan was to build the company up and to take it public in an IPO as soon as the company could reach a valuation of $100-120 million. The events that led to the sale to Lucent unfolded as follows: in mid-1977, Optimay engaged Alex. Brown as its investment banker to explore the next round of financing. [The first round of financing, the sale of $3.3 million of convertible subordinated debentures to the so-called A and B Investors, took place from April, 1995 through January, 1996, and the next round of financing occurred in the sale of shares to a group of investors headed by Moses Tsang.] The next round of financing was contemplated as an offering to various "strategic partners," including customers of Optimay, such as National Semiconductor and Lucent. Alex. Brown also proposed approaching other major players in the telecommunications industry such as cellular telephone operators and venture capitalists. By December, 1997, the Company or its investment bankers had made numerous approaches to the targeted lists of potential investors. Negotiations with these investors commenced in late January, 1997 with multiple parties, which included

McGuireWoods LLP

August 23, 2005
Page 9

Lucent.  The negotiations were conducted simultaneously on multiple tracks with each of the various interested investors.  Shortly after these negotiations commenced, Lucent stated to Optimay's representatives that it was really more interested in acquiring Optimay outright than in taking a minority position as an investor (owning 3%-10% of its common stock).  Even though Lucent's initiative did not fit the current financing strategy, Alex. Brown brought the suggestion to Optimay's Board.  The Board decided to continue negotiations with Lucent on the sale, but not to terminate other ongoing negotiations with potential investors.  In fact, until the closing with Lucent, certain other parties, notably National Semiconductor, thought that they would be investing in Optimay by buying some portion of the third round stock offering.  Given the fluid nature of the these types of negotiations (there were any number of "deal breaker" terms which were not worked out until immediately before the closing), until the Lucent transaction closed, it was not clear that Jim De May or any of the Trusts, including the De May Family Trust, would be selling their shares of Optimay Corporation stock. At the end of the day, Lucent's all-cash offer was too good to walk away from, given the risks that continuing ill-will with a number of the employees, including key employees, and with previous outside investors might interfere with the Company's ability to go public, perhaps as part of its next round of financing.

**Interrogatory No. 39**

Interrogatory no. 39 states:

For each of the identified trusts, do you contend that there was <u>no</u> reasonable possibility for a U.S. person to <u>ever</u> be a beneficiary of the trust?  If yes, explain, for each trust, why you so contend and list and describe all the documents that support or substantiate your position.

This is not a new issue being raised by the IRS.  When this issue has been discussed with Charles M. Bruce, he has said that the trusts must be read in the context of the circumstance they were intended to address.  My understanding of what he means is that the trusts were designed to provide for Anne in the event of a divorce.  The trusts were created at a time when you lived in Germany.  Thus, if you and Anne divorced, she would be a beneficiary under the trust eligible to receive income and principal distributions because she would not be U.S. citizen nor married to a U.S. citizen.  Moreover, whether you and Anne remained married, it is possible that your children would choose not be U.S. citizens.  [Recall that it is relatively easy for a child to renounce before, I recall, 18½ years of age.]  I am not clear, however, on how the trusts were intended to work if you and Anne remained married and your children remained U.S. citizens.  I think this is why the words "no" and "ever" are emphasized in the interrogatory.

We were reluctant to raise this reason with the IRS in the past.  With divorce now a real issue for you and Anne, and the petition for divorce being a matter of public record, there should be less concern for explaining the reason for the language in the trusts.

McGuireWoods LLP

August 23, 2005
Page 10

I can draft a response to this interrogatory, but you might want to consider having Charles M. Bruce draft the response. Charles drafted the trusts and has the historical context. Of course, you are the one providing the responses to the interrogatories, so you will need to agree with the answer Charles provides.

It is the case that as early as the date of the creation of the first Anne Schrader De May Trust, Jim was contemplating the effects of a divorce. I believe he foresaw a divorce, instituted by one or the other of them. He thought that there would be a divorce; Anne would ~~return to~~ remain in Germany because she is very close to her family and, at that time, did not like the idea of living in the US (perhaps this is too strong a way to put it, but the concept is there)[shortly after the consummation of the first round of financing (in the spring of 1997) which utilized a Delaware corporation as a financing vehicle, discussions were under way that would have migrated the corporate headquarters from Munich, Germany to the United States. Jim would have moved to the United States in connection with that migration); custody of the children would be given to Anne. Anne and the children would live in Germany and Jim would have either to move there or come and go frequently. Therefore this approach in fact "matched" his view of what would happen. Jim's move to the United States in late 1997 or early 1998 was unrelated to any discussions with Lucent, but was in connection with moving the corporate headquarters to the US. As a further evidence of the fact that the sale of Lucent was never intended, shortly before the sale, the Company had negotiated a lease on office space in Berkeley, California that was to serve as its corporate headquarters.

**Interrogatory No. 51**

Interrogatory no. 51 deals with the De May – Optimay Comp Trust. Parts (a) and (b) of the interrogatory read as follows:

———Prior to the sale of the Delaware Optimay stock to a subsidiary of Lucent Technologies on April 16, 1998, was this stock transferred out of the Optimay Comp Trust or Optimay Foundation to another individual or entity? If yes, identify the individual or entity that received the stock and list and describe all documents that support or substantiate your answer.
a.

No. ~~The shares—or were they options—in the Optimay Comp Trust were "transferred" into a form or entity benefiting the employees. Jonathon can explain, based on the closing documents. The Optimay Foundation shares—I think these were shares—were in the hands of the Foundation. Again, Jonathon will be able to provide details based on the closing documents. As you can imagine in US$70 million closing, everything was accounted for.~~ As I recall, the shares held in the Optimay Comp Trust were used in connection with the exercise of vested stock options held by the various employees, who were beneficiaries of the Comp Trust, in

McGuireWoods LLP

August 23, 2005
Page 11

connection with the Lucent closing.  I will attach in the packet of documents I am sending Schedule 3.2 to the Merger Agreement, which shows the vested options held by each of the employees.  There was no transfer of stock held by the Optimay Comp Trust directly to the employees; rather the employees holding rights to receive shares (represented by vested options) instead received cash in the merger.  [It was somewhat complex, because different employees held different options with different exercise prices.]  As to the shares held by Optimay Foundation, these were exchanged for cash at the closing.

b.      When this stock was sold in April of 1998 who received the proceeds from the sale of the stock?  List and describe all documents that support or substantiate your answer.

The closing documents will show who got what. A copy of the ledger showing the consideration received by each stockholder as a result of the merger transaction is included with the documents I am sending over.

The information I have on the De May – Optimay Comp Trust is not that clear.  As I understand it, the trust was created to address certain issues that had arisen in the management and operations of Optimay.  The intended beneficiaries of the trust were an employee compensation plan to be created by Optimay Corporation and the Optimay (Vaterstetten) Foundation.  In March, 1998, Charles M. Bruce concluded that an employee compensation plan of Optimay Corporation could not qualify as a beneficiary under the terms of the trust, and the shares that were held for purposes of the employee compensation plan were transferred to Optimay Corporation.  Mr. Bruce informed you of the need to transfer such shares, and you, as settlor of the trust, agreed to the transfer.  This would have left the Optimay (Vaterstetten) Foundation Trust as the sole beneficiary of the trust.  It appears, however, that the stock held by the trust for the Optimay (Vaterstetten) Foundation Trust was transferred to the Foundation at the same time stock was transferred to Optimay Corporation.

Again, I think Jonathon will be able to provide the details. All I can say is that the above narrative is highly inaccurate.  The so-called Comp Trust was created as a mechanism to implement Jim's agreement with key employees that within three years after the closing of the first round financing, Jim's interest would be brought down to 42%.  That agreement left open how exactly that was to occur.  The solution was for Jim to put a sufficient number of shares which he owned into this trust for the benefit of the employees.  As it turned out, the company was sold to Lucent prior to the three years having elapsed, and, as indicated above, it was decided that the shares being held in this trust would be utilized to satisfy the employee stock options that were to be exercised upon the closing of the transaction with Lucent, and immediately "cashed out."  Although my memory is dim on the subject, I believe that some small amount of shares was left in the Comp Trust after all of the vested options were exercised/converted/cashed out, and it was agreed that they would be transferred to the

McGuireWoods LLP

**August 23, 2005**
**Page 12**

Optimay Foundation, since it was a charity. I was not actively involved in the negotiations, which led to this, and which occurred in connection with the final negotiations on the Lucent closing.

A memorandum from Charles M. Bruce to Gordon Howard of Grosvenor Trust Company Limited dated March 20, 1998, and a letter from Charles M. Bruce to Grosvenor Trust Company Limited dated March 20, 1998, support the transfer by the De May – Optimay Comp Trust of Optimay stock to Optimay Corporation. I could not find anything supporting the transfer of the Optimay stock to the Foundation before the sale of the Optimay stock to Lucent. Can you confirm that the stock held by the De May – Optimay Comp Trust for the Foundation was distributed to the Foundation at the same time that the stock that was intended for the employee compensation plan was distributed to Optimay Corporation? my recollection is that all of these transfers occurred in connection with the Lucent closing.

An issue that is relevant to a number of interrogatories is the evidence for the transfer of the Optimay stock to the trusts. Were stock certificates ever issued with the trusts shown as the owners? Yes Were the stock transfers recorded on the stock ledger for Optimay Corporation?  Yes Does anyone have copies of the stock certificates or stock ledgers? Yes. The stock ledgers as of the closing on the Lucent transaction are included with the documents we are sending over. We are unable to locate copies of the stock certificates, which were surrendered at the closing.

~~Again, I think Jonathon will be able to provide the details.~~

⌐ - - - - - - - - ▭ Formatted: Indent: First line: 0"

The IRS has asked for our answers to the interrogatories and for the production of documents by this Friday, August 26th. We should make every effort to comply, or at least provide as much information as possible. If you need to speak with Charles M. Bruce or Jonathon Moore, or anyone else, please do so as soon as possible.

Let me know if you have any questions.

The documents I am sending over also include the index to the due diligence binder put together for the Lucent transaction.

Moore & Bruce, LLP

40 Park Street
London W1K 2JG
1072 Thomas Jefferson St., NW
Washington, DC 20007

Tel: +44 (0)20 7495 3842
Fax: +44 (0)20 7629 1242
Tel: +1 202 965 5300
Fax: +1 202 965 7745

## MEMORANDUM

**Private and Confidential**

TO:      Doug Charnas, Jim De May, Jonathon Moore

FROM:    Charles M Bruce

RE:      De May Tax Audit; Recent Inquiries

DATE:   2 September 2005

---

### De May Audit and De May Family Trust File

I have received several emails on these subjects in the last few days. Since they all more or less relate to the same subjects, I will respond to all at the same time.

Also, yesterday, I met with Ian Gerrard, Managing Director, CGI (IoM). He wanted to solicit Jonathon's and my help gathering for the trustee's files information about, primarily, the underlying entities and the US bank account belonging to the De May Family Trust. I begin by reporting on this meeting.

*Meeting with Ian Gerrard*

Ian and I reviewed what the trustees are looking for in the way of information about the underlying entities. All this exists with Moore & Bruce, Bob Wade, Gill, Kohr & Johnson, and Bank of America. We—Jonathon and I—will undertake to get this to the trustee.

CGI, the new trustee, has not received the files from IFG, the prior trustee, but expects to do so in the next few days. All the paperwork has been completed to effect the change over.

Ian has spoken with people at IFG. In the course of his conversations, it was indicated that there is only one box of files and very little in the way of accountings. But we will have to wait and see. Ian is pessimistic.

Ian surmised that when Valmet/MTM collapsed and IFG picked up the pieces, Valmet/MTM's files were "cherry picked" (my expression) by IFG, looking for what appeared to be worthwhile clients. Valmet/MTM, says Ian, had more than 1,000 files. IFG apparently took only a small percentage of these as active clients. When sorting through the files and moving some over to IFG's premises, and sending the remainder to storage, the files may have been mishandled, i.e., some of the files were mistakenly sent to storage.

In any event, we will have to see what CGI discovers when it gets the files. CGI will inventory the files and provide a listing. We can all "go from there".

EXHIBIT

3(D)

I asked whether, if some of the files appear to be missing, someone might search through Valmet/IFG's—or is it IFG's—storage. Ian was not sure how this might work out, but was not immediately encouraging as to the outcome. (Apparently CGI has had bad experiences with former IFG and Valmet/MTM files.)

My guess, which should not be attributed to any degree to Ian, is that it will take at least 30 days to work through the files that come over from IFG.

*Doug Charnas Email dated 31 August re De May Trusts/Meeting with Ian Gerrard from CGI.*

This asks that I and Jonathon help locate originals or certified copies of all the De May family related trusts.

We have a complete list of these. Jonathon and I have talked about how best to go about this. Jonathon, based on the list, is preparing an inventory of what Moore & Bruce has. This inventory will show what shape the document is in, meaning, is it an original, is it signed, is it signed in the original or via facsimile, etc.

Jonathon has made a first crack at this, as reflected in the CHART OF TRUST DOCUMENTS prepared by him yesterday. In brief, as to the family trust documents, Moore & Bruce has copies, but as would be normal, the originals are not with it. As to Anne's trust, Moore & Bruce has copies of the early versions and originals of the two most recent versions, but, of course, I am a trustee of the latter two, so this is to be expected. For reasons that I cannot recall, Moore & Bruce also has the original of the first version of Anne's trust. Turning to Vaterstetten (Optimay) Foundation, Moore & Bruce has originals; again, I am a trustee along with Dr. Carmichael's trust management company. Concerning the De May-Optimay Comp Trust, again, Moore & Bruce has an original.

I suggest that as to the originals in Moore & Bruce's possession, that it provides certified copies. This would be normal in my experience, but Doug can say what he wants.

As for the other originals, we can go to the trustees.

I will ask Rahn & Bodmer for the Trust dated 5 August 1998. I think it may have one.

I would hope that some of the De May Family Trust and Anne's Trust indentures will show up in the files being sent to CGI. If not, and if anyone thinks it is desirable, we can try to initiate a search of the stored files.

*Jim De May email dated 1 September 2005 with series of questions and requests for documents*

Jim has asked a series of questions and has requested help obtaining a number of documents.

The documents are by and large the same ones listed by Doug Charnas. Jonathon has listed all the documents and what is in Moore & Bruce's files. We will methodically seek to obtain the others from the persons that, we think, have them.

As for the questions, let me begin by saying that Jim may not want to try to master all the answers, as some of them tie to technical tax rules. His answer, stated simply, may be that he was advised by counsel that such and such actions were necessary or desirable. Some things he may have initiated, such as the migration of the family trust. Other things, such as distributions, were done by the trust (the trustees), and Jim, of course, was not a trustee. Questions about something that the trust did should be directed to the trustees. I think that it

represented my best interest at all times, what advantage did you create for me with the actions of August 1998?"

These actions avoided triggering taxable income for you when the family moved to the US. Recall that if the family had remained in Germany and Anne had not become a US resident for tax purposes and the family had stayed together, the prohibition on US beneficiaries would have been fine. Distributions could have been made to Anne and the children. Anne could have made interspousal gifts to Jim.

"I need to also be able to explain why if you made my family as well as myself no longer qualified beneficiaries, why would you authorize distributions to me as soon as we arrived in Santa Fe? How do I explain that I was given a checkbook and authorized to write checks on the trust account although I was not even a qualified beneficiary? How do I explain that after some period of time, I not only did not have a check book, but was not given further access to the family trust account?"

First, I did not authorize distributions; the funds came from the Trust dated 5 August 1998 which, as to the funds in question, was a part of the De May Family Trust. Secondly, some payments were for the house. As to other payments, I need to have a schedule of these payments in front of me.

"What explanation do I offer that after a couple of years, the trust completely stopped making distributions to the family? However, the trust has continued to make payments for the kids education. Those payments have been taxed as distributions to Anne and myself. We are counting on and need the trusts to continue paying for the kids education. How confident may we be that the trust will continue paying?"

It seems that this is not a question relating to the IRS's interrogatories but to "real live" concerns that you have. You met with two representatives of the new trustee (Kevin Rafferty and Ian Gerrard) at the end of last year—I believe it was. At that time you probed this subject.

"How do respond when asked: Did I direct the trust to make these payments? Since the trust seems to respond to any of my wishes, even though I am not a beneficiary, how do answer the question is this trust not just my alter ego?"

It is normal for a trustee to listen to the wishes of settlors and beneficiaries. But the trustee also exercises independent judgment. An example was your thinking on how the monies in the family trust might be invested. The trustees decided not to put all the funds with investment advisers that you recommended. A significant portion stayed with Rahn & Bodmer, and eventually all the funds were moved to Rahn & Bodmer.

Again, I suggest that a good deal of the information requested in the interrogatories should not properly come from Jim, but should be provided by and in the words of others.

Lastly, let me suggest that rather than simply provide documents and respond to Jim's questions, Doug may want us to help with the wording of some of the responses or to review the responses prepared by McGuireWoods. We would be happy to try to help out.

4

## Moore & Bruce, LLP

| | |
|---|---|
| 40 Park Street | Tel: +44 (0)20 7495 3842 |
| London W1K 2JG | Fax: +44 (0)20 7629 1242 |
| 1072 Thomas Jefferson St., NW | Tel: +1 202 965 5300 |
| Washington, DC 20007 | Fax: +1 202 965 7745 |

## MEMORANDUM

**Private and Confidential**

TO:         CGI (Kevin Rafferty and Ian Gerrard), Jim De May, Doug Charnas, Jonathon Moore

FROM:    Charles M Bruce

RE:         De May Family Trust; Jim De May's tax audit; organizing who is doing what, who is representing whom, and how fees will be paid

DATE:     5 September 2005

---

This memorandum is intended to raise a number of subjects in the context of Jim De May's on-going IRS tax audit and Tax Court case. I suggest that Doug Charnas, representing Jim De May in his tax case, Kevin Rafferty and/or Ian Gerrard (for the Trustee of the De May Family Trust, CGI), and Jonathon Moore and/or me, should discuss these things. Then some decisions may have to be made. Doug Charnas may suggest that Jim De May participate directly in this discussion or he may suggest otherwise.

Principally for Kevin Rafferty's and Ian Gerrard's benefit, I begin by giving some background.

### Jim De May's Tax Case

Jim De May is being audited by the IRS for several taxable years. The issues are income tax and gift tax issues. McGuireWoods (Doug Charnas in their Washington, DC office and Craig Bell and Brian Bernhardt in their Richmond office) is representing him.

The IRS has determined that Jim De May owes a large amount of tax; I have not seen the final agent's report or determination letters.

The taxpayer, Jim De May, has filed in the US Tax Court for a re-determination of this finding of liability by the IRS. I have not seen the actual petition filed with the Tax Court. [Doug, please send me a copy of this, as I was not able to pull it off the internet.]

Jim De May's Tax Court case was begun on September 20, 2004. (Copy of Docket Sheet is attached.) McGuireWoods has been preparing the case and working closely with Jim De May.

Moore & Bruce—Jonathon and I—assisted Doug with information and thinking as to certain tax questions early on in the audit. More recently, on August 24, 2005 and August 26, 2005, I have been asked to help with specific information, *i.e.*, answers to questions and documents. Jonathon helped with this. Also, Jim De May recently asked that we respond to a number of questions posed by him in an email dated September 1, 2005.

**EXHIBIT**

**3(E)**

The IRS has served on Petitioner Interrogatories (54 interrogatories, 37 pages in length, dated July 26, 2005 and due 30 days thereafter) and Request for Documents (55 document requests, 21 pages, dated July 26, 2005 and due 30 days thereafter).

The IRS has filed on August 36, 2005 motions to compel responses to its Interrogatories and Request for Documents. Responses are apparently due on September 16, 2005.

By email dated August 31, 2005, CGI (Ian Gerrard) asked that we help it gather some items that principally relate to the underlying trust (Trust dated 5 August 1998) and Coyote Trails.

**Who Is Representing Whom and Who Is Doing What**

McGuireWoods represents Jim De May in the audit and Tax Court case. The attorney in charge is Doug Charnas. Doug's contact information is:

Douglas Charnas
McGuireWoods
Washington Square
1050 Connecticut Ave N.W.
Suite 1200
Washington, DC 20036-5317
(202) 857-1757 T
(202) 828-2980 F
dcharnas@mcguirewoods.com

Moore & Bruce, LLP represents the De May family as to tax and related matters and the De May Family Trust, which benefits the family. In the past, the firm represented both Jim De May and Optimay Corporation; Jonathon Moore, my partner at Moore & Bruce, LLP, served as General Counsel to Optimay Corporation for a period before its sale to Lucent Technologies. I serve as Chairman of the Committee of Trust Advisors of the De May Family Trust and as Trustee of a sub-trust of this trust (called the Trust Dated 5 August 1998). (This trust at present has only one beneficiary, which is the De May Family Trust; and this trust—Trust Dated 5 August 1998—is revocable by the De May Family Trust.) Separately, I serve as co-trustee of a trust benefiting Anne Schrader De May and of a charitable foundation created by Jim De May.

Jonathon's and my contact details appear above. His and my email addresses are: jmoore@mooreandbruce.com and cbruce@mooreandbruce.com.

CGI recently assumed the duties of Trustee of the De May Family Trust. Predecessor trustees of this trust or predecessor trusts were Grosvenor Trust Company Limited (Bermuda), Valmet Trust Company Limited (which became Mutual Trust Management Limited) (Isle of Man), and IFG Trust Company Limited (Isle of Man). (These names of predecessor trust companies may not be the correct legal names.) Kevin Rafferty and Ian Rafferty are directors of CGI. Their contact information is:

Kevin Rafferty
Managing Director
PO Box 292
2nd Floor
Post Office Chambers
Regent Street
Douglas
Isle of Man IM99 2XE
British Isles

Ian Gerrard
Managing Director
PO Box 292
2nd Floor
Post Office Chambers
Regent Street
Douglas
Isle of Man IM99 2XE
British Isles

United Kingdom                          United Kingdom
+44 (0) 1624 662 264                    +44 (0) 1624 662 264
+44 (0) 1624 611 925                    +44 (0) 1624 611 925
krafferty@cgiol.com                     igerrard@cgiol.com

CGI just today, September 5, 2005, received the files from IFG and obviously will require some time to get acquainted with the records.

In addition, Bob Wade, with Jester & Reed, CPAs, will have to help, I suspect, both Doug and CGI with accounting and similar information. Bob has been responsible since the outset—that is, since the sale of Optimay shares to Lucent—for keeping track of things. (McGuireWoods (Bill Donnelly) double checked activities and amounts for a period following this sale. Therefore, his files may contain some information.)

I do not know how much longer the Tax Court case may go on or how much it may cost in legal fees, but Doug may have a rough estimate.

Jim has said to me recently that his ability to pay fees is very limited. It seems likely that he will request that the De May Family Trust pay some of the fees on his behalf. Will the trust agree to do this? Will it view it as a distribution or a loan or something else? What are the tax implications? Are there implications for Jim De May's tax case? How should Jim's request be handled?

CGI will need to spend, I suspect, a significant amount of time organizing the trust file and filling in any gaps that may exist. It should in a week or so be in a position where it can make a "guesstimate" as to how long this will require and how much it will cost. Payment for this work will come out of the trust funds currently held in the sub-trust.

Moore & Bruce, LLP apparently will be asked to do some work in connection with Jim's tax case and some in assisting the trustee with respect to the trust administration. As to the former, it appears that it will be in the same position as McGuireWoods and, as to the latter, the same position as CGI.

I may have misstated some of the information set forth above, in which case I hope someone will correct me.

Also, undoubtedly there are additional points and issues that should be raised, and again I look to others to add these.

I suggest that in the next few days we have a conference call to discuss these topics. At some point, not too long from now, it might be a good idea for Kevin or Ian to go to Washington, DC to meet with Doug, Bob Wade, and perhaps others and, at the same time, pick up some materials from Bob and Moore & Bruce. I will work with Doug to do this, assuming he thinks it is a good idea.

09/05/05

# U N I T E D   S T A T E S   T A X   C O U R T
## D O C K E T   E N T R I E S

Docket No. 17512-04                                    INDEX
James M. De May
    v. COMMISSIONER OF INTERNAL REVENUE

BB0450  (Service Attorney)
NO.  3  Bernhardt,Brian Carl
    McGuireWoods, LLP
    One James Center
    901 East Cary Street
    Richmond, VA 23219-4030

BC0520  Bell,Craig Dennis
    McGuireWoods, LLP
    One James Center
    901 East Cary Street
    Richmond, VA 23219-4030

CD0512  Charnas,Douglas William
    McGuireWoods, LLP
    Washington Square, Suite 1200
    1050 Connecticut Avenue, N.W.
    Washington, DC 20036-5317

| NO. | DATE | EVENT | FILINGS AND PROCEEDINGS | ACT/STAT DTE | SERVED | M |
|---|---|---|---|---|---|---|
| 0001 | 09/20/04 | PF | PETITION Filed:Fee Paid | | R 09/21/04 | |
| 0002 | 09/20/04 | DPT | DESIGNATION of Trial at Richmond, VA | | R 09/21/04 | |
| 0003 | 11/08/04 | ACS | ANSWER (C/S 11/05/04). | | | |
| 0004 | 11/09/04 | AA | AMENDED ANSWER (C/S 11/8/04) | | | |
| 0005 | 06/10/05 | NTD | NOTICE of Trial on 11/14/05 at Richmond, VA. | B 06/10/05 C | | |
| 0006 | 06/10/05 | SPTO | STANDING PRE-TRIAL ORDER attached to Notice of Trial | B 06/10/05 C | | |
| 0007 | 08/29/05 | MOTR | MOTION by resp. to compel docu. w/Exs. (C/S 8/26/05) | | | |
| 0008 | 08/29/05 | MOTR | MOTION by resp. to compel responses to interr. w/Exs. (C/S 8/26/05) | | | |
| 0009 | 08/30/05 | O | ORDER Petr. by 9/16/05 file objections to mots. to compel. | B 08/31/05 C | | |

*See* http://www.ustaxcourt.gov/UstcDockInq/asp/Index.asp.

4

| | |
|---|---|
| **From:** | "Charles Bruce" <cbruce@mooreandbruce.com> |
| **To:** | <'Simmons'>; <'Jane'> |
| **Cc:** | <Douglas Charnas>; <jmoore@mooreandbruce.com>; <'James De May'>; <'Jennifer Brown'> |
| **Sent:** | Monday, October 03, 2005 8:53 AM |
| **Subject:** | RE: De May-Related Trusts |

Dear Jane,

Thank you for this.

I sensed that something was awry when I didn't hear back pretty promptly.  I'm glad I resent the message with a confirmation requested!

Thanks, and let me know as soon as you can.

Regards.

Charles

**From:** Simmons, Jane [mailto:jsimmons@trustgrosvenor.com]
**Sent:** Monday, October 03, 2005 8:04 AM
**To:** Charles Bruce
**Subject:** RE: De May-Related Trusts

Dear Mr. Bruce,

We were having problems with our email delivery last week and the message below is the first message I have received from you.

I will speak with the Head of our Department and revert to you as to when the documentation can be retrieved.

Regards,

Jane A. Simmons

> -----Original Message-----
> **From:** Charles Bruce [mailto:cbruce@mooreandbruce.com]
> **Sent:** Sunday, October 02, 2005 6:42 PM
> **To:** Simmons, Jane
> **Cc:** jmoore@mooreandbruce.com; "James De May"; Douglas Charnas
> **Subject:** FW: De May-Related Trusts
>
> Dear Jane,
>
> I wonder if I might have an update about progress on this matter.  We would like to have these documents as soon as possible.
>
> Thank you.
>
> Charles

**EXHIBIT**

**3(F)**

8/11/2008

**From:** C M Bruce [mailto:cbruce@mooreandbruce.com]
**Sent:** Monday, September 26, 2005 3:28 PM
**To:** 'jsimmons@trustgrosvenor.com'
**Cc:** 'Charnas, Douglas W.'; 'jmoore@mooreandbruce.com'; 'James De May (gila@yellowmesa.com)'
**Subject:** De May-Related Trusts

Jane A. Simmons
Senior Trust Officer
Grosvenor Trust Company Limited
65 Front Street (2nd Floor)
Hamilton HM12
Bermuda

Dear Ms Simmons:

**Re: De May-Related Trusts**

This will confirm points made in our discussion of earlier today.

On behalf of our client, Jim De May, we are requesting that Grosvenor Trust Company retrieve and send to me copies of all documents relating to any of the following:

The Anne Schrader De May Trust
The De May Family Trust
De May-Optimay Comp Trust
Any other trust or entity associated with these.

I understand:
you believe that files may exist and that if so they would be archived in a facility there in Hamilton;
the originals of trusts and similar documents would be transferred to the successor trustee;
correspondence files might not be transferred to the successor trustee;
it ordinarily would require only several days to retrieve documents;
Grosvenor Trust Company will charge for this service on an hourly basis, plus expenses, e.g., copying and courier service.

You will let me know if Grosvenor Trust Company requires payment of a retainer amount and, if so, how much.

Thank you for your attention to this.

Because litigation is under way and requests for documents are outstanding, your immediate attention to this would be greatly appreciated.

Regards.

Charles Bruce

CC:  Doug Charnas (McGuireWoods), J Moore (Firm), Jim De May


====================

Charles M. Bruce ¦ Moore & Bruce, LLP
40 Park Street ¦ London W1K 2JG ¦ United Kingdom
Tele. +44 (0)20 7495 3842 ¦ Fax +44 (0)20 7629 1242 ¦ Mobile +44 7899925251
1072 Thomas Jefferson Street, NW ¦ Washington, DC 20007 ¦ U.S.A.

8/11/2008

Tele. +1 202 965 5300 ¦ Fax +1 202 965 7745
cbruce@mooreandbruce.com ¦ http://www.mooreandbruce.com

This communication has not been written as a formal opinion of counsel. Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This message, together with any attachments, is intended only for the use of the person to which it is addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the sender immediately at +44 (0)20 7495 3842 or by return e-mail and delete this message, along with any attachments, from your computer. We apologize for any inconvenience.  Thank you.

=====================


*************************************************************

This communication is intended only for the person to whom it is addressed and may contain confidential and/or privileged material. Any retransmission, dissemination, use of, or taking any action in reliance upon, this communication by persons other than the intended recipient(s) is prohibited and may be unlawful. If you have received this in error, please notify the sender and delete the material from any computer. WARNING: whilst we take reasonable precautions to ensure that any attachment has been swept for viruses, we cannot accept liability for any damage sustained as a result of software viruses and would advise that you carry out your own virus checks before opening any attachment.

| | |
|---|---|
| **From:** | "Charles Bruce" <mailto:cbruce@mooreandbruce.com> |
| **To:** | <gila@yellowmesa.com> |
| **Sent:** | Sunday, May 14, 2006 2:24 PM |
| **Attach:** | WrightFa.pdf; WrightLe.pdf |
| **Subject:** | FW: The De May Family Trust/CGI's Recent Petition |

Here is a copy of what I sent Mr Wright.

Charles

---

**From:** Charles Bruce [mailto:cbruce@mooreandbruce.com]
**Sent:** Sunday, May 14, 2006 4:22 PM
**To:** 'thie-awin@manx.net'
**Cc:** 'krafferty@cgiol.com'; 'Charnas, Douglas W.'; 'jmoore@mooreandbruce.com'
**Subject:** The De May Family Trust/CGI's Recent Petition

Dear Mr Wright:

Please see attached letter to you and accompanying fax cover sheet. Both items, signed by me, were faxed to your office (Fax No. +44 1624 627 344) a few minutes ago. Receipt was confirmed.

Doug, please immediately communicate with Mr Wright concerning the points where you are referenced. Make any corrections or additions as you see fit, of course. Mr Wright's contact details will follow separately.

I am currently in our Washington, DC office.

Charles Bruce
5/14/2006 4:14 PM
Washington, DC

Charles M Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | Tel: 020 7495 3842 | Fax: 020 7629 1242
**1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745**
Email: cbruce@mooreandbruce.com

---

This communication has not been written as a formal opinion of counsel. Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by return email. Thank you.

---

**EXHIBIT**

**3(G)**

8/13/2008

# MOORE & BRUCE, LLP
### ATTORNEYS AT LAW
### 40 PARK STREET
### LONDON W1K 2JG
_____

| Charles M. Bruce | Tel: +44 (0)20 7495 3842 | Email: |
|---|---|---|
| Fax: +44 (0)20 7629 1242 | | cbruce@mooreandbruce.com |

---

## FACSIMILE COVER SHEET

DATE and TIME: 14/05/2006 16:11

NUMBER OF PAGES INCLUDING COVER: 4        OUR REF.: 00862

TO: John Wright                          FAX NO.: +44 1624 627 344

FIRM:                                    RE:

FROM: Charles M Bruce                    CC: Kevin Rafferty (CGI; via email)
                                             Doug Charnas (McGuireWoods; via email)
                                             Jonathon Moore (Firm; via email)

---

This facsimile contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the person to whom it is addressed. It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other that the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

This communication has not been written as a formal opinion of counsel. Tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding United States federal tax penalties.

---

☑        Original **WILL NOT** follow by mail.


Please see attached letter.

Because I am currently in our Washington, DC office, please respond to me at:

Charles M Bruce | Moore & Bruce, LLP
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745
Email: cbruce@mooreandbruce.com


Charles Bruce
5/14/2006 4:11 PM
Washington, DC

---

Moore & Bruce, LLP is subject to the professional rules of The District of Columbia Bar, USA. It is not a Multi-national Legal Practice under the professional rules applicable to the Law Society for solicitors in England and Wales, nor is any of its attorneys a Registered Foreign Law Lawyer under those rules.

---

1

**MOORE & BRUCE, LLP**
ATTORNEYS AT LAW
40 PARK STREET
LONDON W1K 2JG

———

CHARLES M. BRUCE
FACSIMILE +44 (0)20 7629 1242

+44 (0)20 7495 3842
www.mooreandbruce.com

EMAIL:
cbruce@mooreandbruce.com

14 May 2006

VIA FACSIMILE AND EMAIL

John Wright
Thie Awin
16 Willowbrook Gardens
Douglas
Isle of Man IM2 2QQ

Dear Mr Wright:

**Re:  De May Family Trust/CGI's Recently Filed Petition**

This letter is written on behalf of the De May family and the De May Family Trust.  It requests that the recently filed Petition, discussed below, be immediately withdrawn.

I understand that you represent CGI Corporate Services Limited ("CGI") with respect to this subject. CGI is the trustee of the De May Family Trust.  The beneficiaries of the De May Family Trust, essentially, are the family of James Michael and Anne Schrader De May.

My name is Charles Bruce.  I am a partner in the Washington, DC law firm of Moore & Bruce, LLP. Moore & Bruce has represented the De May family for over ten years.  We have represented the De May Family Trust and predecessor trusts since their inception.  Our representation of the De May Family Trust was recently confirmed in a retainer letter signed by CGI.  I am the Chairman of the Committee of Trust Advisors of that trust.  I am trustee of the Trust dated 5 August 1998, which in turn benefits the De May Family Trust; the only asset of this trust is a bank account at Rahn & Bodmer Bank; monies in the account are used to benefit the ultimate beneficiaries and, incidentally, to pay CGI's fees and costs.  I am also a co-trustee, together with the Bank of America, N.A., of the Anne Schrader De May Trust, a US trust benefiting Anne Schrader De May.  Additionally, I am a co-trustee of the Vaterstetten Foundation (Barbados), formerly called the Optimay Foundation.  (Here I insert that I am writing this letter from home on a Sunday and do not have the file concerning these matters in front of me.)

Last Thursday evening I learned that CGI has filed a Petition and Affidavit of Kevin John Rafferty, a Director of CGI, with a Court in the Isle of Man, which petition is dated April 18, 2006.  Friday evening and yesterday I read the Petition and Affidavit.  Apparently, a hearing on this Petition is scheduled for tomorrow, Monday, 15 May 2006.  I do not know if the filing was made, in some fashion, under seal in order to prevent the information contained therein from becoming part of a public record.  Even though I am Chairman of the Committee of Trust Advisors, and in this capacity acted to put CGI in office, and Moore & Bruce is US legal counsel to the trust, CGI did not inform me of its intention to file this Petition or the fact that it had filed the Petition.

Moore & Bruce, LLP is a limited liability partnership registered in Washington, DC.  It is not a Multi-National Legal Practice under the professional rules applicable to the Law Society for solicitors in England and Wales, nor is any of its attorneys a Registered Foreign Law Lawyer under those rules.  A list of members' names and their professional qualifications may be inspected at its office at 40 Park Street, London W1K 2JG, England.

We operate in the offices listed below:
LONDON · WASHINGTON, DC
Representative Offices: WILMINGTON and ZURICH

MOORE & BRUCE, LLP
14 May 2006
Page 2

Like myself, the De May family was not notified in advance of this filing. It bears repeating that Mr and Mrs De May and their children are currently the only beneficiaries of the De May Family Trust, save the Vaterstetten Foundation, which is a US tax-qualified charitable organization founded by Jim De May.

The Petition must be withdrawn immediately, and I hereby request that this be done.

The filing of this Petition and affidavit risks doing irreparable harm to the beneficiaries of the trust as to which CGI serves as trustee. Among other things, it lends weight to arguments that the trust should be set aside by creditors. (In the view of McGuireWoods, Mr De May's and the De May Family Trust's counsel on tax and related matters and New Mexico counsel consulted by McGuireWoods, such arguments are incorrect.) Certainly it risks "giving heart" to persons that may one day seek to set aside the trust and reach the assets. This harm would be grave and irreparable. By copy of this letter to McGuireWoods (Douglas Charnas), I am asking that he confirm this point to you and make such additions as corrections as are appropriate.

The filing discloses confidential information about the family and its beneficial interests. While we are not competent to advise on Manx law, it appears that such disclosure breaches the trustee's fiduciary duty of confidence as well as possibly other duties. This point can be confirmed by Manx counsel representing the family.

The filing discloses the content of private conversations between one of the beneficiaries, Jim De May, and the trustee, in the person of Messrs Rafferty and Gerrard, who are officers and/or directors of CGI. This content is of a personal nature. These conversations were intended to be private and confidential.

The filing, including the affidavit of Mr Rafferty, contains incorrect statements. Moreover, these writings fail to take into account recent information, such as the fact that the US income tax case regarding Jim De May has been settled and the US IRS has decided to drop its gift tax case against Mr De May. (I say this concerning the gift tax case based on second hand information. I have not had an opportunity to confirm this information with Mr De May's litigation counsel, Doug Charnas of McGuireWoods. Again, I am asking that he confirm this point to you.)

Other serious issues arise as a result of the wording of the Petition and the affidavit.

The Petition should be withdrawn immediately, or it should be placed under seal, assuming this is permitted under local rules, and the hearing should be postponed until CGI and the beneficiaries can confer further.

Please let me have your response prior to the convening of the hearing set for Monday, 15th May at 2:00 PM.

Yours sincerely,


Charles M Bruce

CC:    Douglas Charnas (McGuireWoods)
       Kevin Rafferty (CGI)

**From:** "Jonathon R. Moore" <jmoore@mooreandbruce.com>
**To:** <Jim De May>
**Cc:** <Douglas Charnas Esq.>
**Sent:** Monday, May 15, 2006 9:18 AM
**Subject:** Coyote Trails, Inc.

Jim--

Further to our discussion yesterday regarding possible sale or mortgage of the Santa Fe property, I have reviewed the corporate charter and By-Laws of Coyote Trails, Inc.. Since nothing in either document limits my authority as an officer or sole Director to do so, I also checked the New Mexico Business Corporation Act. Section 53-15-1 expressly authorizes a New Mexico corporation's Board of Directors to "mortgage or pledge... any or all of its property and assets..., whether or not in the usual in regular course of business" without obtaining the authorization or consent of its shareholders. A sale of a New Mexico corporation's assets "other than in regular course of business," is, however, a matter requiring shareholder approval.

REGARDS!!!!!!!!!!!!!

Jonathon R. Moore
Moore & Bruce, LLP
1072 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Tel: 202-965-7747
Fax: 202-965-7745
Email: jmoore@mooreandbruce.com <mailto:jmoore@mooreandbruce.com>
*****************************************************************************************

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by collect telephone at (202) 965-5300 or electronic mail (jbrown@mooreandbruce.com <mailto:jbrown@mooreandbruce.com>). Thank you.

For more information about Moore & Bruce, LLP, please visit our website at <http://www.mooreandbruce.com/>.
*****************************************************************************************

**EXHIBIT**

**3(H)**

8/13/2008

| | |
|---|---|
| **From:** | "Charles Bruce" <cbruce@mooreandbruce.com> |
| **To:** | <'Charnas'>; <Douglas W.'> |
| **Cc:** | <gila@yellowmesa.com>; <jmoore@mooreandbruce.com> |
| **Sent:** | Thursday, May 18, 2006 4:55 PM |
| **Subject:** | RE: Proposal RE Resolving the Problems Arising WIth CGI's Petition and Rafferty's Affidavit |

Doug,

I understand from what Jim said to Jonathon a little while ago (I was out) that you will take the laboring oar in handling CGI and Wright and the hearing set for Monday in the Isle of Man.

Good luck with this.

Let me know if Jonathon or I can be of any help.

For your information, I will be traveling most of the day Monday, on a day flight to London. I arrive around 8 PM London time/3 PM DC time.

Regards.

Charles
5/18/2006 6:54 PM
Washington, DC

CC:     Jim
        Jonathon

Charles M Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | Tel: 020 7495 3842 | Fax: 020 7629 1242
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745
Email: cbruce@mooreandbruce.com

This communication has not been written as a formal opinion of counsel. Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by return email. Thank you.

**From:** Charnas, Douglas W. [mailto:dcharnas@mcguirewoods.com]
**Sent:** Thursday, May 18, 2006 5:03 PM
**To:** Charles Bruce
**Subject:** RE: Proposal RE Resolving the Problems Arising WIth CGI's Petition and Rafferty's Affidavit
**Importance:** High

Dear Charles,

I will be traveling tomorrow and in conferences all weekend. I have not spoken to Jim about your proposal.

Regards, Douglas

------Original Message-----
**From:** Charles Bruce [mailto:cbruce@mooreandbruce.com]
**Sent:** Thursday, May 18, 2006 4:44 PM

**EXHIBIT**

**3(I)**

8/11/2008

**To:** gila@yellowmesa.com; Charnas, Douglas W.; jmoore@mooreandbruce.com
**Subject:** Proposal RE Resolving the Problems Arising WIth CGI's Petition and Rafferty's Affidavit
**Importance:** High

**URGENT**

RESENDING

I AM RESENDING THIS AS A REMINDER THAT THE BENEFICIARIES—JIM AND ANNE—NEED TO TAKE SOME STEP TO DEAL WITH CGI'S CONCERNS OR, I BELIEVE, CGI WILL GO INTO ISLE OF MAN COURT NEXT MONDAY AND ASK FOR ORDERS BASED ON ITS PETITION. THE POSTPONEMENT OF LAST MONDAY'S HEARING WAS 7 DAYS—UNTIL THIS COMING MONDAY, MAY 22ND. I THINK THE COURT WILL PROBABLY GRANT AT LEAST SOME OF THE ORDERS. AS A RESULT OFFICIAL NOTIFICATION OF THE PETITION AND AFFIDAVIT WILL BE SENT TO JIM AND ANNE IN NEW MEXICO AND OTHERS STEPS MAY BE PUT IN MOTION BY THE COURT.

IT WOULD BE MUCH BETTER, I SUGGEST, TO CONFER WITH MR WRIGHT AND MESSRS RAFFERTY AND GERRARD AS TO HOW TO RESOLVE THE CONCERNS. CGI SHOULD THEN GET A LONG POSTPONEMENT OF THE HEARING TO PROVIDE TIME TO EFFECT THE RESOLUTION. THEN IN THE NEXT FEW WEEKS, LET'S WORK ACTUALLY TO RESOLVE THE CONCERNS.

IT IS MY SUGGESTION THAT WE SAY TO WRIGHT AND CGI THAT WE WANT AN AMENDED AND RESTATED TRUST TO BE DECLARED AS SET FORTH IN THE PROPOSAL AND WE WILL WORK WITH THEM STARTING IMMEDIATELY TO ACCOMPLISH THIS. MAYBE THEY WILL NOT LIKE THIS IDEA; IN WHICH CASE, THEY NEED TO GIVE US THEIR IDEAS.

LET ME ADD THIS THOUGHT TO THE ATTACHED PROPOSAL. I RECOMMEND THAT CGI NOT BE TERMINATED BY THE CHAIRMAN OF THE COMMITTEE OF TRUST ADVISORS (ME) AT THIS MOMENT. THIS WOULD LOOK LIKE A COVER-UP OF REAL PROBLEMS. ALSO, IT WOULD LOOK LIKE JIM WAS CONTROLLING THE TRUST, BY FIRING THE TRUSTEE, THROUGH ME.

HAVING SAID THIS, ONE OF THE TECHNICAL IMPROVEMENTS TO PUT IN THE AMENDED AND RESTATED DE MAY FAMILY TRUST DATED AUGUST 8, 1998, DISCUSSED IN THE PROPOSAL, IS A CLEAN AND FOOL-PROOF WAY OF TERMINATED THE TRUSTEE WITH NO RISK OF THE TRUSTEE BALKING OR DRAGGING ITS FEET.

JIM, YOU OR DOUG MAY HAVE A BETTER WAY TO HANDLE ALL THIS. IF SO, GOOD. BUT MY POINT NOW IS LET'S NOT SKIP BY THE DEADLINE THAT WE ARE FACING WITH RESPECT TO THE HEARING SCHEDULED FOR NEXT MONDAY. I THINK SOMEONE NEEDS TO GET IN TOUCH WITH WRIGHT OR RAFFERTY TOMORROW, FRIDAY. RECALL THAT THEY ARE 5 HOURS HEAD OF US EAST COAST TIME/ 7 HOURS HEAD OF US MOUNTAIN TIME.

JIM, I WILL CALL YOU TO MAKE SURE THAT YOU ARE ON TOP OF THIS SUBJECT.

CHARLES

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Jim, Doug, Jonathon,

Having thought about the current dilemma, I suggest that CGI, the settlors and the beneficiaries agree to an amended and restated version of the De May Family Trust (the De May Family Trust Dated 8th August 1998) to clean up whatever concerns CGI thinks there are. I recommend doing this rather than explaining everything *ad nauseam* and having to bring CGI and its local advisers to the point that they understand and agree.

The goal, I think, should be to establish the De May Family Trust Dated 8th August 1998 as valid, with as little expenditure of time and money as possible. This trust should be continued, not resettled. Among other things, one does not want to expose the settlor(s), the trust and the advisers to an argument that there has been a new transfer in trust which is a fraudulent conveyance in light of existing liabilities. An additional goal is to remove libelous material from the Petition and Affidavit.

I see no reason why one 3-4 hour conference call and a 2-3 drafts cannot settle this situation.

I have discussed this with Jonathon, but he has not reviewed it.

**From:**     "Jim DeMay" <mailto:cbruce@mooreandbruce.com>
**To:**        <asd@yellowmesa.com>
**Sent:**     Thursday, May 25, 2006 9:14 PM
**Attach:**   Doc1.doc
**Subject:**  FW: Document1

---

**From:** Charles Bruce [mailto:cbruce@mooreandbruce.com]
**Sent:** Thursday, May 25, 2006 12:48
**To:** 'Charnas, Douglas W.'
**Cc:** jmoore@mooreandbruce.com; gila@yellowmesa.com
**Subject:** Document1

Doug,

Here is the draft email to go from you to Wright (copy to Smalley and me) as you and I discussed 45 minutes ago.

Jonathon and I will work as quickly and efficiently as possible to comment on these three subjects.  You will try to work with the other side to limit the overall exercise, so as to save money, and to get an as-quick-as-possible resolution.

Best.

Charles

**EXHIBIT**

**3(J)**

8/13/2008

**DRAFT EMAIL FROM DOUG CHARNAS TO JOHN WRIGHT**

This will respond to your email of yesterday, May 25th, to Charles Bruce, copy to me. Charles and I have spoken and agreed that I should respond.

Representations.  Regarding who will represent whom, Moore & Bruce, LLP (Charles Bruce and Jonathon Moore) will represent Jim and Anne De May and their children and Vaterstatten Trust.  Charles spoke with Jim and Anne late his day in London, around 6:00 PM, today, Thursday, and he spoke with his Co-Trustee of Vaterstetten Foundation yesterday.  McGuireWoods will advise the Trust and the De May Family with respect to US tax issues and I will try to be helpful in assisting with the resolution of these issues and quickly and with as little expense as possible.  (Charles, as has been noted, also serves as Trustee of Trust dated 5 August 1998 and Chairman of Committee of Trust Advisors of the De May Family Trust.)

Scope of Moore & Bruce's work.  The De Mays, with my input, I have asked Moore & Bruce to focus on three areas, in no particular order:  (1) The hand off of the trusteeship from Valmet/MTM to IFG and from IFG to CGI.  (2) The distribution out to Anne and the re-contribution to the new De May Family Trust.  (3) The relationship between the De May Family Trust and the Trust dated 5 August 1998.

There are a large number of facts set forth in the Petition and accompanying Affidavit.  I am suggesting that we not address all of these.

Then we need to focus on how to resolve CGI's concerns without a needless expenditure of time and money.  We need to agree upon mechanisms to do this.

Timing.  I have noted the fact that the motorcycle races in Isle of Man make it difficult for people to travel to meetings in the Isle of Man or London.  It is also a fact that the June 5th deadline is entirely self-imposed.  There is no external event that prevents extending this date so as to allow ample time to deal with the issues, when we are not running into the races or holidays.  (Monday is a holiday in both the UK and the US. Charles Bruce is out of the office Friday afternoon through next Tuesday, May 30th.)

Moore & Bruce believes it can comment on the three issues listed above by next Thursday.  Discussions can then be held the following day—Friday, June 2nd.

We all need to be mindful that in a very real sense we all work for the De May family and must keep in mind its best interests.  Among us we need also to maintain a spirit of cooperation.

## AFFIDAVIT OF JAMES MICHAEL DE MAY

Comes now your Affiant, James Michael De May, having been first duly sworn, on oath, and hereby states as follows:

1. I am over the age of 18-years-old and competent to testify to the matters stated herein. I make this affidavit based on personal knowledge.

2. I am the husband of Anne Schrader-De May and a Plaintiff in the case of *De May, et al. v. Moore & Bruce, et al.*, currently pending in the United States District Court for the District of Columbia.

3. In the summer of 1995 I first met Charles Bruce and retained him and his law firm, Moore & Bruce, LLP, to assist me in gaining access on behalf of my German company, known as Optimay GmbH, to possible sources of capital.

4. During my early discussions with Mr. Bruce, he advised me that he specialized in the areas of international taxation, estate planning and foreign trusts.

5. In late 1995 Mr. Bruce and his partner, Jonathon Moore, assisted me by incorporating my business in Delaware, under the name Optimay Corporation, and they thereafter became very involved in all aspects of the business. Charles Bruce became a Board member of Optimay Corp. and legal advisor to me as C.E.O., and Jonathon Moore became Chief Counsel to Optimay.

6. In 1996, Moore & Bruce advised me to create four trusts, to be located outside the United States, to receive my shares of Optimay stock. The primary purpose of these trusts, they explained, was to save United States taxes in the event of a sale of the company, which we were all working on. I accepted the advice of Moore and Bruce and agreed that they would create the

**EXHIBIT**

**1**

four off-shore trusts: one of the benefit of our families; one for the exclusive benefit of my wife;

one for the benefit of certain stockholders, employees and creditors of Optimay; and one for

charitable purposes. Moore and Bruce did all the paperwork and legal work in connection with

setting up these trusts, and the whole concept was their idea. Neither I nor my wife had any prior

experience with, or knowledge of, these kinds of trusts.

7. Moore & Bruce continued to serve as my and my wife's counsel with regard to the

trusts, and with regard to dealing with the Internal Revenue Service concerning tax issues

relating to the trusts, until at least May of 2006. Charles Bruce also served as co-trustee of my

wife's trust and as Chairman of the Committee of Trust Advisors for the family trust. Even

though I also retained the law firm of McGuire Woods, and specifically Attorney Douglas

Charnas, to assist with our IRS problems, Moore & Bruce's involvement as our counsel with

regard to the IRS issues did not terminate until at least December, 2005, and with regard to trust

issues until at least May, 2006.

8. According to a May 14, 2006, letter in which he described his roles in De May family

matters, Charles Bruce served as Chairman of the Committee of Trust Advisors of the De May

Family Trust; as Trustee of a sub-trust of the Family Trust, known as the "Trust Dated August 5,

1998"; as co-Trustee of the Anne Schrader-De May Trust; and as co-Trustee of the charitable

foundation (formerly the "Optimay Foundation", now the "Vaterstetten Foundation") until at

least May, 2006. *See,* Ex. A, attached hereto. In effect, Mr. Bruce maintained personal control

over these trusts.

9. Moore and Bruce advised me and my wife that our home, located in Santa Fe, New

Mexico, should be owned by a corporation which would be owned by the De May Family Trust.

Moore & Bruce incorporated the entity, known as Coyote Trails, Inc.   Jonathon Moore served as first president and sole director of Coyote Trails until at least May of 2006. Ex. B.  Moore and Bruce gave us legal advice regarding Coyote Trails and our property ownership in Santa Fe until at least May of 2006.  I understand that the De May Family Trust owns 100% of the stock of Coyote Trails.

10.  While Douglas Charnas and McGuire Woods did assume a leading role in dealing with the IRS tax audit and prosecution, which centered around the creation and attempted amendment by Moore & Bruce of the four trusts, starting in or about the summer of 2002, both Charles Bruce and Jonathan Moore stayed very much involved as co-counsel until at least December 27, 2005.  They assisted with obtaining factual information and documentation for use in the tax case, as well as with analysis of the legal issues involved.

11.  On or about September 2, 2005, Charles Bruce sent an e-mail to myself, Douglas Charnas and Jonathon Moore which supplied information regarding the IRS Tax Audit and giving analysis of the tax issues involved.  Ex. C.

12.  On or about September 5, 2005, Charles Bruce sent an e-mail to myself, Douglas Charnas and Jonathon Moore which supplied information regarding the IRS Tax Audit and described the roles of the various attorneys, including Moore & Bruce, in representing the De May family.  Ex. D.

13.  On October 11, 2005, and on May 15, 2006, Jonathon Moore sent e-mails to me concerning Coyote Trails and whether or not we could take out a mortgage on our Santa Fe property.  Ex. E.  We needed a mortgage to pay the large legal bills we were incurring in connection with the IRS audit, among other financial obligations.  However, because of the

ownership structure of the property, we were unable to obtain a mortgage.

14.  Ex. F consists of bills I received from Moore & Bruce LLP between December 27, 2005 and May 11, 2006.  These bills specified amounts due for "Coyote Trails, Inc.", for the "De May Family Trust", and for the "Tax Audit".  The January 25, 2006 bill shows a charge by Jonathon Moore on December 27, 2005 for a "telephone conference with Mr. Charnas regarding IRS settlement and opinion of New Mexico counsel".  Mr. Moore and Mr. Charnas told me that they were seeking the opinion of New Mexico counsel as to whether my family's Santa Fe home was vulnerable to attachment in satisfaction of the IRS' judgment against me.

FURTHER AFFIANT SAYETH NAUGHT.

JAMES MICHAEL DE MAY

STATE OF NEW MEXICO

)   ss:

COUNTY OF

)

Subscribed and sworn to before me, a Notary Public in and for the State and County aforesaid, this ___21st___ day of August, 2008.

Notary Public

MCE: 11/2/2008

| | |
|---|---|
| **From:** | "Charles Bruce" <mailto:cbruce@mooreandbruce.com> |
| **To:** | <gila@yellowmesa.com> |
| **Sent:** | Sunday, May 14, 2006 2:24 PM |
| **Attach:** | WrightFa.pdf; WrightLe.pdf |
| **Subject:** | FW: The De May Family Trust/CGI's Recent Petition |

Here is a copy of what I sent Mr Wright.

Charles

---

**From:** Charles Bruce [mailto:cbruce@mooreandbruce.com]
**Sent:** Sunday, May 14, 2006 4:22 PM
**To:** 'thie-awin@manx.net'
**Cc:** 'krafferty@cgiol.com'; 'Charnas, Douglas W.'; 'jmoore@mooreandbruce.com'
**Subject:** The De May Family Trust/CGI's Recent Petition

Dear Mr Wright:

Please see attached letter to you and accompanying fax cover sheet. Both items, signed by me, were faxed to your office (Fax No. +44 1624 627 344) a few minutes ago. Receipt was confirmed.

Doug, please immediately communicate with Mr Wright concerning the points where you are referenced. Make any corrections or additions as you see fit, of course. Mr Wright's contact details will follow separately.

I am currently in our Washington, DC office.

Charles Bruce
5/14/2006 4:14 PM
Washington, DC

Charles M Bruce | Moore & Bruce, LLP
40 Park Street | London W1K 2JG | Tel: 020 7495 3842 | Fax: 020 7629 1242
**1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745**
Email: cbruce@mooreandbruce.com

---

This communication has not been written as a formal opinion of counsel. Accordingly, IRS regulations require us to advise you that any tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding federal tax penalties.

This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by return email. Thank you.

**EXHIBIT**

**1(A)**

# MOORE & BRUCE, LLP
### ATTORNEYS AT LAW
### 40 PARK STREET
### LONDON W1K 2JG

---

| | | |
|---|---|---|
| Charles M. Bruce<br>Fax: +44 (0)20 7629 1242 | Tel: +44 (0)20 7495 3842 | Email:<br>cbruce@mooreandbruce.com |

---

## FACSIMILE COVER SHEET

DATE and TIME: 14/05/2006 16:11

NUMBER OF PAGES INCLUDING COVER: 4          OUR REF.: 00862

TO: John Wright          FAX NO.: +44 1624 627 344

FIRM:          RE:

FROM: Charles M Bruce          CC: Kevin Rafferty (CGI; via email)
          Doug Charnas (McGuireWoods; via email)
          Jonathon Moore (Firm; via email)

---

This facsimile contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the person to whom it is addressed. It may contain information that is privileged, confidential, proprietary, or exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other that the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

This communication has not been written as a formal opinion of counsel. Tax advice contained herein is not intended or written to be used and cannot be used for the purpose of avoiding United States federal tax penalties.

---

☑          Original **WILL NOT** follow by mail.

Please see attached letter.

Because I am currently in our Washington, DC office, please respond to me at:

Charles M Bruce | Moore & Bruce, LLP
1072 Thomas Jefferson Street, NW | Washington, DC 20007 | Tel: 1 202 965 5300 | Fax: 1 202 965 7745
Email: cbruce@mooreandbruce.com

Charles Bruce
5/14/2006 4:11 PM
Washington, DC

---

Moore & Bruce, LLP is subject to the professional rules of The District of Columbia Bar, USA. It is not a Multi-national Legal Practice under the professional rules applicable to the Law Society for solicitors in England and Wales, nor is any of its attorneys a Registered Foreign Law Lawyer under those rules.

**MOORE & BRUCE, LLP**
ATTORNEYS AT LAW
40 PARK STREET
LONDON W1K 2JG

———

CHARLES M. BRUCE
FACSIMILE +44 (0)20 7629 1242

+44 (0)20 7495 3842
www.mooreandbruce.com

EMAIL:
cbruce@mooreandbruce.com

14 May 2006

VIA FACSIMILE AND EMAIL

John Wright
Thie Awin
16 Willowbrook Gardens
Douglas
Isle of Man IM2 2QQ

Dear Mr Wright:

**Re: De May Family Trust/CGI's Recently Filed Petition**

This letter is written on behalf of the De May family and the De May Family Trust. It requests that the recently filed Petition, discussed below, be immediately withdrawn.

I understand that you represent CGI Corporate Services Limited ("CGI") with respect to this subject. CGI is the trustee of the De May Family Trust. The beneficiaries of the De May Family Trust, essentially, are the family of James Michael and Anne Schrader De May.

My name is Charles Bruce. I am a partner in the Washington, DC law firm of Moore & Bruce, LLP. Moore & Bruce has represented the De May family for over ten years. We have represented the De May Family Trust and predecessor trusts since their inception. Our representation of the De May Family Trust was recently confirmed in a retainer letter signed by CGI. I am the Chairman of the Committee of Trust Advisors of that trust. I am trustee of the Trust dated 5 August 1998, which in turn benefits the De May Family Trust; the only asset of this trust is a bank account at Rahn & Bodmer Bank; monies in the account are used to benefit the ultimate beneficiaries and, incidentally, to pay CGI's fees and costs. I am also a co-trustee, together with the Bank of America, N.A., of the Anne Schrader De May Trust, a US trust benefiting Anne Schrader De May. Additionally, I am a co-trustee of the Vaterstetten Foundation (Barbados), formerly called the Optimay Foundation. (Here I insert that I am writing this letter from home on a Sunday and do not have the file concerning these matters in front of me.)

Last Thursday evening I learned that CGI has filed a Petition and Affidavit of Kevin John Rafferty, a Director of CGI, with a Court in the Isle of Man, which petition is dated April 18, 2006. Friday evening and yesterday I read the Petition and Affidavit. Apparently, a hearing on this Petition is scheduled for tomorrow, Monday, 15 May 2006. I do not know if the filing was made, in some fashion, under seal in order to prevent the information contained therein from becoming part of a public record. Even though I am Chairman of the Committee of Trust Advisors, and in this capacity acted to put CGI in office, and Moore & Bruce is US legal counsel to the trust, CGI did not inform me of its intention to file this Petition or the fact that it had filed the Petition.

Moore & Bruce, LLP is a limited liability partnership registered in Washington, DC. It is not a Multi-National Legal Practice under the professional rules applicable to the Law Society for solicitors in England and Wales, nor is any of its attorneys a Registered Foreign Law Lawyer under those rules. A list of members' names and their professional qualifications may be inspected at its office at 40 Park Street, London W1K 2JG, England.

We operate in the offices listed below:
LONDON • WASHINGTON, DC
Representative Offices: WILMINGTON and ZURICH

MOORE & BRUCE, LLP
14 May 2006
Page 2

Like myself, the De May family was not notified in advance of this filing. It bears repeating that Mr and Mrs De May and their children are currently the only beneficiaries of the De May Family Trust, save the Vaterstetten Foundation, which is a US tax-qualified charitable organization founded by Jim De May.

The Petition must be withdrawn immediately, and I hereby request that this be done.

The filing of this Petition and affidavit risks doing irreparable harm to the beneficiaries of the trust as to which CGI serves as trustee. Among other things, it lends weight to arguments that the trust should be set aside by creditors. (In the view of McGuireWoods, Mr De May's and the De May Family Trust's counsel on tax and related matters and New Mexico counsel consulted by McGuireWoods, such arguments are incorrect.) Certainly it risks "giving heart" to persons that may one day seek to set aside the trust and reach the assets. This harm would be grave and irreparable. By copy of this letter to McGuireWoods (Douglas Charnas), I am asking that he confirm this point to you and make such additions as corrections as are appropriate.

The filing discloses confidential information about the family and its beneficial interests. While we are not competent to advise on Manx law, it appears that such disclosure breaches the trustee's fiduciary duty of confidence as well as possibly other duties. This point can be confirmed by Manx counsel representing the family.

The filing discloses the content of private conversations between one of the beneficiaries, Jim De May, and the trustee, in the person of Messrs Rafferty and Gerrard, who are officers and/or directors of CGI. This content is of a personal nature. These conversations were intended to be private and confidential.

The filing, including the affidavit of Mr Rafferty, contains incorrect statements. Moreover, these writings fail to take into account recent information, such as the fact that the US income tax case regarding Jim De May has been settled and the US IRS has decided to drop its gift tax case against Mr De May. (I say this concerning the gift tax case based on second hand information. I have not had an opportunity to confirm this information with Mr De May's litigation counsel, Doug Charnas of McGuireWoods. Again, I am asking that he confirm this point to you.)

Other serious issues arise as a result of the wording of the Petition and the affidavit.

The Petition should be withdrawn immediately, or it should be placed under seal, assuming this is permitted under local rules, and the hearing should be postponed until CGI and the beneficiaries can confer further.

Please let me have your response prior to the convening of the hearing set for Monday, 15th May at 2:00 PM.

Yours sincerely,


Charles M Bruce

CC:    Douglas Charnas (McGuireWoods)
       Kevin Rafferty (CGI)

| | |
|---|---|
| **From:** | "Jonathon R. Moore" <jmoore@mooreandbruce.com> |
| **To:** | <Jim De May> |
| **Cc:** | <Douglas Charnas Esq.> |
| **Sent:** | Monday, May 15, 2006 9:18 AM |
| **Subject:** | Coyote Trails, Inc. |

Jim--

Further to our discussion yesterday regarding possible sale or mortgage of the Santa Fe property, I have reviewed the corporate charter and By-Laws of Coyote Trails, Inc..  Since nothing in either document limits my authority as an officer or sole Director to do so, I also checked the New Mexico Business Corporation Act. Section 53-15-1 expressly authorizes a New Mexico corporation's Board of Directors to "mortgage or pledge... any or all of its property and assets..., whether or not in the usual in regular course of business" without obtaining the authorization or consent of its shareholders.  A sale of a New Mexico corporation's assets "other than in regular course of business," is, however, a matter requiring shareholder approval.

REGARDS!!!!!!!!!!!!!

Jonathon R. Moore
Moore & Bruce, LLP
1072 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Tel: 202-965-7747
Fax: 202-965-7745
Email: jmoore@mooreandbruce.com <mailto:jmoore@mooreandbruce.com>
*************************************************************************************************
This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by collect telephone at (202) 965-5300 or electronic mail (jbrown@mooreandbruce.com <mailto:jbrown@mooreandbruce.com>). Thank you.

For more information about Moore & Bruce, LLP, please visit our website at <http://www.mooreandbruce.com/>.
*************************************************************************************************

**EXHIBIT**

**1(B)**

Moore & Bruce, LLP

40 Park Street
London W1K 2JG
1072 Thomas Jefferson St., NW
Washington, DC 20007

Tel: +44 (0)20 7495 3842
Fax: +44 (0)20 7629 1242
Tel: +1 202 965 5300
Fax: +1 202 965 7745

## MEMORANDUM

**Private and Confidential**

TO:        Doug Charnas, Jim De May, Jonathon Moore

FROM:      Charles M Bruce

RE:        De May Tax Audit; Recent Inquiries

DATE:      2 September 2005

---

### De May Audit and De May Family Trust File

I have received several emails on these subjects in the last few days. Since they all more or less relate to the same subjects, I will respond to all at the same time.

Also, yesterday, I met with Ian Gerrard, Managing Director, CGI (IoM). He wanted to solicit Jonathon's and my help gathering for the trustee's files information about, primarily, the underlying entities and the US bank account belonging to the De May Family Trust. I begin by reporting on this meeting.

*Meeting with Ian Gerrard*

Ian and I reviewed what the trustees are looking for in the way of information about the underlying entities. All this exists with Moore & Bruce, Bob Wade, Gill, Kohr & Johnson, and Bank of America. We—Jonathon and I—will undertake to get this to the trustee.

CGI, the new trustee, has not received the files from IFG, the prior trustee, but expects to do so in the next few days. All the paperwork has been completed to effect the change over.

Ian has spoken with people at IFG. In the course of his conversations, it was indicated that there is only one box of files and very little in the way of accountings. But we will have to wait and see. Ian is pessimistic.

Ian surmised that when Valmet/MTM collapsed and IFG picked up the pieces, Valmet/MTM's files were "cherry picked" (my expression) by IFG, looking for what appeared to be worthwhile clients. Valmet/MTM, says Ian, had more than 1,000 files. IFG apparently took only a small percentage of these as active clients. When sorting through the files and moving some over to IFG's premises, and sending the remainder to storage, the files may have been mishandled, i.e., some of the files were mistakenly sent to storage.

In any event, we will have to see what CGI discovers when it gets the files. CGI will inventory the files and provide a listing. We can all "go from there".

**EXHIBIT**

**1(C)**

I asked whether, if some of the files appear to be missing, someone might search through Valmet/IFG's—or is it IFG's—storage. Ian was not sure how this might work out, but was not immediately encouraging as to the outcome. (Apparently CGI has had bad experiences with former IFG and Valmet/MTM files.)

My guess, which should not be attributed to any degree to Ian, is that it will take at least 30 days to work through the files that come over from IFG.

*Doug Charnas Email dated 31 August re De May Trusts/Meeting with Ian Gerrard from CGI.*

This asks that I and Jonathon help locate originals or certified copies of all the De May family related trusts.

We have a complete list of these. Jonathon and I have talked about how best to go about this. Jonathon, based on the list, is preparing an inventory of what Moore & Bruce has. This inventory will show what shape the document is in, meaning, is it an original, is it signed, is it signed in the original or via facsimile, etc.

Jonathon has made a first crack at this, as reflected in the CHART OF TRUST DOCUMENTS prepared by him yesterday. In brief, as to the family trust documents, Moore & Bruce has copies, but as would be normal, the originals are not with it. As to Anne's trust, Moore & Bruce has copies of the early versions and originals of the two most recent versions, but, of course, I am a trustee of the latter two, so this is to be expected. For reasons that I cannot recall, Moore & Bruce also has the original of the first version of Anne's trust. Turning to Vaterstetten (Optimay) Foundation, Moore & Bruce has originals; again, I am a trustee along with Dr. Carmichael's trust management company. Concerning the De May-Optimay Comp Trust, again, Moore & Bruce has an original.

I suggest that as to the originals in Moore & Bruce's possession, that it provides certified copies. This would be normal in my experience, but Doug can say what he wants.

As for the other originals, we can go to the trustees.

I will ask Rahn & Bodmer for the Trust dated 5 August 1998. I think it may have one.

I would hope that some of the De May Family Trust and Anne's Trust indentures will show up in the files being sent to CGI. If not, and if anyone thinks it is desirable, we can try to initiate a search of the stored files.

*Jim De May email dated 1 September 2005 with series of questions and requests for documents*

Jim has asked a series of questions and has requested help obtaining a number of documents.

The documents are by and large the same ones listed by Doug Charnas. Jonathon has listed all the documents and what is in Moore & Bruce's files. We will methodically seek to obtain the others from the persons that, we think, have them.

As for the questions, let me begin by saying that Jim may not want to try to master all the answers, as some of them tie to technical tax rules. His answer, stated simply, may be that he was advised by counsel that such and such actions were necessary or desirable. Some things he may have initiated, such as the migration of the family trust. Other things, such as distributions, were done by the trust (the trustees), and Jim, of course, was not a trustee. Questions about something that the trust did should be directed to the trustees. I think that it

would be a mistake for Jim to be supplying answers to all questions, because it speaks against the proposition that Jim is separate form the trust, which is in fact the case.

I understand that Jim must supply information that is not only within his control but within the control of his agents, representatives, attorneys, etc. Therefore, where an answer comes from, say me, as the family's attorney, I suggest that this be stated. If there are questions that only the trustee can answer, I suggest that Jim should not speculate as to what the answer might be.

To the extent Doug Charnas and the other McGuireWoods attorneys think that an answer should be given by me or by the trustees of the Family Trust, we can try to provide it. It is probably reasonable for the current trustee (CGI), when a question is posed to it, to ask for my help. I am not suggesting that answers should not be supplied, I am only suggesting that Jim should not be cast as the source of all answers.

Turning to Jim's questions to me:--

"Why did the family trust participate in distributing its assets in Aug 98? What is the rational and explanation for the actions in Aug 98 from the point of view of the family trust and its beneficiaries?"

Based on a file memorandum, this apparently was done to avoid sec. 679(b) by cleaning the undistributed net income (UNI) slate. Sec. 679(b) sweeps in old UNI (proceeds from Lucent sale). Jim would have become taxable on these proceeds. It was proper for the trust, on advice of US tax counsel, to act to avoid this result.

"How do I explain to the IRS why we the beneficiaries are ok with the results of the new August 98 trusts? How do we ever hope to again be beneficiaries? How will the situation ever be rectified?"

It should be recalled that there was a very real possibility that in 1998 that Anne and the children would end up living in Germany and not being US taxpayers.

"If my family were no longer qualified beneficiaries why did the trustees distribute monies to them immediately in August 1998 and for all the months thereafter?"

There were some distributions to individuals in July 1998, such as Jim's parents and Anne's relatives. This leads to a technical discussion of whether separate trusts were created for these individuals. Note that the US recipients reported and paid tax, so there should not be a double tax.

As for other distributions, I would have to look at the accounting for transfers out of the trust. My memory is that almost all of this was for construction of the house, which is a trust asset (owned via Coyote Trails).

"How do I explain that the trust knew what are needs were as beneficiaries and provide for those needs completely even though we were no longer qualified beneficiaries?"

An underlying question is whether the trustee was acting properly in making funds available not for the purchase or improvement of trust property, but for food, education, etc., for the family. This is a question for the trustee. But note that payments into the family account, for use by the family for living costs, were reported and taxed to Jim.

"The service sees you as the architect of the trusts, the quarterback of all the trusts migrations and amendments and at the same time, you served as tax consul for the family. If you

represented my best interest at all times, what advantage did you create for me with the actions of August 1998?"

These actions avoided triggering taxable income for you when the family moved to the US. Recall that if the family had remained in Germany and Anne had not become a US resident for tax purposes and the family had stayed together, the prohibition on US beneficiaries would have been fine. Distributions could have been made to Anne and the children. Anne could have made interspousal gifts to Jim.

"I need to also be able to explain why if you made my family as well as myself no longer qualified beneficiaries, why would you authorize distributions to me as soon as we arrived in Santa Fe? How do I explain that I was given a checkbook and authorized to write checks on the trust account although I was not even a qualified beneficiary? How do I explain that after some period of time, I not only did not have a check book, but was not given further access to the family trust account?"

First, I did not authorize distributions; the funds came from the Trust dated 5 August 1998 which, as to the funds in question, was a part of the De May Family Trust. Secondly, some payments were for the house. As to other payments, I need to have a schedule of these payments in front of me.

"What explanation do I offer that after a couple of years, the trust completely stopped making distributions to the family? However, the trust has continued to make payments for the kids education. Those payments have been taxed as distributions to Anne and myself. We are counting on and need the trusts to continue paying for the kids education. How confident may we be that the trust will continue paying?"

It seems that this is not a question relating to the IRS's interrogatories but to "real live" concerns that you have. You met with two representatives of the new trustee (Kevin Rafferty and Ian Gerrard) at the end of last year—I believe it was. At that time you probed this subject.

"How do respond when asked: Did I direct the trust to make these payments? Since the trust seems to respond to any of my wishes, even though I am not a beneficiary, how do answer the question is this trust not just my alter ego?"

It is normal for a trustee to listen to the wishes of settlors and beneficiaries. But the trustee also exercises independent judgment. An example was your thinking on how the monies in the family trust might be invested. The trustees decided not to put all the funds with investment advisers that you recommended. A significant portion stayed with Rahn & Bodmer, and eventually all the funds were moved to Rahn & Bodmer.

Again, I suggest that a good deal of the information requested in the interrogatories should not properly come from Jim, but should be provided by and in the words of others.

Lastly, let me suggest that rather than simply provide documents and respond to Jim's questions, Doug may want us to help with the wording of some of the responses or to review the responses prepared by McGuireWoods. We would be happy to try to help out.

Moore & Bruce, LLP

40 Park Street
London W1K 2JG
1072 Thomas Jefferson St., NW
Washington, DC 20007

Tel: +44 (0)20 7495 3842
Fax: +44 (0)20 7629 1242
Tel: +1 202 965 5300
Fax: +1 202 965 7745

# MEMORANDUM

**Private and Confidential**

TO:        CGI (Kevin Rafferty and Ian Gerrard), Jim De May, Doug Charnas, Jonathon Moore

FROM:      Charles M Bruce

RE:        De May Family Trust; Jim De May's tax audit; organizing who is doing what, who is representing whom, and how fees will be paid

DATE:      5 September 2005

This memorandum is intended to raise a number of subjects in the context of Jim De May's on-going IRS tax audit and Tax Court case. I suggest that Doug Charnas, representing Jim De May in his tax case, Kevin Rafferty and/or Ian Gerrard (for the Trustee of the De May Family Trust, CGI), and Jonathon Moore and/or me, should discuss these things. Then some decisions may have to be made. Doug Charnas may suggest that Jim De May participate directly in this discussion or he may suggest otherwise.

Principally for Kevin Rafferty's and Ian Gerrard's benefit, I begin by giving some background.

## Jim De May's Tax Case

Jim De May is being audited by the IRS for several taxable years. The issues are income tax and gift tax issues. McGuireWoods (Doug Charnas in their Washington, DC office and Craig Bell and Brian Bernhardt in their Richmond office) is representing him.

The IRS has determined that Jim De May owes a large amount of tax; I have not seen the final agent's report or determination letters.

The taxpayer, Jim De May, has filed in the US Tax Court for a re-determination of this finding of liability by the IRS. I have not seen the actual petition filed with the Tax Court. [Doug, please send me a copy of this, as I was not able to pull it off the internet.]

Jim De May's Tax Court case was begun on September 20, 2004. (Copy of Docket Sheet is attached.) McGuireWoods has been preparing the case and working closely with Jim De May.

Moore & Bruce—Jonathon and I—assisted Doug with information and thinking as to certain tax questions early on in the audit. More recently, on August 24, 2005 and August 26, 2005, I have been asked to help with specific information, *i.e.*, answers to questions and documents. Jonathon helped with this. Also, Jim De May recently asked that we respond to a number of questions posed by him in an email dated September 1, 2005.

**EXHIBIT**

**1(D)**

The IRS has served on Petitioner Interrogatories (54 interrogatories, 37 pages in length, dated July 26, 2005 and due 30 days thereafter) and Request for Documents (55 document requests, 21 pages, dated July 26, 2005 and due 30 days thereafter).

The IRS has filed on August 36, 2005 motions to compel responses to its Interrogatories and Request for Documents. Responses are apparently due on September 16, 2005.

By email dated August 31, 2005, CGI (Ian Gerrard) asked that we help it gather some items that principally relate to the underlying trust (Trust dated 5 August 1998) and Coyote Trails.

**Who Is Representing Whom and Who Is Doing What**

McGuireWoods represents Jim De May in the audit and Tax Court case. The attorney in charge is Doug Charnas. Doug's contact information is:

Douglas Charnas
McGuireWoods
Washington Square
1050 Connecticut Ave N.W.
Suite 1200
Washington, DC 20036-5317
(202) 857-1757 T
(202) 828-2980 F
dcharnas@mcguirewoods.com

Moore & Bruce, LLP represents the De May family as to tax and related matters and the De May Family Trust, which benefits the family. In the past, the firm represented both Jim De May and Optimay Corporation; Jonathon Moore, my partner at Moore & Bruce, LLP, served as General Counsel to Optimay Corporation for a period before its sale to Lucent Technologies. I serve as Chairman of the Committee of Trust Advisors of the De May Family Trust and as Trustee of a sub-trust of this trust (called the Trust Dated 5 August 1998). (This trust at present has only one beneficiary, which is the De May Family Trust; and this trust—Trust Dated 5 August 1998—is revocable by the De May Family Trust.) Separately, I serve as co-trustee of a trust benefiting Anne Schrader De May and of a charitable foundation created by Jim De May.

Jonathon's and my contact details appear above. His and my email addresses are: jmoore@mooreandbruce.com and cbruce@mooreandbruce.com.

CGI recently assumed the duties of Trustee of the De May Family Trust. Predecessor trustees of this trust or predecessor trusts were Grosvenor Trust Company Limited (Bermuda), Valmet Trust Company Limited (which became Mutual Trust Management Limited) (Isle of Man), and IFG Trust Company Limited (Isle of Man). (These names of predecessor trust companies may not be the correct legal names.) Kevin Rafferty and Ian Rafferty are directors of CGI. Their contact information is:

| | |
|---|---|
| Kevin Rafferty | Ian Gerrard |
| Managing Director | Managing Director |
| PO Box 292 | PO Box 292 |
| 2nd Floor | 2nd Floor |
| Post Office Chambers | Post Office Chambers |
| Regent Street | Regent Street |
| Douglas | Douglas |
| Isle of Man IM99 2XE | Isle of Man IM99 2XE |
| British Isles | British Isles |

United Kingdom                        United Kingdom
+44 (0) 1624 662 264                  +44 (0) 1624 662 264
+44 (0) 1624 611 925                  +44 (0) 1624 611 925
krafferty@cgiol.com                   igerrard@cgiol.com

CGI just today, September 5, 2005, received the files from IFG and obviously will require some time to get acquainted with the records.

In addition, Bob Wade, with Jester & Reed, CPAs, will have to help, I suspect, both Doug and CGI with accounting and similar information. Bob has been responsible since the outset—that is, since the sale of Optimay shares to Lucent—for keeping track of things. (McGuireWoods (Bill Donnelly) double checked activities and amounts for a period following this sale. Therefore, his files may contain some information.)

I do not know how much longer the Tax Court case may go on or how much it may cost in legal fees, but Doug may have a rough estimate.

Jim has said to me recently that his ability to pay fees is very limited. It seems likely that he will request that the De May Family Trust pay some of the fees on his behalf. Will the trust agree to do this? Will it view it as a distribution or a loan or something else? What are the tax implications? Are there implications for Jim De May's tax case? How should Jim's request be handled?

CGI will need to spend, I suspect, a significant amount of time organizing the trust file and filling in any gaps that may exist. It should in a week or so be in a position where it can make a "guesstimate" as to how long this will require and how much it will cost. Payment for this work will come out of the trust funds currently held in the sub-trust.

Moore & Bruce, LLP apparently will be asked to do some work in connection with Jim's tax case and some in assisting the trustee with respect to the trust administration. As to the former, it appears that it will be in the same position as McGuireWoods and, as to the latter, the same position as CGI.

I may have misstated some of the information set forth above, in which case I hope someone will correct me.

Also, undoubtedly there are additional points and issues that should be raised, and again I look to others to add these.

I suggest that in the next few days we have a conference call to discuss these topics. At some point, not too long from now, it might be a good idea for Kevin or Ian to go to Washington, DC to meet with Doug, Bob Wade, and perhaps others and, at the same time, pick up some materials from Bob and Moore & Bruce. I will work with Doug to do this, assuming he thinks it is a good idea.

09/05/05

U N I T E D  S T A T E S  T A X  C O U R T
D O C K E T  E N T R I E S

Docket No. 17512-04                                INDEX
James M. De May
          v. COMMISSIONER OF INTERNAL REVENUE

                    BB0450  (Service Attorney)
                    NO.  3  Bernhardt,Brian Carl
                          McGuireWoods, LLP
                          One James Center
                          901 East Cary Street
                          Richmond, VA 23219-4030

                    BC0520  Bell,Craig Dennis
                          McGuireWoods, LLP
                          One James Center
                          901 East Cary Street
                          Richmond, VA 23219-4030

                    CD0512  Charnas,Douglas William
                          McGuireWoods, LLP
                          Washington Square, Suite 1200
                          1050 Connecticut Avenue, N.W.
                          Washington, DC 20036-5317

NO.  DATE  EVENT    FILINGS AND PROCEEDINGS        ACT/STAT DTE  SERVED   M

0001 09/20/04 PF   PETITION Filed:Fee Paid              R 09/21/04
0002 09/20/04 DPT  DESIGNATION of Trial at Richmond,    R 09/21/04
          VA
0003 11/08/04 ACS  ANSWER (C/S 11/05/04).
0004 11/09/04 AA   AMENDED ANSWER (C/S 11/8/04)
0005 06/10/05 NTD  NOTICE of Trial on 11/14/05 at
          Richmond, VA.                    B 06/10/05 C
0006 06/10/05 SPTO STANDING PRE-TRIAL ORDER attached
          to Notice of Trial               B 06/10/05 C
0007 08/29/05 MOTR MOTION by resp. to compel docu.
          w/Exs. (C/S 8/26/05)
0008 08/29/05 MOTR MOTION by resp. to compel
          responses to interr. w/Exs.
          (C/S 8/26/05)
0009 08/30/05 O    ORDER Petr. by 9/16/05 file
          objections to mots. to compel.    B 08/31/05 C

*See* http://www.ustaxcourt.gov/UstcDockInq/asp/Index.asp.

4

| | |
|---|---|
| **From:** | "Jonathon R. Moore" <mailto:jmoore@mooreandbruce.com> |
| **To:** | <Jim De May> |
| **Sent:** | Tuesday, October 11, 2005 8:31 AM |
| **Subject:** | FW: Coyote Trails, Inc. |

FYI

REGARDS!!!!!!!!!!!!!!

---

**From:** Jonathon R. Moore [mailto:jmoore@mooreandbruce.com]
**Sent:** Tuesday, October 11, 2005 10:30 AM
**To:** 'Mary Johnson'
**Subject:** RE: Coyote Trails, Inc.

Thanks for your e-mail.

I take it that it comes in response to the corporate resolutions I drafted last week and sent to Mr. Canepa's office regarding the Bank of America account.  Will Mr. Gill remain on the account and also remain Assistant Treasurer? Please also confirm that the Bank of America account is the only account of Coyote Trails, Inc. that you are aware of. Upon receipt of this information, I will redraft these resolutions.  Thanks and

REGARDS!!!!!!!!!!!!

---

**From:** Mary Johnson [mailto:mary@gillandkohr.com]
**Sent:** Monday, October 10, 2005 6:54 PM
**To:** 'Jonathan Moore'
**Cc:** bkohr@gillandkohr.com; Steven W. Johnson
**Subject:** Coyote Trails, Inc.

Dear Jonathan,

As you know, Byron Kohr will be retiring soon.  His partner, Steven W. Johnson, will be our firm's partner in charge of the Coyote Trails, Inc. account.  Byron has requested that Steven Johnson replace him as the Assistant Treasurer for Coyote Trails, Inc.

The reason for having an officer of Coyote Trails in our office is that only an officer of the corporation is authorized to sign payroll tax reports.  This would eliminate the need to send these reports to you, for your signature.  If you agree to this appointment, please create the necessary documents to implement this change of officers.

Also, please consider this a written notification that C. Byron Kohr is resigning as Assistant Treasurer for Coyote Trails, Inc.  His resignation will be effective when Steven Johnson is appointed Assistant Treasurer.

Thank you very much,


Mary Johnson

And

C. Byron Kohr

**EXHIBIT**

**1(E)**

| | |
|---|---|
| **From:** | "Jonathon R. Moore" <jmoore@mooreandbruce.com> |
| **To:** | <Jim De May> |
| **Cc:** | <Douglas Charnas Esq.> |
| **Sent:** | Monday, May 15, 2006 9:18 AM |
| **Subject:** | Coyote Trails, Inc. |

Jim—

Further to our discussion yesterday regarding possible sale or mortgage of the Santa Fe property, I have reviewed the corporate charter and By-Laws of Coyote Trails, Inc.. Since nothing in either document limits my authority as an officer or sole Director to do so, I also checked the New Mexico Business Corporation Act. Section 53-15-1 expressly authorizes a New Mexico corporation's Board of Directors to "mortgage or pledge... any or all of its property and assets..., whether or not in the usual in regular course of business" without obtaining the authorization or consent of its shareholders. A sale of a New Mexico corporation's assets "other than in regular course of business," is, however, a matter requiring shareholder approval.

REGARDS!!!!!!!!!!!!

Jonathon R. Moore
Moore & Bruce, LLP
1072 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Tel: 202-965-7747
Fax: 202-965-7745
Email: jmoore@mooreandbruce.com <mailto:jmoore@mooreandbruce.com>
*****************************************************************************************
This electronic mail message contains information from the law firm of Moore & Bruce, LLP and is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, proprietary or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by collect telephone at (202) 965-5300 or electronic mail (jbrown@mooreandbruce.com <mailto:jbrown@mooreandbruce.com>). Thank you.

For more information about Moore & Bruce, LLP, please visit our website at <http://www.mooreandbruce.com/>.
*****************************************************************************************

8/11/2008

December 27, 2005

James M. De May
124 Tano Road
Santa Fe NM 87501

Re: Coyote Trails, Inc.

FOR LEGAL SERVICES RENDERED

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 11/3/2005 | JRM | Telephone conferences with Mr. Canepa and Mr. Kohr regarding Letter of Representations, trustee requests; revised Letter of Representations, execute and fax to CGI; draft series of e-mails to CGI regarding pending requests. | 1.90 | |
| 11/4/2005 | JRM | Revise and send off Letter of Representations to CGI. | 0.30 | |
| 11/7/2005 | JRM | Revise Consent in lieu of Board of Directors Annual Meeting; file Stockholder Consent in Minute Book; telephone conference with Mr. Bruce regarding Trustee's request to amend By-Laws. | 0.60 | |
| 11/14/2005 | JRM | Corporate housekeeping. | 0.20 | |
|  |  | For legal services rendered | 3.00 | $930.00 |
|  |  | Balance due |  | $930.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 0862-009

**EXHIBIT**

**1(F)**

Re: De May Family Trust

FOR LEGAL SERVICES RENDERED

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 11/21/2005 | CMB | Telephone conference with Jim DeMay re developments and distributions; review recent invoices. | 0.25 | |
| 11/25/2005 | CMB | Attention to payment of CGI invoices. | 0.33 | NO CHARGE |
| | | For legal services rendered | 0.58 | $100.00 |

Disbursements

|  |  |
|---|---|
| Jester & Reed invoice for prepartation of Trust return forms 3520 and 3520A for 2004. | 4,595.00 |
| Total Disbursements | $4,595.00 |
| Total amount of this bill | $4,695.00 |
| Previous balance | $6,167.66 |
| Balance due | $10,862.66 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-001

Re: Tax Audit

FOR LEGAL SERVICES RENDERED

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 11/1/2005 JRM | Respond to e-mail from Mr. Charnas regarding amounts of Lucent transaction subject to escrow payouts; file review regarding same. | | 0.60 | |
| | For legal services rendered | | 0.60 | $186.00 |

Disbursements

| Messenger Service | | 8.46 |
|---|---|---|
| Total Disbursements | | $8.46 |
| Total amount of this bill | | $194.46 |
| Previous balance | | $3,919.67 |
| Balance due | | $4,114.13 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-003

December 27, 2005

James M. De May
124 Tano Road
Santa Fe NM 87501
Project Billing Summary

|  | New Charges | Previous Balance | Payments/ Credits | New Balance |
|---|---|---|---|---|
| Coyote Trails, Inc. | $930.00 | $0.00 | $0.00 | $930.00 |
| De May Family Trust | $4,695.00 | $6,167.66 | $0.00 | $10,862.66 |
| Tax Audit | $194.46 | $3,919.67 | $0.00 | $4,114.13 |
| GRAND TOTAL | $5,819.46 | $10,087.33 | $0.00 | $15,906.79 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of Moore & Bruce, LLP:

Bank of America, N.A.
730 15th Street, N.W., 7th Floor
Washington, DC 20005
ABA Routing No. 026009593
Credit Moore & Bruce, LLP
Account No. 001933043764
Credit: 00862-009

January 25, 2006


James M. De May
124 Tano Road
Santa Fe NM 87501


Re: Coyote Trails, Inc.

FOR LEGAL SERVICES RENDERED

| | | | Hours | Amount |
|---|---|---|---|---|
| 12/22/2005 JRM | | Review Answer and Counterclaim; draft e-mail to Trustee regarding same; telephone conference with Mr. Canepa regarding same. | 2.40 | |
| 12/27/2005 JRM | | Lengthy telephone conference with Mr. Canepa regarding merits of Thomases' lawsuit, defense strategy and approach to settlement; telephone conference with Mr. Charnas regarding IRS settlement and opinion of New Mexico counsel; office conference with Mr. Bruce regarding same. | 2.60 | |
| | CMB | Office conference with Mr. Moore re: impact of Thomases lawsuit in IRS collection matter. | 0.50 | |
| | | For legal services rendered | 5.50 | $1,750.00 |
| | | Previous balance | | $930.00 |
| | | Balance due | | $2,680.00 |

Re: Coyote Trails, Inc.

**PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP**
**TAXPAYER IDENTIFICATION NO. 52-1832207**

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 0862-009

Re: De May Family Trust

FOR LEGAL SERVICES RENDERED

|  |  | Hours | Amount |
|---|---|---|---|
| 12/9/2005 CMB | Email: Exchange of emails with Rafferty re De May Family Trust. | 0.25 | |
| 12/12/2005 CMB | Emails back and forth re scheduling and CGI invoices. | 0.50 | |
| 12/14/2005-JRM 12/15/2005 | Lengthy conference call with Messrs. Gerrard, Rafferty and Bruce regarding status of files, recordkeeping, etc.; prepare for same; draft facsimile and e-mail to CGI; file research regarding same. | 3.40 | |
| 12/15/2005 CMB | Telephone conference with Gerrard and Rafferty re family trust and Trust dated 5 August documentation. | 1.00 | |
| 12/23/2005 JRM | Follow up with CGI, Jester & Reed regarding same; work on list of items promised to CGI. | 0.90 | |
| CMB | Attention to CGI invoices; Telephone conference with Jim De May; review invoice and instruct payment. | 0.50 | |
| 12/27/2005 JRM | Teleconference with Mr. Wade regarding information requested from CGI; work on providing documentation to CGI requested by Messrs. Rafferty and Gérard. File research regarding same. Begin work on memorandum to CGI regarding same. | 2.80 | |
| 12/28/2005 JRM | Work on KYC memorandum to CGI; file research regarding documentation for Family Trust and Trust dated 5 August 1998; series of office conferences with Mr. Bruce regarding same. | 4.70 | |
| 12/29/2005 JRM | Edit, revise and finalize memorandum to CGI; series of office conferences with Mr. Bruce regarding same. | 1.20 | |

Re: De May Family Trust

|  | | Hours | Amount |
|---|---|---|---|
| 12/29/2005 CMB | Review memo and exhibits prepared by Mr. Moore for CGI. Make suggestions. Discussion with Mr. Moore re same. | 1.33 | |
| | For legal services rendered | 16.58 | $5,463.33 |
| | Previous balance | | $10,862.66 |
| | Balance due | | $16,325.99 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-001

Re:  Tax Audit

|  | Amount |
|---|---|
| Previous balance | $4,114.13 |
| Balance due | $4,114.13 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-003

January 25, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501
Project Billing Summary

|  | New Charges | Previous Balance | Payments/ Credits | New Balance |
|---|---|---|---|---|
| Coyote Trails, Inc. | $1,750.00 | $930.00 | $0.00 | $2,680.00 |
| De May Family Trust | $5,463.33 | $10,862.66 | $0.00 | $16,325.99 |
| Tax Audit | $0.00 | $4,114.13 | $0.00 | $4,114.13 |
| GRAND TOTAL | $7,213.33 | $15,906.79 | $0.00 | $23,120.12 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of Moore & Bruce, LLP:

Bank of America, N.A.
730 15th Street, N.W., 7th Floor
Washington, DC 20005
ABA Routing No. 026009593
Credit Moore & Bruce, LLP
Account No. 001933043764
Credit: 00862-009

March 08, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501

Re: Coyote Trails, Inc.

FOR LEGAL SERVICES RENDERED

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 2/1/2006 | JRM | Review court filing by counsel for Thomases; draft e-mail to Mr. Canepa regarding same, scheduling, discovery. | 0.40 | |
| 2/22/2006 | JRM | Telephone conference with Mr. Canepa regarding motion for an injunction from the Thomases; scheduling for mediation. | 0.30 | |
| | | For legal services rendered | 0.70 | $217.00 |
| | | Previous balance | | $4,044.00 |
| | Payment - Thank You | | | ($4,044.00) |
| | | Balance due | | $217.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 0862-009

Re: De May Family Trust

FOR LEGAL SERVICES RENDERED

|  |  | Hours | Amount |
|---|---|---|---|
| 2/4/2006 CMB | Email from and to Rafferty re schedule and CGI's invoicing for services. | 0.33 | |
| 2/8/2006 CMB | Attention to email to CGI re school tuitions, their invoice, related matters. | 0.33 | |
| 2/10/2006 JRM | Series of telephone conferences with Mr. Bruce regarding all aspects of his discussions with CGI, client, Mr. Charnas. | 1.20 | |
| CMB | Conference call with Kevin Rafferty and Ian Garrard; Telephone conference with Mr. Moore; Telephone conference with Jim De May. Calls related to payment of tuition fees, CGI's invoice, Status of Trustees' Report (including Smalley's work), retention of MW by the Trust; status of change over to M Dunki. | 5.25 | |
| 2/13/2006 CMB | Telephone conference with Jim De May; prepare draft response to Mr Dunki's fax of 6th Feb. 2006. | 2.00 | |
| JRM | Telephone conference with Mr. Bruce regarding pending issues with Trustee, Rahn & Bodmer; review response to Martin Dunki. Schedule conference call. | 0.80 | |
| 2/14/2006-JRM 2/15/2006 | Prepare for, participate in and follow up on conference call among Messrs. Gerrard, Rafferty, Wade and Bruce regarding open questions on trust accounts/accounting; file research regarding questions raised; draft memorandum to Mr. Bruce regarding same. | 5.70 | |
| 2/14/2006 CMB | Attention to email from Kevin Rafferty regarding Trust Accounts; transfer funds in payment of CGI invoice; Telephone conference with Bob Wade re Trust Accounts and his prior accounting for same. | 2.25 | |

Re: De May Family Trust

|  |  | Hours | Amount |
|---|---|---|---|
| 2/15/2006 CMB | Conference call with Kevin Rafferty, Ian Gerrard, Bob Wade, and Jonathon Moore about large number of issues raised by CGI. Follow-up Telephone conference with Bob Wade re need to make changes in light of settlement of income tax case. | 3.50 | |
| 2/16/2006 CMB | Reviewed JRM's memo that addressed questions raised by Rafferty and Gerrard; inserted comments and returned to him. Looked at stipulated decision in Tax Court case to see if any adjustments were apparent. | 1.50 | |
| JRM | Conclude file research into matters raised by Trustee; draft e-mail memorandum to Mr. Bruce regarding same. | 1.80 | |
| 2/17/2006 CMB | Telephone conferences with Jim De May (in IoM); email to him via Rafferty copy of my responses to Dunki; reply to JRM's email re various matters and inform him that we should hold all activity until the Trustee of the Trust and the family "clear the air". | 1.25 | |
| JRM | Telephone conferences with Mr. Bruce and Mr. Wade regarding client's instructions; regarding current status of outstanding request from Trustee. Finalize work on matters in progress. | 4.20 | |
| 2/19/2006 CMB | Call from Jim De May regarding documents to be provided to Martin Dunki and others to facilitate his stepping into my shoes. [Sunday, Feb. 19, 2006; mobile telephone] | 0.25 | |
| 2/20/2006 JRM | Draft engagement letter; telephone conference with Mr. Bruce re: same. | 1.20 | NO CHARGE |
| CMB | Attention to follow-up, following Telephone conference yesterday with Jim De May. Send documents to Martin Dunki; email to Dunki; exchange of emails; call to CGI to update Rafferty; Telephone conference with | 1.00 | |

Re: De May Family Trust

|  | | Hours | Amount |
|---|---|---|---|

Rafferty and Gerrard regarding their meetings with Jim De May last Thrus. and Fri. (discussed Smalley Report, MW engagement in the gift tax case; M&B engagement letter; related matters. Telephone conference with Mr. Moore regarding same.

2/20/2006 JRM    Lengthy telephone conference with Mr. Bruce regarding his telephone conferences/e-mails with Mr. De May and CGI; draft responses to incoming e-mails from CGI regarding engagement of MaguireWoods and and Moore & Bruce. File research into assertion by CGI that we have not provided a copy of Trust dated 5 August 1998. Series of e-mails to Mr. Bruce regarding same.    2.40

2/21/2006 CMB    Attention to engagement of MW in gift tax matter; email to Charnas and calls to him; redraft engagement letter to apply to Jim De May and Trust dated 5 August 1998 only; Telephone conference with Kevin Rafferty; Telephone conferences with Mr. Moore; fax WT instructions to Dunki, copies to Charnas and others. Telephone conference with Jim De May (in Munich).    3.33

JRM    Attention to requests for information from Mr. Charnas; draft e-mail to Mr. Charnas regarding same; draft series of e-mails to Trustee regarding engagement letters and other open issues.    4.70

2/22/2006 JRM    Respond to series of e-mails from CGI, Mr. Charnas. Series of telephone conferences with Mr. Charnas and Mr. Bruce. Additional file research regarding questions raised by CGI, Mr. Charnas. Telephone conference with Mr. De May.    5.90

Re: De May Family Trust

| | | | Hours | Amount |
|---|---|---|---|---|
| 2/22/2006 CMB | Attention to 5-page email from Kevin Rafferty and Ian Gerrard RE 4 topics. Draft and send response after checking factual points with Mr Moore. Review CGI invoice, scan, ask a question, ask for details regarding proposed retainer arrangement, send to CGI. Send copy of invoice to Jim De May. | | 3.00 | |
| 2/23/2006 JRM | Respond to various requests for information from Mr. Charnas, Mr. Rafferty. | | 1.20 | |
| CMB | Attention to emails from Rafferty and Gerrard; Telephone conference with Jim De May (he was in Zurich meeting with Martin Dunki); Telephone conference with Doug Charnas; review revised engagement letter; sign and send same; | | 2.25 | |
| 2/24/2006 JRM | Revise engagement letter. | | 0.80 | NO CHARGE |
| 2/27/2006 JRM | Telephone conference with Mr. Bruce regarding pending matters; draft e-mail to Mr. Rafferty regarding stock certificate for Coyote Trails. | | 0.30 | |
| 2/28/2006 JRM | Attention to pending matters; draft e-mail to CGI. | | 0.30 | |
| CMB | Attention to emails from CGI re documents and engagement letter. Telephone conference with Mr. Moore re same. | | 1.33 | NO CHARGE |
| | For legal services rendered | | 58.07 | $19,334.99 |

Re: De May Family Trust

Disbursements

|  | Amount |
|---|---|
| Conference call charges | 112.40 |
| Total Disbursements | $112.40 |
| Total amount of this bill | $19,447.39 |
| Previous balance | $20,079.99 |
| Payment - Thank You | ($20,079.99) |
| Balance due | $19,447.39 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-001

Re: Tax Audit

Disbursements

|  | Amount |
|---|---|
| Copying cost | 52.93 |
| Total Disbursements | $52.93 |
| Previous balance | $4,114.13 |
| Payment - Thank You | ($4,114.13) |
| Balance due | $52.93 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-003

March 08, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501
Project Billing Summary

|  | New Charges | Previous Balance | Payments/ Credits | New Balance |
|---|---|---|---|---|
| Coyote Trails, Inc. | $217.00 | $4,044.00 | ($4,044.00) | $217.00 |
| De May Family Trust | $19,447.39 | $20,079.99 | ($20,079.99) | $19,447.39 |
| Tax Audit | $52.93 | $4,114.13 | ($4,114.13) | $52.93 |
| GRAND TOTAL | $19,717.32 | $28,238.12 | ($28,238.12) | $19,717.32 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207
Wire Transfer Instructions:

For the Account of Moore & Bruce, LLP:

Bank of America, N.A.
730 15th Street, N.W., 7th Floor
Washington, DC 20005
ABA Routing No. 026009593
Credit Moore & Bruce, LLP
Account No. 001933043764
Credit: 00862-009

April 25, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501

Re:  Coyote Trails, Inc.

FOR LEGAL SERVICES RENDERED

| | | | Hours | Amount |
|---|---|---|---|---|
| 3/3/2006 JRM | Review materials received from Mr. Canepa regarding the lawsuit; draft e-mail to Mr. Canepa. | | 0.30 | |
| 3/8/2006 JRM | Telephone conference with Mr. Canepa regarding results of today's hearing; next steps. | | 0.30 | |
| 3/17/2006 JRM | Attention to mediation on Thomases litigation; draft e-mail to Mr. Canepa regarding same. Respond to e-mail from Mr. Rafferty regarding Deeds for New Mexico property. | | 0.40 | |
| | For legal services rendered | | 1.00 | $310.00 |
| | Previous balance | | | $217.00 |
| Payment - Thank You | | | | ($217.00) |
| | Balance due | | | $310.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 0862-009

Re: De May Family Trust

FOR LEGAL SERVICES RENDERED

|  |  | Hours | Amount |
|---|---|---|---|
| 3/1/2006 JRM | Telephone conference with Mr. Bruce regarding pending request for information from CGI. Attempt to reach CGI. | 0.30 | |
| 3/2/2006 JRM | Conference call with Messrs. Gérard and Bruce regarding "filling the gaps" in files received from IFG; begin research regarding same. | 1.10 | |
| 3/3/2006 JRM | Work on requests for documents received from CGI. File research regarding same. | 1.80 | |
| 3/7/2006 JRM | Finalize file review requested by CGI; series of office conferences with Ms. Brown regarding same; draft transmittal letter to CGI. Reissue stock certificate for Coyote Trails. | 1.70 | |
| 3/13/2006-CMB 3/16/2006 | Review analysis of CGI's counsel's request;discuss same with Mr. Moore; telephone conference with Kevin Rafferty re: same. | 2.50 | NO CHARGE |
| 3/16/2006 JRM | Telephone conference with Mr. Bruce regarding appropriate response to a report from counsel to Trustee. | 0.80 | NO CHARGE |
| | For legal services rendered | 8.20 | $1,519.00 |
| | Previous balance | | $19,447.39 |
| Payment - Thank You | | | ($19,447.39) |
| | Balance due | | $1,519.00 |

Re: De May Family Trust

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-001

April 25, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501
Project Billing Summary

|  | New Charges | Previous Balance | Payments/ Credits | New Balance |
|---|---|---|---|---|
| Coyote Trails, Inc. | $310.00 | $217.00 | ($217.00) | $310.00 |
| De May Family Trust | $1,519.00 | $19,447.39 | ($19,447.39) | $1,519.00 |
| GRAND TOTAL | $1,829.00 | $19,664.39 | ($19,664.39) | $1,829.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207
Wire Transfer Instructions:

For the Account of Moore & Bruce, LLP:

Bank of America, N.A.
730 15th Street, N.W., 7th Floor
Washington, DC 20005
ABA Routing No. 026009593
Credit Moore & Bruce, LLP
Account No. 001933043764
Credit: 00862-009

May 11, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501

Re: Coyote Trails, Inc.

FOR LEGAL SERVICES RENDERED

|  |  | Hours | Amount |
|---|---|---|---|
| 4/5/2006 JRM | Telephone conferences with Mr. DeMay and Mr. Canepa regarding settlement of Thomases claims. | 0.40 | |
| 4/28/2006 JRM | Respond to e-mail from Trustee; e-mail to accountant; attempt to reach Mr. De May; office conference with Mr. Bruce. | 0.60 | |
| | For legal services rendered | 1.00 | $310.00 |
| | Previous balance | | $310.00 |
| Payment - Thank You | | | ($310.00) |
| | Balance due | | $310.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 0862-009

Re: De May Family Trust

FOR LEGAL SERVICES RENDERED

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 4/5/2006 CMB | Email to Jim De May re CGI-related mattters. | | 0.25 | |
| 4/12/2006 CMB | Attention to email from Jim De May; reply. | | 0.25 | |
| | For legal services rendered | | 0.50 | $200.00 |
| | Previous balance | | | $1,519.00 |
| Payment - Thank You | | | | ($1,519.00) |
| | Balance due | | | $200.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-001

Re: Tax Audit

FOR LEGAL SERVICES RENDERED

|  |  | Hours | Amount |
|---|---|---|---|
| 4/13/2006 CMB | Attention to inquiry from Bob Wade RE Jim's deductible legal fees. Telephone conference with Bob Wade RE same. Look at listing prepared by JEB. | 0.50 |  |
| For legal services rendered |  | 0.50 | $200.00 |
| Previous balance |  |  | $52.93 |
| Payment - Thank You |  |  | ($52.93) |
| Balance due |  |  | $200.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of :

Bank of America, N.A.
1501 Pennsylvania Avenue, N.W.
Washington, DC 20013
ABA Routing No. 026009593
Credit Account No. 001933043764
Reference No. 00862-003

May 11, 2006

James M. De May
124 Tano Road
Santa Fe NM 87501
Project Billing Summary

| | New Charges | Previous Balance | Payments/ Credits | New Balance |
|---|---|---|---|---|
| Coyote Trails, Inc. | $310.00 | $310.00 | ($310.00) | $310.00 |
| De May Family Trust | $200.00 | $1,519.00 | ($1,519.00) | $200.00 |
| Tax Audit | $200.00 | $52.93 | ($52.93) | $200.00 |
| GRAND TOTAL | $710.00 | $1,881.93 | ($1,881.93) | $710.00 |

PLEASE MAKE CHECK PAYABLE TO MOORE & BRUCE, LLP
TAXPAYER IDENTIFICATION NO. 52-1832207

Wire Transfer Instructions:

For the Account of Moore & Bruce, LLP:

Bank of America, N.A.
730 15th Street, N.W., 7th Floor
Washington, DC 20005
ABA Routing No. 026009593
Credit Moore & Bruce, LLP
Account No. 001933043764
Credit: 00862-009

| | |
|---|---|
| **From:** | "Charles Bruce" <cbruce@mooreandbruce.com> |
| **To:** | <gila@yellowmesa.com> |
| **Cc:** | <Douglas Charnas>; <Jonathon Moore>; <Jennifer Brown> |
| **Sent:** | Friday, October 07, 2005 4:08 PM |
| **Subject:** | RE: IRS Settlement Proposal [Our File No. 2037000-0002] |

Jim,

Jonathon and I will attend to these two items on Tuesday. Monday is a holiday.

Best.

Charles

---

**From:** Jim De May [mailto:gila@yellowmesa.com]
**Sent:** Friday, October 07, 2005 5:31 PM
**To:** Charles Bruce
**Subject:** FW: IRS Settlement Proposal [Our File No. 2037000-0002]

Dear Charles,

Is there anyway you could please help me with these two affidavits? It would be extremely helpful in our time-pressured presentation to the IRS. Thanks.

Best Regards,

Jim

---

**From:** Charnas, Douglas W. [mailto:dcharnas@mcguirewoods.com]
**Sent:** Friday, October 07, 2005 11:11
**To:** gila@yellowmesa.com
**Cc:** Bernhardt, Brian C.
**Subject:** IRS Settlement Proposal [Our File No. 2037000-0002]

Dear Jim,

    David Nelms, the IRS Appeals Officer, has responded to our counter proposal with his counter proposal. We have made some headway; however, Mr. Nelms has not agreed to remove the accuracy related penalty for the tax attributable to the sale of stock by the Optimay Foundation Trust. I understand that Charles Bruce advised you that you would not be subject to tax on the gain realized by the Optimay Foundation Trust when it sold the Optimay stock to Lucent. We conveyed this to Mr. Nelms, but he has no evidence of Charles' advice to you. It would be extremely helpful in persuading Mr. Nelms to drop the accuracy related penalty if Charles would provide an affidavit stating that he advised you before your 1998 Federal income tax return was due that you would not have to report the gain realized by the Optimay Foundation Trust on the sale of the Optimay stock. This should persuade Mr. Nelms that you had reasonable cause for not reporting the gain, and, therefore, the accuracy related penalty should not apply.

    Mr. Nelms has proposed a value of $3.33 per share to settlement the gift tax issue. He sees this as a significant concession. Even though we provided him with a copy of the PriceWaterhouse audit financial statement and the affidavit from Andreas Oldenbourg, he continues to focus on the Form 3520 and the value of $6.66 per share shown on the Form. He points out that you signed that Form under penalties of perjury. When we met with Mr. Nelms, I told him that including the $6.66 value was a clerical error. I also told him that Jonathon Moore had told Alexandre Benita, the IRS Estate Tax Lawyer, the the $6.66 value was a clerical error. These statements, unfortunately, do not give Mr. Nelms something to put in his file to justify him ignoring the $6.66 value

**EXHIBIT**

**4**

included on the Form 3520. I believe it would be extremely helpful in getting Mr. Nelms not to focus on the Form 3520 if Charles or Jonathon could provide an affidavit stating that the inclusion of the $6.66 per share on the return was a clerical error, and that Optimay had little or no value in 1996 when you transferred the stock to the trusts.

Because we are so close to the trial date, Mr. Nelms have given us only a few days to respond to his counter offer. Accordingly, we need the affidavits as soon as possible.

Regards, Douglas


**The following statement is provided pursuant to U.S. Treasury Department Regulations: This communication is not intended or written to be used, and can not be used, by a taxpayer for the purpose of avoiding penalties that the Internal Revenue Service may impose on the taxpayer.**

Douglas W. Charnas, Esq.
McGuireWoods LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC 20036-5317
202.857.1757 (Direct Line)
202.828.2980 (Direct Fax)
dcharnas@mcguirewoods.com
www.mcguirewoods.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*